# EXHIBIT A

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

CASE NO. 20-CI-_____                                    **JEFFERSON CIRCUIT COURT**
                                                          **BUSINESS COURT DOCKET**
                                                          **DIVISION ____**
                                                          **JUDGE** _____

**AL J. SCHNEIDER CO.; SCHNEIDER HOTELS, LLC; SCHNEIDER FAIRGROUNDS, LLC; SCHNEIDER WATERFRONT, LLC; SCHNEIDER RIVERFRONT, LLC; SCHNEIDER PARKING, LLC; and LE CENTRE ON FOURTH LLC,**                                    **PLAINTIFFS**

v.

**HARTFORD FIRE INSURANCE COMPANY,**
**C T Corporation System**
**67 Burnside Ave.**
**East Hartford, CT 06108-3408**                         **DEFENDANT**

**Through:**
**Kentucky Secretary of State**

## COMPLAINT AND JURY DEMAND

1.    This is a business dispute relating to a denied property insurance coverage claim involving COVID-19.  Plaintiffs seek a declaration of rights and obligations under Kentucky law and other relief as set forth in this Complaint.  Plaintiffs, AL J. SCHNEIDER CO. ("ALJSCO"); SCHNEIDER HOTELS, LLC ("Schneider Hotels"); SCHNEIDER FAIRGROUNDS, LLC ("Schneider Fairgrounds"); SCHNEIDER WATERFRONT, LLC ("Schneider Waterfront"); SCHNEIDER RIVERFRONT, LLC ("Schneider Riverfront"); SCHNEIDER PARKING, LLC ("Schneider Parking"); and LE CENTRE ON FOURTH LLC ("Le Centre") (collectively "Plaintiffs" or "AJS Companies") bring this Complaint against Defendant HARTFORD FIRE INSURANCE COMPANY ("Hartford").  The AJS Companies seek a declaratory judgment pursuant to the Kentucky Declaratory Judgment Act and Kentucky Rules of Civil Procedure.  They request a judgment confirming the scope of insurance coverage available for their losses under the

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000001 of 000030

Filed        20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

Hartford Policy No. 33 UFJ AE3AAF (the "Policy").  The AJS Companies also bring related claims for damages arising from breach of contract, common law and statutory bad faith, and other violations of Kentucky law.

2.      This insurance litigation is unique and distinct from other COVID-19 insurance litigation.  Upon information and belief, the AJS Companies are among a small collection of insured companies that purchased coverage under Hartford's new Property Elite Policy for Hospitality.  Hartford issued the Property Elite form for the first time in early 2020.  As issued to the AJS Companies, the Policy expressly includes coverage for loss arising from virus and disease. For example, the Policy grants coverage up to $500,000,000 for Business Income loss and Extra Expense incurred due to a Crisis Event.  The Policy's definition[1] of Crisis Event confirms coverage for loss from:

> d.  The release or imminent release of a hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;
> e.  The release or imminent release of bacteria or virus that is likely to result in bodily injury or death to hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;
> f.  Food contamination or other public health hazard as determined by an appropriate governmental body that is likely to result in bodily injury or death to persons at an **Insured Premises**; or

3.      To date, the AJS Companies have suffered in excess of $21,000,000 in business income and extra expense loss because of the release or imminent release of COVID-19 in Kentucky, including diagnosed cases of COVID-19 at properties insured by the Policy.  Multiple government organizations have declared public health hazards threatening persons at insured properties.  COVID-19 is likely to result in bodily injury or death.

4.      The Policy is valid and enforceable, and the AJS Companies timely notified Hartford of their claim.

---

[1] Apparently because this is a new insurance form for Hartford, subpart "e" includes a typographical or drafting error. The phrase "that is likely to result in bodily injury or death to hazardous substance" seems to be a mistake in the form.

Filed        20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000002 of 000030

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

5.      Hartford denied coverage outright after an unexplained period of delay and despite

clear and express grants of coverage for virus and disease in the Policy.  While there are other

portions of the Policy that may apply (e.g., Attraction Properties), Hartford should have at least

investigated, accepted and paid the claim under the Crisis Event coverage.  Instead, Hartford

denied based on a misrepresentation of its own Policy, claiming that a "malicious act" was required

for the COVID-19 occurrences to qualify as Crisis Events.  Hartford's denial is wrongful, contrary

to its obligations under the Policy and Kentucky law, and continues to cause significant damage

to the AJS Companies in amounts to be proven at trial.

## PARTIES

6.      Plaintiff AL J. Schneider Co. is a real estate development company located in

Louisville, Kentucky that owns and/or operates hotels and restaurants and has separate real estate

and lumber divisions.

7.      Plaintiff Schneider Hotels, LLC is a limited liability company organized under the

laws of the State of Kentucky, has its principal place of business in Louisville, Kentucky, and is

wholly owned by Plaintiff AL J. Schneider. Schneider Hotels LLC owns and operates the Galt

House Hotel in Louisville, Kentucky.

8.      Plaintiff Schneider Fairgrounds, LLC is a limited liability company organized

under the laws of the State of Kentucky, has its principal place of business in Louisville, Kentucky,

and is wholly owned by Plaintiff AL J. Schneider. Schneider Fairgrounds LLC owns and operates

the Crowne Plaza hotel located near the Louisville, Kentucky airport.

9.      Plaintiff Schneider Waterfront, LLC is a limited liability company organized under

the laws of the State of Kentucky, has its principal place of business in Louisville, Kentucky.

Schneider Waterfront owns the 3-tower, 25-story Waterfront Plaza, located at 321 W. Main St.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000003 of 000030

3

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

10.     Plaintiff Schneider Riverfront, LLC is a limited liability company organized under the laws of the State of Kentucky, has its principal place of business in Louisville, Kentucky. Schneider Riverfront owns the 23-story, 341,363 square foot One Riverfront Plaza office building located at 401 W. Main St.

11.     Plaintiff Schneider Parking, LLC is a limited liability company organized under the laws of the State of Kentucky, has its principal place of business in Louisville, Kentucky. Schneider Parking owns a parking deck in downtown Louisville, KY.

12.     Plaintiff Le Centre on Fourth LLC is a limited liability company organized under the laws of the State of Delaware, has its principal place of business in Louisville, Kentucky, and is 95% owned by Plaintiff AL J. Schneider through its subsidiary 501 Fourth Street, LLC. Le Centre on Fourth LLC owns and operates the Embassy Suites in downtown Louisville.

13.     Hartford is a stock insurance company organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Hartford is authorized to provide insurance coverage in the state of Kentucky.

14.     Hartford issued the Policy to the AJS Companies in Kentucky.

## VENUE AND JURISDICTION

15.     Venue is proper in this Court pursuant to KRS 454.210(4), KRS 452.445, and KRS 452.450, because the AJS Companies are located in Jefferson County, Kentucky, and the transactions and acts giving rise to the causes of action asserted herein occurred in Jefferson County, Kentucky.

16.     This case is appropriate for the Jefferson County Business Court in accordance with the Business Court Docket Rules of Practice.  The gravamen of this dispute relates to insurance of a business entity.

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

17.     This Court has personal jurisdiction over Hartford because it is authorized to sell or write insurance in Kentucky, contracted to insure persons, property, or risk located within Kentucky at the time of contracting by issuing the policy in question, and thereby insured the covered risks of Kentucky citizens. KRS 454.210(2)(a)(1), (7).

18.     Subject matter jurisdiction is proper pursuant to KRS 23A.010, KRS 418.040, and KRS 418.045.

## FACTUAL BACKGROUND

*Hartford's New Elite Policy Tailored for the AJS Companies, Including Virus and Disease Coverage*

19.     The AJS Companies are long-time businesses and property owners, tracing their roots to the late Mr. Al J. Schneider, a developer, philanthropist, and longtime champion of Louisville and her success.   Their property portfolio includes the historic Galt House hotel, along with other hotels, restaurants, office buildings, and a parking deck in Jefferson County as more specifically described below.   These properties depend on Louisville's hospitality and entertainment industry, and the AJS Companies face significant risk if their own properties or other Jefferson County hospitality or entertainment properties are shutdown or limited by unanticipated events.

20.     The AJS Companies worked with a broker to find comprehensive commercial property coverage, including tailored coverage to protect against the risk of loss or damage due to unanticipated widespread loss.  The prior property coverage with another insurer was due to expire on March 1, 2020.

21.     Meanwhile, Hartford was introducing a new insurance product to the market for 2020. In late 2019, Hartford pushed marketing material out to insurance brokers that introduced the new Property Elite program, including "seamless, tailored" coverage for Hospitality.  Hartford

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000005 of 000030

5

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

advertised coverage for "broad, all risk perils," including "catastrophic cover."  A true and correct

copy of the Hartford marketing materials for the Property Elite program is attached hereto as

Exhibit A.

22.     After weeks of negotiations, the AJS Companies elected to bind coverage with the

Hartford.  The AJS Companies paid $661,700.00 in total premium for Hartford's Property Elite

Policy for Hospitality.  The effective date of the Policy is March 1, 2020.  The Policy Limit is

$500,000,000.  A true and correct copy of the Policy is attached as Exhibit B and incorporated

fully by reference.

23.     The Policy provides that the Insureds under the Policy are:

> Insured includes AL J SCHNEIDER CO and any subsidiary, and the interest of AL J SCHNEIDER CO in any partnership
> or joint venture in which AL J SCHNEIDER CO has management control, ownership, or is obligated to insure, as now
> constituted or hereafter is acquired, as the respective interest of each may appear; including legal representatives.

Ex. B at 2.

24.     Each of the AJS Companies is an Insured under the Policy.

25.     The Policy is an "all risk" property policy.

26.     In the main Policy form, Form PEG 00 02 01 20, Hartford provides Crisis

Management coverage within the Time Element section of the Policy as follows:

> **4.  Crisis Management**
> We will pay the actual **Business Income** loss you sustain and **Extra Expense** you incur due to a **Crisis Event**.
> Coverage begins at the time of the **Crisis Event** and ends the earlier of:
> **a.**  The time that the **Insured Premises** could be reopened for business; or
> **b.**  The number of consecutive days (shown in the Declarations) after the date of the **Crisis Event**.

Exhibit B at 30.

27.     Crisis Event is specifically defined in the Policy as follows:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000006 of 000030

6

Filed          20-CI-006311        10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

---

**J.   Crisis Event** means a malicious act:

1.  Committed on or within one mile of your **Insured Premises** against any person that results in physical injury or death to such person;

2.  Attempted or threatened to be committed on or within one mile of your **Insured Premises** against any person that is likely to result in physical injury or death to such person, and reported to law enforcement;

3.  Committed on or within one mile of your **Insured Premises** that results in direct physical loss or damage to Covered Property at your **Insured Premises**; or

4.  Attempted or threatened to be committed on or within one mile of your **Insured Premises** that is likely to result in direct physical loss or damage to Covered Property at an **Insured Premises**, and is reported to law enforcement.

5.  **Crisis Event** also includes:

    a.  Explosion, fire or equipment failure at an **Insured Premises** that results in or is likely to result in bodily injury, death or property damage;

    b.  Workplace or construction accidents at an **Insured Premises** that results in or is likely to result in bodily injury, death or property damage;

    c.  Suicide or attempted suicide at an **Insured Premises**;

    d.  The release or imminent release of a hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;

    e.  The release or imminent release of bacteria or virus that is likely to result in bodily injury or death to hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;

    f.  Food contamination or other public health hazard as determined by an appropriate governmental body that is likely to result in bodily injury or death to persons at an **Insured Premises**; or

    g.  The actual or threat of abduction, kidnapping, stalking, sexual assault, or criminal use of a firearm at an **Insured Premises** directed at you, your employees, occupants or visitors to your **Insured Premises**.

    Covered Crisis Event does not include any acts, attempts or threats committed by you, or any of your partners, directors, officers or trustees.

---

Exhibit B at 40.

28.    The Policy contains multiple additional extensions of coverage that may also apply beyond the Crisis Management coverage, including but not limited to Attraction Properties coverage, Civil Authority coverage, Contingent Business Interruption coverage, Extra Expense coverage, and Ingress and Egress coverage.  The Policy also offers separate "Communicable Disease" coverage for an outbreak of disease at an insured property.

*Hartford's Invalid Attempt to Add a Virus Exclusion*

29.    On March 11, 2020, Hartford sent a copy of the issued Policy to the broker.  That copy contained the virus, disease and public health hazard coverage discussed above.  On the last page, however, the Policy included Form PEGM 00 06 03 20, which appears to be an endorsement form created in March of 2020, after the effective date of the Policy.  See Ex. B.  The heading of the endorsement is "Exclusion of Loss Due to Virus or Bacteria for: Al J Schneider Co."  The endorsement states that it "does not apply to a Communicable Disease Contamination – Coverage

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000007 of 000030

7

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

Extension endorsement." The endorsement does not address the other affirmative virus coverage offered under the Policy's definition of Crisis Event. The endorsement does not accurately reflect the intent or agreement of the parties.

30.    Hartford never discussed any virus exclusion with the AJS Companies or, on information and belief, with the broker. Instead, it appears that Hartford tried to slip a virus exclusion into the Policy after the effective date, just as COVID-19 was making its way into the United States. Notably, Hartford did not adjust the premium when it tried to reduce coverage through an afterthought virus exclusion.

31.    The AJS Companies did not agree to any virus exclusion in the Policy. They would not have agreed to it because it would render the virus coverage they were already paying for illusory.

*The Release of COVID-19*

32.    COVID-19 is unique. The clinical features of COVID-19 vary from asymptomatic forms to fatal conditions of severe respiratory failure that require ventilation and support in an intensive care unit ("ICU"). Pneumonia has been the most frequent severe manifestation of COVID-19, with symptoms of fever, cough, dyspnea, and bilateral infiltrates on chest imaging.[2] There are no specific treatments established for COVID-19, and no vaccine is currently available.[3]

---

[2] *See* Francesco Di Gennaro et al., MDPI: International Journal of Environmental Research and Public Health, *Coronavirus Diseases (COVID-19) Current Status and Future Perspectives a Narrative Review* (Apr. 1, 2020), https://www.mdpi.com/1660-4601/17/8/2690.

[3] *See id*. (The treatment is symptomatic, and oxygen therapy represents the major treatment intervention for patients with severe infection. Mechanical ventilation may be necessary in cases of respiratory failure refractory to oxygen therapy, whereas hemodynamic support is essential for managing septic shock. Different strategies can be used depending on the severity of the patient and local epidemiology. Home management is appropriate for asymptomatic or paucisintomatic patients. They need a daily assessment of body temperature, blood pressure, oxygen saturation and respiratory symptoms for about 14 days. Management of such patients should focus on prevention of transmission to others and monitoring for clinical status with prompt hospitalization if needed.).

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000008 of 000030

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed            20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

33.     COVID-19 has several modes of transmission. Pursuant to a "Situation Report"
released by the WHO, the virus can be transmitted through symptomatic transmission, pre-
symptomatic transmission, and asymptomatic transmission. Symptomatic transmission refers to
transmission by a person experiencing symptoms associated with the virus who then transfers
COVID-19 to another. Data from published studies provide evidence that COVID-19 is primarily
transmitted from symptomatic persons to others who are in close contact through respiratory
droplets, by direct contact with infected persons, or by contact with contaminated objects and
surfaces.[4]

34.     The incubation period for COVID-19 – the time between exposure to the virus
(becoming infected) and symptom onset – is an average of 5-6 days, but can take up to 14 days.[5]
During this period, also known as the "pre-symptomatic" period, some infected persons can be
contagious.   Along with respiratory symptoms, gastrointestinal symptoms (*e.g.*, nausea and
diarrhea) have also been reported, and in some patients, they may be the presenting complaint.

35.     An individual who does not develop symptoms – known as an asymptomatic case
of COVID-19 – can still transmit the virus to another.

36.     Not only is COVID-19 transmitted via human-to-human contact, but the WHO and
scientific studies have confirmed that the virus can live on contaminated objects or surfaces.
According to a study in *The New England Journal of Medicine*, COVID-19 was detectable in
aerosols for up to 3 hours, up to 4 hours on copper, up to 24 hours on cardboard, and up to 2-3

---

[4] *See id.* (Data from clinical and virologic studies that have collected repeated biological samples from confirmed
patients provide evidence that shedding of the COVID-19 virus is highest in the upper respiratory tract (nose and
throat) early in the course of the disease. That is, within the first three days from onset of symptoms. Preliminary data
suggests that people may be more contagious around the time of symptom onset as compared to later on in the
disease.).

[5] *See id.*

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000009 of 000030

9

Filed            20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

days on plastic and stainless steel.[6]  All of these materials are used in the preparation and service of food by restaurants and in the operation of hotels and office buildings. The results of the study suggest that individuals could get COVID-19 through indirect contact with surfaces or objects used by an infected person, whether or not they were symptomatic.

37.    The *Journal of Hospital Infection* has found that human coronaviruses, such as SARS-CoV and MERS-CoV, can remain infectious on inanimate surfaces at room temperature for up to nine days. At a temperature of 30 degrees Celsius or more, the duration of persistence is shorter. Contamination of frequently touched surfaces is, therefore, a potential source of viral transmission. Though this study was not conclusive as to COVID-19, scientists are still grappling with the implications.

38.    Without a vaccine to protect against COVID-19, effective control of the release of the virus relies on measures designed to reduce human-to-human and surface-to-human exposure. Recent information on the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

---

[6] *See* News Release, National Institutes of Health, *New coronavirus stable for hours on surfaces* (Mar. 17, 2020), https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces; *see also* World Health Organization, *Modes of transmission of virus causing COVID-19: implications for IPC* (Mar. 29, 2020), https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations (Airborne transmission of COVID-19 "may be possible in specific circumstances and settings in which procedures or support treatments that generate aerosols are performed; *i.e.*, endotracheal intubation, bronchoscopy, open suctioning, administration of nebulized treatment, manual ventilation before intubation, turning the patient to the prone position, disconnecting the patient from the ventilator, non-invasive positive-pressure ventilation, tracheostomy, and cardiopulmonary resuscitation.").

COM : 000010 of 000030

Filed            20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

has the virus on it.[7] Various other sources state that close contact with a person with the virus or surfaces where the virus is found can transmit the virus.[8]

39.    The secondary exposure of humans to contaminated surfaces is particularly acute in places where the public gathers to socialize, eat, drink, shop, find entertainment, and recreate. This is why the CDC recommends that in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventive measures such as constant hand washing and avoiding activities that would bring them into the close proximity of people with the virus or surfaces where the virus may reside. However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing or otherwise limiting non-essential business establishments, including restaurants, bars, theaters, personal care salons, gyms, and schools, and mandating social distancing among the population. This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions. In addition, to conserve medical supplies, orders have been issued prohibiting the performance of non-urgent or non-emergency elective procedures and surgeries, forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

40.    The first confirmed case of the virus outside China was diagnosed on January 13, 2020, in Bangkok, Thailand with the number of cases rapidly increasing worldwide.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

---

[7] *See* Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-COVID-spreads.html (last visited Apr. 27, 2020).

[8] *See* G. Kampf et al., Journal of Hospital Infection, *Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents,* (Jan. 31, 2020), https://www.journalofhospitalinfection.com/action/showPdf?pii=S0195-6701%2820%2930046-3 (remains infectious from 2 hours to 28 days depending on conditions).

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

COM : 000011 of 000030

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

41.     On January 30, 2020, WHO declared that the SARS-COv-2 outbreak constituted a public health emergency of international concern.

42.     On January 31, 2020, the U.S. Department of Health and Human Services declared a nationwide public health emergency due to confirmed cases of the Coronavirus Disease 2019 ("COVID-19").

43.     By February 11, 2020, the novel coronavirus was named "COVID-19" by the WHO Director-General.[9]

44.     On March 6, 2020, Kentucky Governor Andy Beshear issued Executive Order 2020-215, declaring a State of Emergency in response to the COVID-19 outbreak. The Executive Order stated that the virus that causes the disease is a "new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person," and which can "result[] in serious illness or death."

45.     On March 11, 2020, the same day that Hartford issued a copy of the Policy and tried to add a virus exclusion, the World Health Organization's ("WHO") Director General, Tedros Adhanom Ghebreyesus, declared the COVID-19 spread a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic." *See* World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020* (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

---

[9] *See id.*

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000012 of 000030

12

Filed            20-CI-006311      10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

46.     Government authorities in Louisville and Kentucky followed suit and determined COVID-19 was a public health hazard.  State and local authorities issued "stay at home," "shelter in place," and other orders directly impacting the AJS Companies, causing significant revenue loss.  An illustrative but not exclusive collection of those orders is attached as Exhibit C.

47.     On March 13, 2020, Louisville and Jefferson County Metro Government Mayor Greg Fischer issued Executive Order 2020-001, declaring a State of Emergency in response to the COVID-19 pandemic. On March 24, 2020, Mayor Fischer issued Executive Order 2020-002, extending the State of Emergency until May 1, 2020.

48.     On March 17, 2020, the Kentucky Cabinet for Health and Family Services, Department of Public Health, issued an order directing that with certain exceptions, "all public-facing businesses…[must] cease all in-person operations."

49.     On March 22, 2020, and in response to the increasing spread of COVID-19 in Kentucky, Governor Beshear issued Executive Order 2020-246, ordering the closure of all "in-person retail businesses that are not life-sustaining...."

50.     On March 25, 2020, Governor Beshear issued Executive Order 2020-247, ordering the closure of all businesses that "are not life-sustaining…." Under the Order, restaurants are permitted to remain open only for "carry-out, delivery, and drive-through food and beverage sales…."

51.     On March 30, 2020, Governor Beshear issued Executive Order 2020-258, instructing Kentucky residents not to travel into any other state except for limited purposes, and requiring Kentucky residents returning from another state to self-quarantine for 14 days.

52.     On July 27, 2020, Governor Beshar issued an Executive Order closing bars for two weeks and limiting restaurants to 25% of pre-pandemic capacity indoors.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000013 of 000030

13

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

53.     On August 24, 2020, Governor Beshear issued an Executive Order regarding landlords and nonpayment of rent.  Among other things, landlords, like the AJS Companies, are limited in their ability to evict tenants for non-payment of rent and are not able to charge late fees or interest related to nonpayment of rent from March 6, 2020 to the end of the year.

54.     Governor Beshear has continued to issue Executive Orders relating to the COVID-19 pandemic, which are available at https://governor.ky.gov/covid19, and many of his Executive Orders remain in effect until further notice.

55.     As of October 30, 2020, Kentucky had at least 105,517 reported cases of COVID-19 and 1,524 deaths from the disease, with 24,134 cases and 331 deaths in Jefferson County.

*The Impact of this Crisis Event on the AJS Companies*

56.     The COVID-19 pandemic has had, and continues to have, a devastating effect on Plaintiffs' business operations, including the suspension or limitation of many of their operations at their restaurants and hotels. There is physical loss and damage at insured locations and attraction properties.  As a result, Plaintiffs have sustained significant losses of business income and extra expense.

57.     Schneider Hotels owns and operates the Galt House Hotel in downtown Louisville, which was re-established by Plaintiff as part of Louisville's Riverfront Urban Renewal Project. ALJSCO and Schneider Hotels have sustained significant losses of business income due to the cancellation of reservations at the Galt House Hotel and a significant reduction of new reservations at the hotel.  These losses are estimated to exceed $13,000,000.

58.     Schneider Fairgrounds owns and operates the Crowne Plaza hotel located near the Louisville, Kentucky airport. ALJSCO and Schneider Fairgrounds have sustained significant losses of business income due to the cancellation of reservations at the Crown Plaza hotel and a

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000014 of 000030

14

Filed          20-CI-006311       10/30/2020       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

significant reduction of new reservations at the hotel. These losses are estimated to exceed $3,000,000.

59.    Le Centre owns and operates the Embassy Suites in downtown Louisville. ALJSCO and Le Centre have sustained significant losses of business income due to the cancellation of reservations at the Embassy Suites hotel and a significant reduction of new reservations at the hotel. These losses are estimated to exceed $ 4,000,000.

60.    Schneider Waterfront owns the 3-tower, 25-story Waterfront Plaza, located at 321 W. Main St, in Louisville, KY.  Tenants at Schneider Waterfront have delayed in paying or failed to pay their rent, resulting in sustained significant losses of business income to ALJSCO and Schneider Waterfront.

61.    Schneider Riverfront owns the 23-story, 341,363 square foot One Riverfront Plaza office building located at 401 W. Main St, in Louisville, KY.  Tenants at Schneider Riverfront have delayed in paying or failed to pay their rent, resulting in sustained significant losses of business income to ALJSCO and Schneider Riverfront.

62.    Schneider Parking owns a parking deck in downtown Louisville, KY.  ALJSCO and Schneider Parking have suffered sustained significant losses of business income.

63.    The AJS Companies have also lost business income because they have lost the opportunity to invest the funds they would have earned had they not suffered significant losses of business income.

64.    Plaintiffs' properties have had confirmed cases of COVID-19.  Plaintiffs' employees have tested positive for COVID-19, including employees at each of the properties.

65.    Plaintiffs have had to incur extra expense to clean and modify the premises, including the construction of plexiglass barriers and social distancing signage.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000015 of 000030

Filed          20-CI-006311       10/30/2020       David L. Nicholson, Jefferson Circuit Clerk

Filed            20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

66.     Plaintiffs' business relies heavily on tourism and hospitality. The hotel revenue is strongly tied to events held in Louisville.

67.     For example, the Kentucky Derby, which is held at Churchill Downs, was postponed from May until September.  The Derby week is the biggest event of the year for the AJS Companies and attracts thousands of guests to their properties.  Facilities owned by the AJS Companies are at full capacity for the Derby week (which includes various horseraces and other activities) and host numerous parties and events, which are very profitable for the AJS Companies. The AJS Companies were hoping to mitigate some loss with a surge in bookings for the rescheduled Derby in September.  However, on August 21, 2020, Churchill Downs announced that fans would not be allowed at the September Derby.   This announcement followed an announcement by Churchill Downs that there had been 47 positive tests for COVID-19 conducted at Churchill Downs on its staff, vendors, and horsemen.  Following the announcement of no fans for the Derby, the AJS Companies saw a surge of cancellations for those properties.  The AJS Companies estimate this additional occurrence has caused substantial additional business income loss and extra expense.

68.     The AJS Companies' losses continue.  Due to the COVID-19 pandemic and related government orders, numerous events have been canceled or postponed, resulting in cancellations and lost revenue and income at Plaintiffs' properties.  The cancellations include, but are not limited to:

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
| --- | --- | --- | --- |
| Bell of Louisville | 4/29/2020 | Great Steamboat Race | Canceled |
| Broadway | 4/30/2020 | Pegasus Parade | Canceled |
| Cardinal Stadium | 7/9/2020 | Rolling Stones Concert | Canceled |

16

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000016 of 000030

Filed            20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
|---|---|---|---|
| Churchill Downs | 4/30/2020 | Thurby | Postponed to September 3, 2020 - No fans allowed |
| Churchill Downs | 5/1/2020 | Kentucky Oaks | Postponed to September 4, 2020 - No fans allowed |
| Churchill Downs | 5/2/2020 | Kentucky Derby | Postponed to September 5, 2020 - No fans allowed |
| Churchill Downs | 6/19/2020 | Day at the Races | Canceled |
| Galt House | 4/4/2020 | Fillies Derby Ball | Canceled |
| Galt House | 4/17/2020 | 64th Annual They're Off! Luncheon | Canceled |
| Galt House | 9/4/2020 | Trifecta Gala | Canceled |
| Kentucky Exposition Center | 3/26/2020 | 2020 Mid-America Trucking Show | Canceled |
| Kentucky Exposition Center | 4/2/2020 | Kentucky National Dairy Show and Sale | Canceled |
| Kentucky Exposition Center | 4/3/2020 | JVA World Challenge | Canceled |
| Kentucky Exposition Center | 5/8/2020 | National Archery in the Schools National Tournament | Canceled |
| Kentucky Exposition Center | 5/20/2020 | Kentucky Flea Market Memorial Day Spectacular | Canceled |
| Kentucky Exposition Center | 6/3/2020 | American Association of Woodturners | Canceled |
| Kentucky Exposition Center | 6/13/2020 | Kentucky Funeral Directors Association State Convention | Canceled |
| Kentucky Exposition Center | 6/22/2020 | Skills USA 2020 National Conference | Canceled |
| Kentucky Exposition Center | 6/28/2020 | Kentucky 4-H Horse Show | Canceled |
| Kentucky Exposition Center | 7/2/2020 | National Junior Summer Spectacular and Conference | Canceled |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000017 of 000030

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
|---|---|---|---|
| Kentucky Exposition Center | 7/4/2020 | Run for the Roses | Canceled |
| Kentucky Exposition Center | 7/9/2020 | Junior National Show | Canceled |
| Kentucky Exposition Center | 7/10/2020 | Battle in the Boro | Canceled |
| Kentucky Exposition Center | 7/17/2020 | All-In Hoopfest | Canceled |
| Kentucky Exposition Center | 7/24/2020 | Simmental Breeders Sweepstakes | Canceled |
| Kentucky Exposition Center | 8/20/2020 | Kentucky State Fair | Held with increased restrictions and reduced capacity |
| Kentucky Exposition Center | 8/28/2020 | Great Balloon Glow | Canceled |
| Kentucky Exposition Center | 9/12/2020 | Hometown Rising | Canceled |
| Kentucky Exposition Center | 9/18/2020 | Louder Than Life | Canceled |
| Kentucky Exposition Center | 9/25/2020 | Bourbon and Beyond | Canceled |
| Kentucky International Convention Center | 3/6/2020 | Heartland Payment | Canceled |
| Kentucky International Convention Center | 3/13/2020 | JamFest | Canceled |
| Kentucky International Convention Center | 3/16/2020 | 23rd Annual Applied Ergonomics Conference | Canceled |

Filed          20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000018 of 000030

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
|---|---|---|---|
| Kentucky International Convention Center | 3/20/2020 | NFAA Indoor National Championships | Canceled |
| Kentucky International Convention Center | 3/26/2020 | MagicFest | Canceled |
| Kentucky International Convention Center | 3/29/2020 | CLMA Knowledge Lab | Canceled |
| Kentucky International Convention Center | 4/6/2020 | Kentucky Spinal Cord Injury Research Center | Canceled |
| Kentucky International Convention Center | 4/7/2020 | Reliable Plant Conference and Exhibition | Canceled |
| Kentucky International Convention Center | 4/14/2020 | Together for the Gospel | Canceled |
| Kentucky International Convention Center | 4/17/2020 | U.S. Finals – Cheerleading Competition | Canceled |
| Kentucky International Convention Center | 4/24/2020 | Environment for the Aging | Canceled |
| Kentucky International Convention Center | 4/25/2020 | Da'Ville Drumline Showcase | Canceled |
| Kentucky International Convention Center | 5/5/2020 | RTI At Work Institute 2020 Solution Tree | Canceled |
| Kentucky International Convention Center | 5/8/2020 | Applause Talent – Dance Competition | Canceled |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000019 of 000030

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
|---|---|---|---|
| Kentucky International Convention Center | 5/13/2020 | Society of Gastroenterology Nurses | Canceled |
| Kentucky International Convention Center | 5/16/2020 | Battle of the Bluegrass 2020 | Rescheduled to October 10, 2020 |
| Kentucky International Convention Center | 5/30/2020 | Community Transportation Association | Canceled |
| Kentucky International Convention Center | 6/4/2020 | Dink Pickelball | Canceled |
| Kentucky International Convention Center | 6/6/2020 | JCPS Deeper Learning Conference | Canceled |
| Kentucky International Convention Center | 6/10/2020 | IWDC | Canceled |
| Kentucky International Convention Center | 7/19/2020 | Vault in the Ville | Canceled |
| Louisville Slugger Field | 4/21/2020 | Taste of Derby Festival | Canceled |
| Louisville Slugger Field | 6/30/2020 | Louisville Bats Minor League Baseball Season | Canceled |
| Private Residence | 9/4/2020 | Barnstable Brown Derby-eve Gala | Canceled |
| Waterfront Park | 3/7/2020 | Chick-fil-A Louisville Triple Crown of Running 2020 | Canceled |
| Waterfront Park | 4/18/2020 | Thunder Over Louisville | Canceled |
| Waterfront Park | 4/24/2020 | Waterfront Jam Concert Series | Canceled |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000020 of 000030

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

| EVENT LOCATION | DATE | EVENT NAME | STATUS |
|---|---|---|---|
| Waterfront Park | 4/25/2020 | Kentucky Derby Festival miniMarathon, Marathon and Rely | Canceled |
| Waterfront Park | 6/24/2020 | WFPK Waterfront Wednesday | Canceled |
| Waterfront Park | 7/4/2020 | Waterfront Park Fourth of July | Canceled |
| Waterfront Park | 7/17/2020 | Forecastle Festival | Canceled |
| Waterfront Park | 7/29/2020 | WFPK Waterfront Wednesday | Canceled |
| Waterfront Park | 8/5/2020 | Bourbonville | Canceled |
| Waterfront Park | 8/26/2020 | WFPK Waterfront Wednesday | Canceled |
| Waterfront Park | 8/27/2020 | Fest-a-Ville | Canceled |
| Waterfront Park | 8/30/2020 | Tour de Lou | Canceled |
| Waterfront Park | 9/30/2020 | WFPK Waterfront Wednesday | Canceled |
| YUM! Center | 3/14/2020 | Hot Wheels Monster Trucks | Rescheduled for Saturday, March 13, 2021 |
| YUM! Center | 3/20/2020 | NCAA Division I Women's Basketball 1st and 2nd Rounds | Canceled |
| YUM! Center | 3/27/2020 | Dan + Shay | Rescheduled for September 23, 2021 |
| YUM! Center | 3/28/2020 | Michael Buble | Rescheduled for March 17, 2021 |
| YUM! Center | 4/9/2020 | Disney on Ice | Canceled |
| YUM! Center | 4/18/2020 | Funder | Canceled |
| YUM! Center | 4/26/2020 | Elton John | Rescheduled for April 16, 2022 |
| YUM! Center | 5/17/2020 | Cirque du Soleil OVO | Canceled |
| YUM! Center | 5/18/2020 | WWE RAW | Canceled |
| YUM! Center | 5/24/2020 | Sturgill Simpson | Canceled |
| YUM! Center | 6/7/2020 | Dude Perfect | Rescheduled for June 18, 2021 |
| YUM! Center | 6/26/2020 | James Taylor | Rescheduled for June 25, 2021 |
| YUM! Center | 8/1/2020 | Janet Jackson | Canceled |
| YUM! Center | 8/12/2020 | Justin Bieber | Canceled |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000021 of 000030

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

69.     In sum, there are multiple insured occurrences causing the AJS Companies to sustain significant insured loss and damage, including but not limited to business income loss and extra expense.   These losses result from the COVID-19 pandemic and the issuance of various government orders noted above, including resulting changes in consumer and tenant behavior. There is a "crisis event" as defined by the Policy.  There is also "physical loss or damage" at insured locations and property owned by others upon which the AJS Companies rely, which triggers dependent property coverages contained in the Policy.

## Hartford's Denial of Coverage

70.     On March 17, 2020, Plaintiffs submitted a notice of claim to Hartford seeking coverage for its ongoing business losses caused by the COVID-19 pandemic and the government orders issued as a result (hereinafter referred to as the "Claims"). A true and correct copy of the Notice of Claim is attached hereto as Exhibit D.

71.     Soon after Plaintiffs submitted the Notice of Claim, Hartford verbally advised Plaintiffs that it was denying coverage and would provide a coverage denial letter.

72.     Plaintiffs continually followed-up with Hartford for nearly a month seeking a written explanation of the grounds for denying coverage.  On April 17, 2020, Hartford confirmed that "we do not have coverage for this event" and again promised a written determination at a later date.  A true and correct copy of the written denial is attached hereto as Exhibit E.

73.     Finally, on May 12, 2020, Hartford finally provided a written response, denying coverage.  A true and correct copy of the written response is attached hereto as Exhibit F.

74.     Hartford's denial misrepresents policy provisions and is otherwise contrary to its own policy terms and Kentucky law.

75.     At a minimum, Hartford should have accepted coverage under the Crisis Management and Event provisions described above.  Instead, it denied coverage because there was

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000022 of 000030

22

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

no evidence of a "malicious act," a requirement that does not exist in the Policy.  Hartford also wrongfully relied upon its after-the-fact virus exclusion and wrongfully failed to acknowledge the possibility of coverage under other provisions in the Policy.

## COUNT I
## DECLARATORY JUDGMENT

76.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

77.     The Policy is a binding contract under which Hartford was paid premiums in exchange for its contractual agreement to pay Plaintiffs' losses for claims covered under the Policy.

78.     The COVID-19 Civil Authority Orders or Crisis Event caused direct physical loss and damage to Plaintiffs' Covered Properties, requiring limitations, restrictions, and suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders or Crisis Event triggered the Business Income provision of Plaintiffs' Hartford policies.

79.     Hartford has denied coverage for the Claims under the Hartford Policy, including its refusal to indemnify Plaintiffs for the loss of business income resulting from the COVID-19 pandemic and the government orders that were issued as a result.

80.     An actual controversy exists between Plaintiffs and Hartford regarding the rights, duties and liabilities under the Policy, and Hartford's denial of coverage for the Claims. The controversy is of sufficient immediacy and magnitude to justify declaratory relief.

81.     Pursuant to Section 418.040 of the Kentucky Declaratory Judgment Act, Plaintiffs seek a judicial determination of their rights and Hartford's duties under the Hartford Policy, and that Hartford is obligated, pursuant to the terms of the Policy, to indemnify Plaintiffs for all past and future losses relating to the Claims at issue here.

82.     A binding judgment concluding the controversy may be entered by the Court.

23

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000023 of 000030

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

## COUNT II
## BREACH OF CONTRACT

83.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

84.    The Policy is a binding contract under which Hartford was paid premiums in exchange for its contractual agreement to pay Plaintiffs' losses for claims covered under the Policy.

85.    Plaintiffs gave timely notice and have otherwise complied with all of their contractual obligations under the Policy.

86.    Hartford has breached the insurance contract by, *inter alia*, refusing to provide coverage for the Claims resulting from the COVID-19 pandemic and the government orders that were issued in response.

87.    As a result of Hartford's breach of the insurance contract, Plaintiffs have suffered significant damages, including, but not limited to, the significant loss of business income that they have incurred resulting from the COVID-19 pandemic which Hartford is required to cover under the Policy but has refused to cover.

88.    Plaintiffs' damages are ongoing.

## COUNT III
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

89.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

90.    As the insurer under the Policy, Hartford owes Plaintiff coverage for the Claims resulting from the COVID-19 pandemic and the government orders that were issued in response.

91.    Hartford denied Plaintiff coverage for its Claims and misrepresented the Policy's coverage terms.

92.    Hartford has a duty to investigate claims in good faith and promptly pay valid claims.

93.    Upon information and belief, Hartford conducted no investigation at all.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000024 of 000030

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

94.     There is an implied covenant of good faith and fair dealing in every contract which requires a party to in good faith do everything necessary to effectuate the purposes of the contract and to do nothing to frustrate those purposes.  Hartford has a duty to act in good faith and to deal fairly with Plaintiffs, and to attempt to effectuate a fair and reasonable settlement of Plaintiffs' claim.

95.     Hartford lacks a good faith basis to deny the claim.

96.     Hartford knew that there was no reasonable basis for denying the claim.

97.     Hartford's actions are outrageous, intentional wrongdoing, and in reckless disregard to Plaintiffs' rights.

98.     Hartford either knew that it did not have a reasonable basis for denying coverage to Plaintiff or acted in reckless disregard of its rights.

99.     Plaintiffs have suffered financial loss due to Hartford's bad faith denial of its claim.

100.    Plaintiffs are entitled to compensatory and extracontractual damages for Hartford's bad faith.

**COUNT IV**
**VIOLATION OF KENTUCKY'S**
**UNFAIR CLAIMS SETTLEMENT PRACTICES ACT**

101.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

102.    Hartford has a duty to investigate claims in good faith and promptly pay valid claims.

103.    Upon information and belief, Hartford conducted no investigation at all.

104.    Hartford has a duty to act in good faith and to deal fairly with Plaintiffs, and to attempt to effectuate a fair and reasonable settlement of Plaintiffs' claim.

105.    Hartford lacks a good faith basis to deny the claim.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000025 of 000030

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311    10/30/2020           David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

106.    Hartford's actions are outrageous, intentional wrongdoing, and in reckless disregard to Plaintiffs' rights.

107.    Hartford violated the Unfair Claims Settlement Practices Act, as set forth in KRS 304.12-230 by:

  a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

  b. Failing to adopt and implement reasonable standards for a prompt investigation of claims arising under insurance policies;

  c. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

  d. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

  e. Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

  f. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

108.    Hartford violated the Unfair Claims Settlement Practices Act, and Plaintiff has suffered damages as a result of the violation.

109.    As a proximate result of the aforementioned wrongful conduct of Hartford, Plaintiff has suffered damages, including attorneys' fees, costs incurred, and other incidental damages.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000026 of 000030

Filed          20-CI-006311    10/30/2020           David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

110.     By Hartford's failure to comply with to the Unfair Claims Settlement Practices Act standards and by their wanton and willful conduct in their dealings with Plaintiff, Hartford has exhibited a willful and wanton disregard of the trust imputed to it inasmuch as these actions constitute oppression, fraud, and/or malice, showing such bad faith that these acts entitle Plaintiff to statutory and punitive damages and its attorneys' fees and costs incurred in bringing this action.

**COUNT V**
**VIOLATION OF KRS § 304.12-235**

111.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

112.     Hartford failed to make a good faith attempt to settle Plaintiffs' claim within thirty days of being provided notice of his claim.

113.     Hartford's denial is without reasonable foundation.

114.     Plaintiffs are entitled to recover his attorneys' fees and costs incurred in obtaining a claim settlement or verdict, and pre-claim payment of statutory interest at 12% from thirty days after the proof of claim was made to Hartford until the claim is paid.

**IN THE ALTERNATIVE**
**COUNT VII**
**REFORMATION DUE TO MISTAKE**

115.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

116.     The Virus Exclusion should not apply because it would render virus coverage granted by the Policy illusory, contrary to Kentucky law.  To the extent that the Virus Exclusion has any effect on the coverage determination, the Policy fails to express the intent of the parties because of a mistake of one or both parties as to the contents or effect of the Policy.

117.     Particularly, one or both parties had a mistake as to the applicability of the Virus Exclusion to the Policy, including but not limited to virus coverage under the Crisis Management

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000027 of 000030

27

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

coverage grant.  If unilateral mistake, that mistake was accompanied by fraud or inequitable conduct sufficient to justify reformation under Kentucky law.

118.    Plaintiffs are entitled to have the Policy reformed to remove the Virus Exclusion.

## IN THE ALTERNATIVE
## COUNT VIII
## FRAUD BY OMISSION

119.    Plaintiffs repeat the allegations set forth above as if fully set forth herein.

120.    The Hartford had a duty to clearly and timely disclose that it was attempting to insert a purported Virus Exclusion into the Policy.

121.    The Hartford intentionally failed to adequately or reasonably disclose that it had inserted a purported Virus Exclusion into the Policy and fraudulently attempted to add it after the meeting of the minds had occurred.

122.    The Hartford intended for Plaintiffs to rely on its omission, and Plaintiffs did so to their detriment.  As a result of The Hartford's fraudulent omission, Plaintiffs have suffered actual damages.

123.    Plaintiffs are entitled to have the Policy reformed to remove the Virus Exclusion. Plaintiffs are also entitled to compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs AL J. Schneider Co.; Schneider Hotels, LLC; Schneider Fairgrounds, LLC; Schneider Waterfront, LLC, Schneider Riverfront, LLC, Schneider Parking, LLC, and Le Centre on Fourth, LLC respectfully request the following relief:

A.     Judgment in their favor and against Hartford on all counts of the Complaint;

B.     A declaration that the Policy's Crisis Management coverage part provides coverage for the Claims and that Hartford has a duty to indemnify Plaintiffs for the Claims under the Crisis Management coverage part of the Policy;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000028 of 000030

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

C.      A declaration that the Policy provides coverage for the Claims and that Hartford has a duty to indemnify Plaintiffs for the Claims under the Policy;

D.      An award for compensatory damages in an amount to be determined at the trial of this cause;

E.      An award against Hartford for bad faith or fraud, including an award of compensatory and punitive damages in the maximum amount allowed by law;

F.      An award of Plaintiffs' reasonable attorneys' fees and costs;

G.      An award of pre-judgment and post-judgment interest, as permitted by law;

H.      A trial by jury on all issues so triable;

I.      Such other further relief as the Court deems just and proper; and

J.      In the alternative, issue an order reforming the contract to remove the Virus Exclusion and providing other relief as requested above.

Respectfully submitted,

/s/ *David S. Kaplan*
David S. Kaplan
Andrea N. Aikin
Kaplan Johnson Abate & Bird LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1631
dkaplan@kaplanjohnsonlaw.com
aaikin@kaplanjohnsonlaw.com

OF COUNSEL:

Brian R. Epling
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: 615-252-3523
bepling@bradley.com

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000029 of 000030

Filed        20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:14 PM
84382

Alex J. Purvis
        (*pro hac vice application to be filed*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 1000
Jackson, MS 39201
Telephone:  601-948-8000
apurvis@bradley.com

Emily M. Ruzic
        (*pro hac vice application to be filed*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
Birmingham, AL 35203
Telephone: 205-521-8447
eruzic@bradley.com

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000030 of 000030

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT A

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM

COMMERCIAL LARGE PROPERTY



# HELP PROTECT YOUR LARGE PROPERTY CUSTOMERS WITH OUR SEAMLESS, CUSTOMIZED COVERAGE.

The Hartford has expanded our large property offerings, giving you even more to offer customers. And our knowledgeable, experienced underwriters are here to help. They'll work with you to help ensure quick, accurate decisions for addressing the wide range of exposures your customers face.

## BUILD A TAILORED POLICY WITH PROPERTY ELITE

Our new Property Elite and Property Elite Global forms enable us to build a seamless, tailored policy for each large property customer with global coverage available for locations worldwide. Our specialized policy forms provide greater flexibility with industry specific coverages and optional endorsements available to meet unique customer needs.

### Coverage and Capabilities

- Total insurable value: greater than $200MM
- Blanket limits and loss limits
  - » Quota Share
  - » Shared/layered
- Admitted paper
- Broad all-risk perils, including equipment breakdown, catastrophic cover and terrorism
- Customizable coverage options; add the appropriate coverage when you need it

For greater protection, combine our property coverage with The Hartford's workers' compensation, general liability, commercial auto, umbrella and marine coverage.



**FEATURES**

- Simplified language
- Global capabilities with a single underwriter
- Coverages tailored for eight specific industries (Education, Real Estate, Life Sciences, Technology, Manufacturing, Healthcare, Retail and Hospitality)

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH· : 000002 of 000111



The Buck's Got Your Back

THE HARTFORD

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## HELP YOUR CLIENTS PROTECT THEIR BUSINESS AND BOTTOM LINE

Access our international network of risk engineering consultants for:

- Special hazards and management programs evaluation
- Review and identify production bottlenecks and contingencies
- Assistance with business continuity management planning
- Preconstruction consulting, site surveys and plan reviews, including sprinkler and water supply installations
- Guidance in developing electrical preventive maintenance (EPM) program
- Impairment monitoring services
- Help in developing a hot work program

## LARGE PROPERTY CUSTOMERS BENEFIT FROM OUR MOST EXPERIENCED CLAIMS STAFF

Our claim experts will work hard to understand your clients' business needs and partner to find the right solutions to help them prevail.

**Large Property claims** are handled by our major case organization, staffed by highly skilled adjusters with an average of 23 years of property claims experience. They're available around the country for all claims.

**For business interruption claims,** our certified public accountants help assess lost business. They understand the underlying coverage and adjustment issues and work with your finance experts for fast, accurate calculations.

**Dedicated claims expert** for equipment breakdown in-house.

**Our dedicated catastrophe claims operation** coordinates activity and communication for hurricanes, severe hail storms, blizzards, and other disasters, working closely with our major case team.

## APPETITE: COMMERCIAL LARGE PROPERTY

We're committed to providing coverage solutions to a wide variety of industries:

- Business and Professional Services
- Financial Institutions
- Healthcare
- Hotels
- Manufacturing
- Real Estate
- Restaurants
- Retail
- Technology
- Airports
- Stadiums
- Public Entities
- Education

## LARGE PROPERTY EXPERTS

Our knowledgeable and experienced underwriters will work with you to help ensure quick and accurate decisions when it comes to your large property needs.  Find your underwriter at TheHartford.com/large-property-uw

**GET QUICK, ACCURATE DECISIONS FROM OUR LARGE PROPERTY EXPERTS.**
Learn more by Contacting Them Today.

THE
HARTFORD

Business Insurance
Employee Benefits
Auto
Home

This document outlines in general terms the coverages that may be afforded under a policy from The Hartford. All policies must be examined carefully to determine suitability for your needs and to identify any exclusions, limitations or any other terms and conditions that may specifically affect coverage. In the event of a conflict, the terms and conditions of the policy prevail. All coverages described in this document may be offered by one or more of the property and casualty insurance company subsidiaries of The Hartford Financial Services Group, Inc. Coverage may not be available in all states or to all businesses. Possession of these materials by a licensed insurance producer does not mean that such producer is an authorized agent of The Hartford. To ascertain such information, please contact your state Department of Insurance or The Hartford at 1-888-203-3823. All information and representations herein are as of October 2019.

In Texas and California, the insurance is underwritten by Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Lloyd's Insurance Company, Hartford Insurance Company of the Midwest, Navigators Insurance Company, Navigators Specialty Insurance Company, Maxum Casualty Insurance Company, Maxum Indemnity Company, Trumbull Insurance Company, Twin City Fire Insurance Company, Hartford Underwriters Insurance Company, Property and Casualty Insurance Company of Hartford and Sentinel Insurance Company, Ltd.

The Hartford® is The Hartford Financial Services Group, Inc. and its subsidiaries, including Hartford Fire Insurance Company. Its headquarters is in Hartford, CT.

19-ML-106597 | © October 2019 The Hartford

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH · 000003 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT B

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382



# PROPERTY ELITE POLICY FOR HOSPITALITY

THE HARTFORD

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000005 of 000111

PEG 49 03 01 20

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# Declarations: Property Elite Policy

This POLICY is provided by Hartford Fire Insurance Company. One Hartford Plaza, Hartford, CT 06155. A stock insurance company.

**Named Insured and Mailing Address:**

AL J SCHNEIDER CO

325 W MAIN ST STE 1810

LOUISVILLE, KY 40202-4255

**Policy Number:** 33UFJAE3AAF

**Name of Agency/Broker:**

A J GALLAGHER RISK MNGT SERV INC

9300 SHELBYVILLE RD STE 704

LOUISVILLE, KY 40222

**Code:** 33752338

**Policy Period:** 03/01/2020 to 03/01/2021, 12:01 a.m., Standard time at your mailing address shown here.

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**Coverage Territory:** The Coverage Territory is the United States of America (including its territories and possessions) and Canada.

| TOTAL PREMIUM | $661,700.00* |
|---|---|

*Total Premium includes the premium for all Coverage issued to you in this policy. Total Premium includes any applicable fees and surcharges. Total Premium may change based on coverage changes made through endorsement.

Insured includes AL J SCHNEIDER CO and any subsidiary, and the interest of AL J SCHNEIDER CO in any partnership or joint venture in which AL J SCHNEIDER CO has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to Covered Property which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

| POLICY LIMIT | $500,000,000 |
|---|---|

This Property Elite Policy consists of the Declarations, Coverage Forms, and any other Forms and endorsements issued to be a part of the Policy. Hartford Fire Insurance Company  and its affiliated property and casualty insurance companies.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000006 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## Premium Summary

States laws and regulations may require you to pay taxes, fees, surcharges or other costs.  We have listed those charges below.

| DESCRIPTION | COST |
|---|---|
| Premium | $650,000.00 |
| Terrorism Premium* | $18,932.00 |
| *Included in Premium | |
| Taxes & Surcharges | |
|    KY Surcharge | $11,700.00 |
| Total Taxes and Surcharges | $11,700.00 |
| TOTAL COST | $661,700.00 |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000007 of 000111

Filed          20-CI-006311      10/30/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
86198

Note: Words and phrases that appear in **bold** print type have special meaning. Refer to DEFINITIONS section of Property Elite Global Policy for Definitions.

## LIMITS OF INSURANCE

- Insurance applies only to Covered Property, Coverages, Coverage Extensions or Causes of Loss for which a Limit of Insurance or the words "Included in the Policy Limit of Insurance" is shown below.
- If the words NOT COVERED are shown, then no coverage is provided for that Property, Coverage, Coverage Extension or Cause of Loss.
- The Policy Limit of Insurance is the most we will pay in any one occurrence for all covered loss or damage under this Policy regardless of the number of claims, Coverages, Coverage Extensions or Causes of Loss and number of Insured Premises involved in that occurrence.
- If specific Limits of Insurance apply to specific types of Covered Property, Coverages, Coverage Extensions, or Causes of Loss, such Limits of Insurance are included in, and not in addition to the Policy Limit of Insurance.
- The most we will pay for loss or damage in any one occurrence is the smallest applicable Limit of Insurance shown in the Declarations or Endorsements applicable to each specific type of Covered Property, Coverage, Coverage Extension or Cause of Loss.

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| The valuation provision of Replacement Cost applies to Covered Property unless otherwise stated. | |
| Real Property | INCLUDED IN POLICY LIMIT |
| Business Personal Property | INCLUDED IN POLICY LIMIT |
| Valuation | Replacement Cost |
| Electronic Data | $50,000 |

## STATED COVERED CAUSES OF LOSS

The Limits of Insurance applicable to the following STATED COVERED CAUSES OF LOSS are included in, and not in addition to the Policy Limit of Insurance. The most we will pay in any one occurrence for all loss or damage caused by or resulting from any STATED COVERED CAUSES OF LOSS is the applicable Annual Aggregate Limit of Insurance.

Applicable to Earth Movement and Flood (hereafter, Stated Cause of Loss) Annual Aggregate Limits of Insurance:

Each Limit of Insurance applicable to **Earth Movement** or **Flood** is an **Annual Aggregate** and represents the most we will pay for all covered losses caused by or resulting from **Earth Movement** or **Flood** during the policy term. The amount we pay for each covered loss reduces the amount of coverage available for future losses.

1. The Earth Movement or Flood Annual Aggregate Policy Limit of Insurance represents the most we will pay for all covered losses caused by or resulting from that Stated Cause of Loss during the policy term. The amount we pay for each covered **Earth Movement** or **Flood** loss erodes the Annual Aggregate Policy Limit of Insurance applicable to that Stated Cause of Loss.

2. The Earth Movement or Flood Annual Aggregate Limit of Insurance applicable to any described Region, Zone, geographic area or territory represents the most we will pay for all covered losses caused by or resulting from that Stated Cause of Loss in that described Region, Zone, geographic area or territory during the policy term. The amount we pay for such losses erodes:

   a. The Earth Movement or Flood Annual Aggregate Limit of Insurance applicable to the described Region, Zone, geographic area or territory; and

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000008 of 000111

Filed          20-CI-006311       10/30/2020      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
64023

b.   The Earth Movement or Flood Policy Annual Aggregate Limit of Insurance.

3.   The Earth Movement or Flood Annual Aggregate Limit of Insurance applicable to any specific **Insured Premises** represents the most we will pay for all covered losses caused by that Stated Cause of Loss at that specific **Insured Premises** during the policy term. The amount we pay for each covered loss erodes:

a.   The Earth Movement or Flood Annual Aggregate Limit of Insurance applicable to that **Insured Premises**;

b.   The Earth Movement or Flood Annual Aggregate Limit of Insurance applicable to the described Region, Zone, geographic area or territory in which that **Insured Premises** is situated; and

c.   The Earth Movement or Flood Annual Aggregate Policy Limit of Insurance.

We will not pay for any loss or damage caused by or resulting from **Earth Movement** or **Flood** once any Annual Aggregate Limit of Insurance is exhausted. The Hartford is under no obligation to offer or provide additional limits of insurance for any Stated Cause of Loss where the limit has been exhausted.

| EARTH MOVEMENT COVERAGE/DESCRIPTION | ANNUAL AGGREGATE LIMIT OF INSURANCE |
|---|---|
| All covered loss or damage arising out of Earth Movement | $150,000,000 |
| The Limits of Insurance applicable to the following are included in the Earth Movement Annual Aggregate Limit of Insurance shown above and not in addition to the Earth Movement Annual Aggregate Limit of Insurance. | |
| Alaska & Hawaii | NOT COVERED |
| California | NOT COVERED |
| New Madrid Earthquake Zone (As Defined in form PEG 10 92) | NOT COVERED |
| Pacific Northwest Earthquake Zone (As Defined in form PEG 10 92) | NOT COVERED |

| FLOOD COVERAGE/DESCRIPTION | ANNUAL AGGREGATE LIMIT OF INSURANCE |
|---|---|
| All covered loss or damage from Flood | $25,000,000 |
| The Limits of Insurance applicable to the following are included in the Flood Annual Aggregate Limit of Insurance shown above and not in addition to the Flood Annual Aggregate Limit of Insurance. | |
| All covered loss or damage situated in Flood Zone A and Flood Zone V or Zones prefixed A and V as designated by the National Flood Insurance Act of 1968 (or any subsequent amendment) | $10,000,000 |

| NAMED STORM COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| All covered loss or damage arising out of Named Storm | INCLUDED IN POLICY LIMIT |
| The Limits of Insurance applicable to the following are included in the Named Storm Limit of Insurance shown above and not in addition to the Named Storm Limit of Insurance shown above. | |
| Tier 1 High Hazard Wind Zone (Texas to Virginia, Hawaii, Puerto Rico and U.S. Virgin Islands) (As Defined in form PEG 10 87) | NOT COVERED |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000009 of 000111

Filed                20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84638

| NAMED STORM COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Tier 1 High Hazard Wind Zone (Consisting of Maryland to Maine) (As Defined in form PEG 10 87) | NOT COVERED |
| High Hazard Wind Zone (Florida) | NOT COVERED |
| Tier 2 High Hazard Wind Zone (Texas to North Carolina) (As Defined in form PEG 10 87) | NOT COVERED |

| EQUIPMENT BREAKDOWN COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE EQUIPMENT BREAKDOWN ACCIDENT |
|---|---|
| Equipment Breakdown | $100,000,000 |
| Waiting Period (Hours) | 24 Hour(s) |
| Equipment Breakdown Coverage Extensions | |
| Chlorofluorocarbons Refrigerants Limit | Included within Equipment Breakdown Limit |
| Expediting Expenses Limit | $1,000,000 |
| Hazardous Substances Limit | $100,000 |
| Perishable Goods in Transit | Excluded |
| Spoilage Limit | $1,000,000 |

| ELECTRONIC VANDALISM COVERAGE/DESCRIPTION | ANNUAL AGGREGATE LIMIT OF INSURANCE |
|---|---|
| Electronic Vandalism | $300,000 |

## ADDITIONAL CAUSE(S) OF LOSS

The Limits of Insurance applicable to the following ADDITIONAL CAUSES OF LOSS are included in, and not in addition to, the Policy Limit of Insurance. The most we will pay in any one occurrence for all loss or damage caused by or resulting from any ADDITIONAL CAUSE OF LOSS is the applicable Limit of Insurance.  The Limit of Insurance applicable to any described Region, Zone, geographic area or territory represents the most we will pay for all covered losses caused by or resulting from that ADDITIONAL CAUSE OF LOSS in that described Region, Zone, geographic area or territory.

When the Limit of Insurance applicable to any ADDITIONAL CAUSE OF LOSS is an **Annual Aggregate,** the most we will pay for all covered losses caused by or resulting from the ADDITIONAL CAUSE OF LOSS during the policy term is the amount shown.  The amount we pay for each covered loss reduces the amount of coverage available for future losses.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000010 of 000111

Filed                      20-CI-006311        10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
54928

| RADIOACTIVE CONTAMINATION COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| RADIOACTIVE CONTAMINATION<br><br>(Sudden and accidental radioactive contamination from material used or stored or from processes conducted at the Insured Premises): | $25,000 |

## COVERAGE EXTENSIONS

1. The Limits of Insurance applicable to the Coverage Extensions include coverage for **Business Income** and **Extra Expense** unless otherwise stated, and specific limits of insurance which apply to specified Coverage Extensions are included in and not in addition to the Policy Limit of Insurance. The most we will pay for all loss or damage (including any applicable **Time Element** loss) covered by any Coverage Extension in any one occurrence is the Limit of Insurance shown in the Declarations.

   The most that we will pay in any one occurrence for all loss or damage with respect to:

   a. Miscellaneous property as set forth in the Miscellaneous Unnamed Locations Coverage Extension;

   b. **Newly acquired property** as set forth in the Newly Acquired Property Coverage Extension; or

   c. Locations for which coverage is provided under the Errors or Omissions Coverage Extension,

   is the corresponding Miscellaneous Unnamed Locations, Newly Acquired Property or Errors or Omissions Limit of Insurance, regardless of any other applicable coverages, Coverage Extensions or Time Element Coverage Extensions.

2. We will not pay for any loss or damage under any Coverage Extension when NOT COVERED is shown in the Declarations or by Endorsement for that corresponding item.

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Accounts Receivable | $2,500,000 |
| Brands and Labels | Included in the Business Personal Property Limit |
| Claim Expenses | $100,000 |
| Cloud Computing Data | |
|    Combined Physical Damage and Time Element Limit | $500,000 |
| Contract Penalties | $500,000 |
| Debris Removal | $100,000,000 |
| Deferred Sales | $1,000,000 |
| Errors or Omissions | $10,000,000 |
| Expediting Expenses | $10,000,000 |
| Fine Arts | |
|    Limit (Per Item) | $50,000 |
|    Limit (Per Occurrence) | $1,000,000 |
| Fire Department Service Charge | $5,000,000 |
| Fungus, Wet Rot, Dry Rot | |
|    Combined Physical Damage and Time Element Limit | $500,000 |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000011 of 000111

Filed                20-CI-006311        10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
24576

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Green Coverage | |
|     Combined Physical Damage and Time Element Limit | $1,000,000 |
| Land and Water - Pollutants and Contaminants Cleanup | |
|     Combined Physical Damage and Time Element Limit | $250,000 |
| Locks and Keys | $250,000 |
| Miscellaneous Unnamed Locations | |
|     Combined Physical Damage and Time Element Limit | $10,000,000 |
| Money | $10,000 |
| Newly Acquired Property | |
|     Combined Physical Damage and Time Element Limit | $10,000,000 |
|     Number of Days | 120 Day(s) |
| Ordinance or Law | |
|     Ordinance or Law Coverage D – Increased Period of Restoration | Included in the Real Property Limit |
|     Ordinance or Law Coverage E - Decontamination and Removal Costs Limit | $5,000,000 |
|     Ordinance or Law Coverages B and C - Demolition & Increased Cost of Construction Limit | $50,000,000 |
|     Ordinance or Law Coverage A – Value of the Undamaged Building | Included in the Real Property Limit |
| Outdoor Property | $1,000,000 |
| Pairs and Sets | Included in the Business Personal Property Limit |
| Preservation and Protection of Property | $1,000,000 |
| Reward Coverage | $100,000 |
| Service Interruption | |
|     Combined Physical Damage and Time Element Limit | $10,000,000 |
|     Qualifying Period | 48 Hour(s) |
| Spoilage | |
|     Combined Physical Damage and Time Element Limit | $1,000,000 |
| Transit | |
|     Combined Physical Damage and Time Element Limit | $1,000,000 |
| Valuable Papers | $1,000,000 |

## TIME ELEMENT COVERAGE

The Limits of Insurance applicable to **Time Element** are included in, and not in addition to, the Policy Limit of Insurance.  We will not pay for any loss or damage under **Time Element** when NOT COVERED is shown in the Declarations or by Endorsement for that corresponding item.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000012 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Business Income | INCLUDED IN POLICY LIMIT |
| Extra Expense Limit | $10,000,000 |
| Ordinary Payroll | Limited to 90 Days |

## TIME ELEMENT COVERAGE EXTENSIONS

Time Element Coverage Extensions apply only when a Limit of Insurance, a number of days or the term INCLUDED is shown in the Declarations.  The Limits of Insurance applicable to Time Element Coverage Extensions, unless otherwise stated, are included in the Business Income and Extra Expense Limit of Insurance as stated in the Declarations and are not in addition to the Business Income and Extra Expense Limit of Insurance.

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Attraction Properties | $5,000,000 |
| Miles from Insured Premises | 25 Mile(s) |
| Number of Days | 30 Day(s) |
| Qualifying Period | 48 Hour(s) |
| Civil or Military Authority | |
| Miles from Insured Premises | 1 Mile(s) |
| Number of Days | 30 Day(s) |
| Contingent Business Interruption | |
| Direct Contingent Properties | $1,000,000 |
| Direct Contingent Properties Earth Movement Annual Aggregate Limit | NOT COVERED |
| Direct Contingent Properties Flood Annual Aggregate Limit | NOT COVERED |
| Indirect Contingent Properties | NOT COVERED |
| Qualifying Period | 48 Hour(s) |
| Crisis Management | |
| Number of Days | 180 Day(s) |
| Denial of Service | $100,000 |
| Qualifying Period | 48 Hour(s) |
| Electronic Extortion Demand | $10,000 Annual Aggregate |
| Extended Income | |
| Number of Days | 365 Day(s) |
| Ingress or Egress | $5,000,000 |
| Miles from Insured Premises | 1 Mile(s) |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000013 of 000111

Filed                    20-CI-006311    10/30/2020           David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
94878

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Number of Days | 30 Day(s) |
| Qualifying Period | 72 Hour(s) |
| Logistics Extra Cost | $250,000 |
| Research and Development Expense | $100,000 |
| Royalties | $100,000 |
| Soft Costs | $2,500,000 |

**ADDITIONAL COVERAGE EXTENSIONS, ENDORSEMENTS AND ADDITIONAL SUBLIMITS**

| COVERAGE/DESCRIPTION | LIMIT OF INSURANCE IN ANY ONE OCCURRENCE |
|---|---|
| Contractor's Equipment | |
| Contractor's Limit | $1,000,000 |
| Contractor's Per Item Limit | $100,000 Per Item |
| Valuation | Actual Cash Value |
| Hospitality Specialized Coverages | |
| Communicable Disease Contamination: Annual Aggregate Limit | $250,000 Annual Aggregate |
| Communicable Disease Contamination: Waiting Period (Hours) | 48 Hour(s) |
| Emergency Evacuation Expenses Limit | $500,000 |
| Franchisee Upgrade Limit | $100,000 |
| Guest Relocation Expenses Limit | $500,000 |
| Innkeeper's Legal Liability: Per Occurrence Limit | NOT COVERED |
| Leasehold Interest | $5,000,000 |

## DEDUCTIBLES

The following deductible amounts shall apply to loss or damage.

| DEDUCTIBLE | IN ANY ONE OCCURRENCE |
|---|---|
| Policy Deductible | |
| Combined Physical Damage and Time Element Deductible | $100,000 |
| Business Income | |
| Waiting Period (Hours) | 48 Hour(s) |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000014 of 000111

Filed          20-CI-006311     10/30/2020     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
94849

| EARTH MOVEMENT DEDUCTIBLE | IN ANY ONE OCCURRENCE |
|---|---|
| Earth Movement | |
| Combined Physical Damage and Time Element Deductible | $100,000 |

| FLOOD ZONE DEDUCTIBLE | IN ANY ONE OCCURRENCE |
|---|---|
| Flood | |
| Combined Physical Damage and Time Element Deductible | $100,000 |
| All covered loss or damage situated in Flood Zone A and Flood Zone V or Zones prefixed A and V as designated by the National Flood Insurance Act of 1968 (or any subsequent amendment) | |
| For each covered building and its contents separately, we will deduct the maximum amount available under the National Flood Insurance Program whether or not the coverage is purchased or maintained.<br><br>In addition, a $500,000. deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this policy and any difference in the valuation between the policies | |
| Zone V and A Combined Time Element and Physical Damage Deductible | $1,000,000 |
| We will apply the applicable Deductible to each separate Location where the direct physical loss or direct physical damage occurred regardless of the number of Locations involved in any one occurrence. | |

| NAMED STORM DEDUCTIBLE | IN ANY ONE OCCURRENCE |
|---|---|
| Named Storm | |
| Combined Physical Damage and Time Element Deductible | $100,000 |

| EQUIPMENT BREAKDOWN DEDUCTIBLE | IN ANY ONE OCCURRENCE |
|---|---|
| Equipment Breakdown | |
| Physical Damage Deductible | $100,000 |

## APPLICATION OF DEDUCTIBLES

1. We will not pay for any loss or damage until the amount of the loss or damage exceeds the applicable Deductible in any one occurrence. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

2. The Policy Deductible applies to all Covered Causes of Loss, coverages and types of property insured under this Policy for which no deductible is specifically shown in the Declarations, unless stated otherwise.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000015 of 000111

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
94694

**3.** Deductibles apply separately to each **Insured Premises** where the direct physical loss or damage occurs regardless of the number of **Insured Premises** involved in any one occurrence when specifically stated in the Declarations.

**4.** If two or more deductibles apply to an occurrence, the largest deductible will apply. If a deductible applies to direct physical loss or damage and another deductible applies to **Time Element**, both deductibles will be applied.

**5.** We will not pay for the actual loss of **Business Income** or **Rental Value** you sustain in any one occurrence until the necessary interruption of your business or rental operations exceeds the applicable Waiting Period shown in the Declarations. We will then pay the amount of actual loss sustained in excess of the Waiting Period, less the actual loss of business or rental income sustained during the Waiting Period, up to the applicable Limit of Insurance. In the event that more than one Waiting Period is applicable, we will apply only the longest Waiting Period.

**6.** **Qualifying Period** will apply in addition to any applicable Time Element Deductible.

**7.** Percentage Deductibles

    **a.** If both a percentage deductible and minimum dollar deductible are shown for a specific Covered Cause of Loss, then the largest deductible will be applied. Deductibles apply separately to each **Insured Premises** where the direct physical loss or damage occurs regardless of the number of **Insured Premises** involved in any one occurrence when specifically stated in the Declarations.

    **b.** Total Values Percentage Deductible will be calculated by applying the percentage shown in the Declarations to the combined **Real Property**, **Business Personal Property** and **Time Element** values at the **Insured Premises** that sustained the covered loss or damage.

    **c.** Per Unit of Insurance Percentage Deductible will be equal to the percentage of values calculated for, and applied separately to, each of the following:

        **(1)** Each individual item of **Real Property** that sustains loss or damage;

        **(2)** **Business Personal Property** that sustains loss or damage at each **Insured Premises;**

        **(3)** **Business Personal Property** in the open that sustains loss or damage at each **Insured Premises**; and

        **(4)** **Business Income** or **Rental Value** impacted by the loss or damage to property at each **Insured Premises**.

    **d.** The values used to calculate a percentage deductible shall be the most recent Statement of Values on file with us.

    **e.** If the values for any **Real Property** or **Business Personal Property** are not specified, the values will be determined at the time of loss or damage and the applicable percentage will be applied. If the values for **Time Element** at an **Insured Premises** are not specified, the values will be determined at the time of loss or damage and will be calculated for the 12 months following the inception date of the Policy Period in which the loss occurs. If the values for **Time Element** cannot be determined for a specific **Insured Premises** where loss or damage occurs, the percentage will be applied to the actual loss of **Business Income** or **Rental Value** you sustain during the **Period of Restoration** and **Extended Income** period in any one occurrence.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Lisa Levin, Secretary

Douglas Elliot, President

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000016 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382



THE
HARTFORD

# PROPERTY ELITE FORM

Various provisions in this Policy restrict coverage. Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear throughout this Policy in **bold** print type have special meaning. Refer to the DEFINITIONS section.

## SECTION **I**. COVERAGE

### **A.** INSURING AGREEMENT

We will pay for all risks of direct physical loss or damage by a **Covered Cause of Loss** to Covered Property at an **Insured Premises** (or within 1,000 feet thereof) and while such Covered Property is in the Coverage Territory.

### **B.** COVERAGE TERRITORY

The Coverage Territory is the United States of America (including its territories and possessions) and Canada.

### **C.** LIMITS OF INSURANCE

1. The Policy Limit of Insurance stated in the Declarations is the most we will pay in total in any one occurrence for covered loss or damage under this Policy for **Real Property**, **Business Personal Property**, **Time Element** Coverages, Coverage Extensions, or any applicable **Covered Cause of Loss**.

2. Specific limits of insurance which apply to specified types of Covered Property, specified Coverages, specified Coverage Extensions, or specified **Covered Causes of Loss** are included in and not in addition to the Policy Limit of Insurance.

3. The most we will pay for loss or damage in any one occurrence is the smallest applicable Limit of Insurance shown in the Declarations or Endorsements.

4. Any **Annual Aggregate** Limit of Insurance in this Policy is the maximum amount payable for all covered loss or for the applicable coverage or **Covered Cause of Loss** regardless of the number of occurrences during the **Policy Year**.

5. We will not pay for any loss or damage to any property, under any Coverage Extension, or resulting from any cause of loss, when "NOT COVERED" is shown in the Declarations or by Endorsement for that corresponding item.

6. The Limits of Insurance applicable to the Coverage Extensions includes coverage for **Business Income** and **Extra Expense** unless otherwise stated, and are included in and not in addition to the Policy Limit of Insurance stated in the Declarations. The most we will pay for all loss or damage (including any applicable **Time Element** loss) covered by any Coverage Extension in any one occurrence is the Limit of Insurance shown in the Declarations.

   The most that we will pay in any one occurrence for all loss or damage with respect to:

   **a.** Miscellaneous property as set forth in the Miscellaneous Unnamed Locations Coverage Extension;

   **b.** Newly acquired property as set forth in the Newly Acquired Property Coverage Extension; or

   **c.** Locations for which coverage is provided under the Errors or Omissions Coverage Extension,

   is the corresponding Miscellaneous Unnamed Locations, Newly Acquired Property or Errors or Omissions Limit of Insurance, regardless of any other applicable coverages, Coverage Extensions or **Time Element** Coverage Extensions.

   Time Element Coverage Extensions apply only when a Limit of Insurance, a number of days or the term INCLUDED is shown in the Declarations. The Limits of Insurance applicable to these Coverage Extensions, unless otherwise stated, are included in the **Business Income** and **Extra Expense** Limit of Insurance as stated in the Declarations and are not in addition to the **Business Income** and **Extra Expense** Limit of Insurance.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000017 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## D. STATED COVERED CAUSES OF LOSS

**Covered Causes of Loss** includes the following Stated **Covered Causes of Loss** as shown in the Declarations, unless the words NOT COVERED are shown in the Declarations.

With respect to **Earth Movement**, Flood, or **Named Storm**, coverage may be limited to specific areas, regions or zones as shown in the Declarations.

### 1. Earth Movement

If **Earth Movement** is not covered, then any loss, damage, cause or event occurring concurrently or in any sequence with such cause of loss are also not covered, except for direct physical loss or damage to Covered Property caused by fire, **Sprinkler Leakage** or explosion resulting from **Earth Movement**. Direct physical loss or damage to Covered Property caused by fire, **Sprinkler Leakage** or explosion shall not be considered loss or damage by **Earth Movement**, and shall be included within the Policy Limit of Insurance or other applicable Limit of Insurance.

### 2. Flood

If **Flood** is not covered, then any loss, damage, cause or event occurring concurrently or in any sequence with such cause of loss are also not covered, except for direct physical loss or damage to Covered Property caused by fire or explosion resulting from **Flood**. Direct physical loss or damage to Covered Property caused by fire or explosion shall not be considered loss or damage by **Flood,** and shall be included within the Policy Limit of Insurance or other applicable Limit of Insurance.

### 3. Named Storm

As respects Limits of Insurance, **Named Storm** includes, but is not limited to, loss or damage caused by or resulting from wind, hail, lightning, tornado, rain or water (whether driven by wind or not), **Flood**, or any wind driven objects or debris.

A **Named Storm** begins at the time a Watch or Warning is issued by the National Hurricane Center, National Weather Service, World Meteorological Association, or any other generally recognized scientific or meteorological association that provides formal names for public use and reference for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the same entity.

The most we will pay for all loss or damage caused by or resulting from **Named Storm**, including **Flood** if **Flood** is a **Covered Cause of Loss** and occurs concurrently or in any sequence with a **Named Storm**, is the Named Storm Limit of Insurance. However, the most we will pay for all covered loss or damage caused by Flood is the smallest applicable **Flood** Limit of Insurance.

### 4. Equipment Breakdown

If **Equipment Breakdown** is not covered but an **Equipment Breakdown Accident** results in direct physical loss or damage to Covered Property caused by or resulting from an otherwise **Covered Cause of Loss**, we will pay for such loss or damage up to the applicable Limit of Insurance.

### 5. Electronic Vandalism

If **Electronic Vandalism** is not covered then all loss or damage is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to such loss or damage. However, we will pay for resulting loss or damage caused by or resulting from a **Specified Cause of Loss** other than **Theft** of **Electronic Data**. The most we will pay for covered resulting loss or damage is the Limit of Insurance applicable to that **Specified Cause of Loss**.

## E. COVERED PROPERTY

We insure **Real Property** and **Business Personal Property**, unless the property is excluded or not covered, at or within 1,000 feet of an **Insured Premises** that you own, operate, control or for which you are under an obligation to insure for direct physical loss or damage, to the extent of your interest in such property.

### 1. Property Not Covered

Covered Property does not include the following items unless a specific description of the Property and a Limit of Insurance are shown in the Declarations for an item of Property Not Covered or an endorsement is added:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000018 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

   **a.** Accounts, bills, currency, food stamps or other evidences of debt, **Money**, **Virtual Currency**, notes or **Securities**;

   **b.** Growing crops, standing timber and animals;

   **c.** Land (including land on which the property is located), land values, or water (except for water contained within any storage tank for use in your operations);

   **d.** Vehicles licensed for road use or otherwise insured for physical loss or damage;

   **e.** Aircraft (including **Unmanned Aircraft**), watercraft, satellites, and spacecraft, except when unfueled and manufactured by you;

   **f.** **Business Personal Property** that you have sold under:

      **(1)** Conditional sale;

      **(2)** Trust agreement;

      **(3)** Installment payment;

      **(4)** Other deferred payment plan; or

      **(5)** Other agreement under which you have retained a security interest;

   **g.** **Fine Arts** and **Valuable Papers and Records**;

   **h.** Mines, mining shafts, caverns, and any mining property or equipment located below the surface of the ground;

   **i.** Offshore oil rigs, platforms and any equipment or property contained therein or thereon;

   **j.** Bridges and tunnels used for vehicular or rail travel;

   **k.** Bulkheads, dams, pilings, docks, piers and wharves;

   **l.** Property in your care, custody, and control while you are acting as a bailee, a warehouseman, or a carrier for hire; and

   **m.** Transmission and distribution lines situated beyond 1,000 feet of the **Insured Premises**.

## F. COVERAGE EXTENSIONS

### 1. ACCOUNTS RECEIVABLE

   **a.** In the event of direct physical loss or damage to your records of Accounts Receivable caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**, we will pay:

      **(1)** All amounts due from your customers that you are unable to collect (due to covered loss or damage to your records of Accounts Receivable);

      **(2)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

      **(3)** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

      **(4)** Other reasonable expenses that you incur to re-establish your records of accounts receivable.

   **b.** This coverage also applies while the Accounts Receivable records are removed from the **Insured Premises** to safeguard Covered Property against the threat of imminent loss or damage by a **Covered Cause of Loss**. This applies while they are being moved to, stored in and returned from a safe place.

   **c.** We will not pay for errors or omissions in accounting, arithmetic, bookkeeping, or billing.

   **d.** We will determine the amount of Accounts Receivable loss as follows:

      **(1)** If you cannot accurately establish the amount of Accounts Receivable outstanding as of the time of loss, the following method will be used:

         **(a)** Determine the total of the average monthly amounts of Accounts Receivable for the 12 months immediately preceding the month in which the loss occurs; and

         **(b)** Adjust that total for any normal fluctuations in the amount of Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

      **(2)** The following will be deducted from the total amount of Accounts Receivable; however that amount of Accounts Receivable is established:

         **(a)** The amount of the accounts for which there is no loss;

         **(b)** The amount of the accounts that you are able to re-establish or collect;

         **(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

         **(d)** All unearned interest and service charges.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000019 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## 2. BRANDS AND LABELS

In the event of direct physical loss or damage to **Stock** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**:

**a.** We will reimburse you for expenses you incur to:

   **(1)** Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

   **(2)** Remove the brands or labels, if doing so will not physically damage the merchandise.

   You must relabel the merchandise and its containers to comply with the law.

**b.** We will pay for any reduction in the salvage value of the damaged merchandise as the result of the removal of the brand or label.

## 3. CLAIM EXPENSES

**a.** We will reimburse you for reasonable and necessary expenses you incur to prepare claim information which we have requested from you in writing. Such expenses include the amount you pay to:

   **(1)** Auditors;

   **(2)** Accountants;

   **(3)** Architects;

   **(4)** Engineers; or

   **(5)** Other professionals.

**b.** We will not pay for expenses incurred by you to utilize the services of property managers, attorneys, public adjusters, or any of their subsidiaries or associated entities. We will not pay for any fees or costs for consultation on coverage or negotiation of claims. Claim expenses do not include any costs as provided in or incurred due to the POLICY CONDITION – Appraisal.

## 4. CLOUD COMPUTING DATA

**a.** We will pay for the actual, necessary and reasonable costs to recreate or restore lost or damaged **Electronic Data** when such loss or damage is caused by or results from a **Covered Cause of Loss** at a **Cloud Computing Service** located anywhere in the world.

**b.** We will also pay for the actual loss of **Business Income** you sustain and the **Extra Expense** you incur due to the necessary interruption of your business operations during the **Period of Restoration** caused by or resulting from a **Covered Cause of Loss** to **Electronic Data** at a **Cloud Computing Service** located anywhere in the world.

**c.** When **Electronic Vandalism** is a **Covered Cause of Loss** to **Electronic Data** at a **Cloud Computing Service**, the most we will pay in any one occurrence for all covered loss or damage is the **Electronic Vandalism** Annual Aggregate.

## 5. CONTRACT PENALTIES

We will reimburse you for penalties you are required to pay due to your failure to provide your product or service pursuant to a written contract. Your failure to provide your products or services must result from direct physical loss or damage to Covered Property caused by or resulting from a **Covered Cause of Loss** during the policy period.

## 6. DEBRIS REMOVAL

We will pay your expenses to remove debris that is on an **Insured Premises** and in the area immediately adjacent to such **Insured Premises**, when such debris is caused by or results from direct physical loss or damage to property caused by a **Covered Cause of Loss** during the policy period. The expenses must be reported to us in writing within 180 days from the date on which they were incurred.

This Coverage Extension does not apply to costs to extract **Pollutants and Contaminants** from land or water or costs to remove restore or replace polluted land or water. We shall not be liable for the costs of removing contaminated or polluted uninsured property, nor the **Pollutant or Contaminant** therein or thereon, whether or not the pollution or contamination results from a **Covered Cause of Loss**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000020 of 000111

Filed          20-CI-006311   10/30/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## 7. DEFERRED SALES

We will pay for your interest in **Business Personal Property** that sustains direct physical loss or damage by a **Covered Cause of Loss** that you have sold under a deferred or installment payment plan during the policy period and after you have made delivery to your customer during the policy period, but only to the extent you are unable to collect the unpaid balance of your interest. **Theft**, conversion by your customer or failure of your customer to make payments are not **Covered Causes of Loss**.

## 8. ERRORS OR OMISSIONS

We will pay for direct physical loss or damage to Covered Property caused by or resulting from a **Covered Cause of Loss** at locations within the Coverage Territory that you own, lease or occupy or that you are responsible for insuring, if such loss or damage is not payable under this Policy solely due to any inadvertent error or unintentional omission to:

**a.** Include in the Statement of Locations and Values any location that you intended to cover at the inception of this Policy; or

**b.** Report any newly acquired property before the automatic coverage period ceases under the Newly Acquired Property Coverage Extension.

We shall only pay for such direct physical loss or damage to the type of property covered under this Policy to the extent we would have paid had such error or omission not been made. It is a condition of this Coverage Extension that any error or omission be reported to us when discovered and that you shall pay any additional premium due. This Coverage Extension does not apply to loss or damage which is covered under the Miscellaneous Unnamed Locations Coverage Extension or Newly Acquired Property Coverage Extension. No coverage is provided at any location for new buildings under construction or additions in the course of construction.

## 9. EXPEDITING EXPENSES

We will pay actual, necessary and reasonable additional expenses you incur to:

**a.** Make temporary repairs to damaged Covered Property;

**b.** Expedite permanent repair or replacement of damaged Covered Property; or

**c.** Provide training on replacement machines or equipment that are Covered Property;

that has sustained direct physical loss or damage by a **Covered Cause of Loss** at an **Insured Premises**.

Expediting Expenses include overtime wages, the extra cost of express or other rapid means of transportation, and expenses to bring computer systems back to operational status.

## 10. FINE ARTS

We will pay for direct physical loss or damage to **Fine Arts** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**, at a fair or exhibition or while in transit.

## 11. FIRE DEPARTMENT SERVICE CHARGE

**a.** We will pay for the fire department service charges you are required to pay when the fire department responds to save or protect Covered Property from a **Covered Cause of Loss**:

**(1)** Assumed by contract or agreement prior to the covered loss event; or

**(2)** Required by local ordinance.

**b.** We will not pay for recharge due to maintenance of any device or system.

## 12. FUNGUS, WET ROT OR DRY ROT

We will pay for:

**a.** Direct physical loss or damage to Covered Property caused by or resulting from **Fungus**, wet rot or dry rot, when such **Fungus**, wet rot or dry rot is the direct result of direct physical loss or damage to Covered Property by a **Covered Cause of Loss** during the policy period at an **Insured Premises**.

We will also reimburse you for the actual, necessary and reasonable expenses you incur to clean up, remove, contain, treat, detoxify or neutralize **Fungus**, wet rot or dry rot from Covered Property resulting from such loss or damage.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000021 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the **Fungus**, wet rot or dry rot; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that **Fungus**, wet rot or dry rot are present.

## 13. GREEN COVERAGE

**a.** When direct physical loss or damage to Covered Property results from a **Covered Cause of Loss** at an **Insured Premises**, we will pay for the reasonable additional costs that you incur to:

**(1)** Repair or replace the Covered Property that sustained loss or damage using products or materials that are **Green** alternatives in accordance with:

**(a)** The minimum standards of a **Green Authority** if the **Insured Premises** where the loss or damage occurred was not **Green** certified by a **Green Authority** prior to the loss or damage; or

**(b)** The standards of a **Green Authority** consistent with the pre-loss **Green** certification level (or at your option, one certification level higher), if the **Insured Premises** where the loss or damage occurred was **Green** certified prior to the loss or damage, provided that the **Green** alternatives are of comparable quality and function to the lost or damaged Covered Property.

**(2)** Employ **Green** methods of construction, disposal or recycling and the ventilation or flushing out of air systems in accordance with:

**(a)** The minimum standards of a **Green Authority** if the **Insured Premises** where the loss or damage occurred was not **Green** certified by a **Green Authority** prior to the loss or damage; or

**(b)** The standards of a **Green Authority** consistent with the pre-loss **Green** certification level, if the **Insured Premises** where the loss or damage occurred was **Green** certified prior to the loss or damage.

**(3)** Hire a design professional accredited by a **Green Authority** to participate in the reconstruction, replacement or repair of the Covered Property;

**(4)** Hire an engineer accredited by a **Green Authority** to supervise the repair or replacement of the Covered Property to verify that replacement systems and mechanicals have been installed and configured to perform to building design or manufacturer's specifications.

**(5)** Apply to a **Green Authority** for certification of your **Insured Premises** in connection with the repair or replacement of the lost or damaged Covered Property.

This Coverage Extension does not require you to pursue, nor guarantee success of, certification by a **Green Authority**.

**b.** ADDITIONAL EXCLUSIONS

**(1)** This Coverage Extension does not apply to **Stock**.

**(2)** Coverage does not include any increase in costs, loss or damage attributable to any **Green** standards for which you were under order or mandate from an existing authority, but you did not comply with, before the loss or damage.

## 14. LAND AND WATER - POLLUTANTS AND CONTAMINANTS CLEAN UP

**a.** We will reimburse you for the actual, necessary and reasonable expenses you incur to extract **Pollutants and Contaminants** from land or water at an **Insured Premises**, if the discharge, dispersal, seepage, migration, release or escape of the **Pollutants and Contaminants** is caused by or results from a **Covered Cause of Loss** at an **Insured Premises** that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the **Covered Cause of Loss** occurs.

**b.** This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of **Pollutants and Contaminants**. But we will pay for testing which is performed in the course of extracting the **Pollutants and Contaminants** from land or water.

## 15. LOCKS AND KEYS

We will reimburse you for the actual, necessary and reasonable costs expenses you incur to replace or reprogram keys, adjust locks to accept new keys or install new locks, if required, due to direct physical loss or damage to a master key or grand master key caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**. Coverage includes the actual, necessary and reasonable costs you incur to replace, adjust or reprogram undamaged locks to accept new keys or entry codes.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000022 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## 16. MISCELLANEOUS UNNAMED LOCATIONS

**a.** We will pay for direct physical loss or damage to Covered Property caused by or resulting from a **Covered Cause of Loss** to premises that you own, lease or occupy other than premises:

    **(1)** Listed by street address or other description of property as stated on file with us in the most recent Statement of Values or other documentation provided by you to us; or

    **(2)** Scheduled on this Policy.

**b.** Miscellaneous Unnamed Locations does not include any:

    **(1)** Premises, locations or property insured under any other Coverage or Coverage Extension of this Policy;

    **(2)** Premises, locations or property in the course of construction, except for construction materials stored away from an **Insured Premises**;

    **(3)** Property while in the due course of transit including while at an intermediate site; or

    **(4)** Premises, locations or property that is not covered or excluded from coverage under this Policy.

This Coverage Extension does not apply to loss or damage which is covered under the Errors or Omissions Coverage Extension or Newly Acquired Property Coverage Extension.

## 17. MONEY

We will pay for direct physical loss or damage to **Money** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**, except **Theft**.

## 18. NEWLY ACQUIRED PROPERTY

**a.** We will pay for direct physical loss or damage caused by or resulting from a **Covered Cause of Loss** to **Newly Acquired Property**.

**b.** Coverage for **Newly Acquired Property** ends the earlier of:

    **(1)** The expiration of this Policy;

    **(2)** The number of consecutive days (shown in the Declarations) after the date you acquired the new property;

    **(3)** You report values to us; or

    **(4)** The property is specifically insured on this Policy or elsewhere.

**c.** We will charge you additional premium from the date you acquire the property.

This Coverage Extension does not apply to loss or damage which is covered under the Miscellaneous Unnamed Locations Coverage Extension or Errors and Omissions Coverage Extension.

## 19. ORDINANCE OR LAW

When direct physical loss or damage to **Real Property** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises** results in the enforcement of an ordinance or law that:

    **i.** Regulates the construction or repair of building, or establishes zoning or land use requirements at the **Insured Premises**; or

    **ii.** Requires the demolition of parts of the same building that are not damaged by the **Covered Cause of Loss**; and

    **iii.** Is in force at the time of that **Covered Cause of Loss** (or the ordinance or law is promulgated or is revised after the loss but prior to commencement of reconstruction or repair) and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy;

coverage provided under this Coverage Extension applies only in response to the minimum requirements of the applicable ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Coverage Extension.

**a.** Coverage A. Coverage for Loss to the Undamaged Portion of **Real Property**

We will pay for the value of the undamaged portion of building that was required to be demolished to comply with a building, zoning or land use ordinance or law. We will do this on the same valuation basis that applies to the entire building. This does not include any increased costs to repair, replace or rebuild the property due to a requirement to comply with any ordinance or law.

**b.** Coverage B. Demolition Costs Coverage

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000023 of 000111

Filed          20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT

With respect to building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building that was required to be demolished to comply with a building, zoning or land use ordinance or law.

**c.** Coverage C. Increased Cost of Construction Coverage

We will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of building; and

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(1)** This coverage applies only if the repaired, restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**d.** Coverage D. Ordinance or Law - Increased **Period of Restoration**

We will pay the actual loss of **Business Income** you sustain and the **Extra Expense** you incur as a result of an increase to the **Period of Restoration** caused by or resulting from a requirement to comply with any ordinance or law.

**e.** Coverage E. Ordinance or Law - Decontamination and Removal Costs

**(1)** We will reimburse you for the actual, necessary and reasonable decontamination costs you incur resulting from direct physical loss or damage to Covered Property at an **Insured Premises** subject to the following:

**(a)** Decontamination costs must be the direct result of the enforcement of an ordinance or law that is in force at the time of covered loss or damage and regulates decontamination; and

**(b)** The amount we pay includes the increased cost to remove contaminated Covered Property necessary to comply with such ordinance or law.

**(2)** This Coverage Extension applies only to that part of Covered Property which is actually contaminated as a result of direct physical loss or damage, and not merely due to the suspected presence of contaminants.

**(3)** We will not pay for any costs to remove or decontaminate uninsured property.

**f.** Ordinance or Law Exclusions:

The following exclusions apply to the Value of Undamaged Building, Demolition Costs and Increased Cost of Construction Coverages:

**(1)** We will not pay for the enforcement of or compliance with or any costs associated with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by **Pollutants and Contaminants** or due to the presence, growth, proliferation, spread or any activity of **Fungus**, wet rot, or dry rot except as provided above.

**(2)** We will not pay any loss in value or any costs incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

**(3)** We will not pay for the compliance of any ordinance or law unless the repairs or replacement are completed within two years after the date of loss or damage. We may extend this period in writing prior to the expiration of the two years.

**g.** Ordinance or Law Limits of Insurance

The most we will pay in total in any one occurrence, regardless of the number of **Insured Premises** and building involved in that occurrence, are the applicable Limits of Insurance shown in the Declarations.

## 20. OUTDOOR PROPERTY

**a.** We will pay for direct physical loss or damage to outdoor property caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**. Covered outdoor property consists of trees, shrubs, sod, plants and lawns (including fairways, greens and tees), walkways, parks, patios or other paved surfaces.

**b.** Expenses you incur to remove damaged **Additional Outdoor Property** from the site of loss or damage are included in the Outdoor Property Limit of Insurance when shown in the Declarations. The Debris Removal Coverage Extension does not apply to such property.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000024 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**c.** LIMITS OF INSURANCE

**(1)** The most we will pay for covered loss or damage is the lesser of:

**(a)** The value of any item of Outdoor Property according to the latest Statement of Values on file with us;

**(b)** The amount you actually spend to repair or replace the damaged Outdoor Property;

**(c)** The Per Item Outdoor Property Limit of Insurance shown in the Declarations; or

**(d)** The Outdoor Property Limit of Insurance shown in the Declarations.

**(2)** Regardless of the types or number of items damaged, the most we will pay in any one occurrence is the Outdoor Property Limit of Insurance shown in the Declarations.

## 21. PAIRS OR SETS

We will pay for the reduction in value of the undamaged **Business Personal Property** that is part of a pair or set resulting from direct physical loss or damage to the other insured parts of such pairs or sets caused by or resulting from a **Covered Cause of Loss**.

## 22. PRESERVATION AND PROTECTION OF PROPERTY

**a.** We will pay for the actual, necessary and reasonable expenses you incur in excess of normal operating expenses to temporarily safeguard Covered Property against the threat of imminent loss or damage by a **Covered Cause of Loss**.

**b.** We will pay for direct physical loss or damage to Covered Property caused by or resulting from a **Covered Cause of Loss** which has been moved to a temporary location to safeguard it from imminent loss or damage. Coverage is included in the Limit of Insurance applicable to the **Insured Premises** from which it was moved.

**c.** We will not pay for any scheduled maintenance or the removal of ice, sleet or snow.

**d.** The most we will pay in any one occurrence for covered expenses provided in **a.** above is the Preservation and Protection of Property Limit of Insurance shown in the Declarations. This Coverage Extension is subject to the deductible provisions that apply had the physical loss or damage occurred.

## 23. REWARD COVERAGE

**a.** We will reimburse you for rewards you have paid leading to:

**(1)** The successful return of substantially undamaged stolen articles to a law enforcement agency; or

**(2)** The arrest and conviction of any persons for having damaged or stolen any of your Covered Property.

**b.** The most we will pay for all rewards in any one occurrence is the lesser of:

**(1)** The actual amount of rewards you have paid; or

**(2)** The Reward Limit of Insurance shown in Declarations.

These reward payments must be documented.

## 24. SERVICE INTERRUPTION

**a.** We will pay for direct physical loss or damage to Covered Property at an **Insured Premises** caused by or resulting from the interruption of the following utility services:

**(1)** Water Supply Services;

**(2)** **Communication Services**;

**(3)** Power Supply Services;

**(4)** Outgoing Sewerage Service; or

**(5)** **Cloud Computing Service**.

The interruption of service must result from direct physical loss or damage to utility services property away from an **Insured Premises**, including loss or damage to transmission and distribution lines, caused by or resulting from a **Covered Cause of Loss**.

**b.** We will not pay for any resulting loss or damage due to temperature change or spoilage to **Business Personal Property**.

## 25. SPOILAGE

We will pay for loss or damage due to spoilage of **Perishable Goods** due to:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000025 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

a. Dampness or dryness of atmosphere;

b. Change in temperature;

c. Change in texture; or

d. Contamination by any refrigerant, including but not limited to ammonia;

directly resulting from a **Covered Cause of Loss** at an **Insured Premises** or while such goods are in transit.

Coverage includes resulting loss or damage due to Services Interruption as described in the Service Interruption Coverage Extension.

## 26. TRANSIT

a. We will pay for direct physical loss or damage to **Business Personal Property** caused by or resulting from a **Covered Cause of Loss** while such property is in the due course of transit at your risk.

b. We will also pay for the actual loss of **Business Income** you sustain and the **Extra Expense** you incur resulting from covered loss or damage to such property.

c. This Coverage will continue to apply to such property in the due course of transit until accepted by an authorized representative at the invoiced destination, but for no longer than 30 days after the date of the shipment origination. The expiration of this Policy will not cut short this coverage period.

d. We will not pay for loss or damage to Covered Property:

(1) Where you are responsible for loss or damage to property as a carrier for hire; or

(2) Where you are in the business of arranging transportation or consolidations for others.

e. Transit Coverage Extensions

(1) F.O.B. Shipments

We will pay for your interest in covered direct physical loss or damage to outgoing shipments, which you have sold under conditions where the risk of loss or damage is transferred to the buyer when such property leaves your **Insured Premises** if you cannot collect payment for the loss or damage from the consignee.

(2) Repack and Reship

We will pay the necessary additional expenses you incur to inspect, repackage and reship Covered Property damaged by a **Covered Cause of Loss** while in the due course of transit.

(3) General Average and Salvage Charges

In accordance with applicable law and usage, we will pay General Average and Salvage Charges that may be assessed against your covered shipments that are waterborne.

(4) Loading and Unloading

We will also pay for covered direct physical loss or damage to Covered Property during loading and unloading of the transporting conveyance.

(5) Return Shipments

We will also pay for covered direct physical loss or damage to outgoing shipments that have been rejected by the consignee or are not deliverable, while being returned to you.

f. For the Transit Coverage Extension, the Coverage Territory is within or between the United States of America (including its territories and possessions) and Canada; however, waterborne shipments are covered only if on inland waterways or in territorial waters, within 12 miles of land.

## 27. VALUABLE PAPERS AND RECORDS

We will pay for direct physical loss or damage to **Valuable Papers and Records** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**.

## G. DEDUCTIBLE

We will not pay for any loss or damage until the amount of loss exceeds the applicable Deductible shown in the Declarations. We will then pay the amount of loss in excess of that Deductible.

## H. LOSS PAYMENT AND VALUATION CONDITIONS

Covered Property will be valued at either Replacement Cost or Actual Cash Value, as stated in the Declarations and as described below except for the items listed below in items **3.** and item **4.** Specific Property Valuations.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000026 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

1. Replacement Cost

We will determine the value of Covered Property that has sustained covered loss or damage at the actual amount spent to repair, replace or rebuild the damaged property as of the time of the loss or damage, at the same site or another site, subject to the following:

a.   We will not pay more for lost or damaged property than the least of:

(1)   The Limit of Insurance applicable to the lost or damaged property;

(2)   The amount it costs to replace, on the same premises, the lost or damaged property with other property:

(a)   Of comparable material and quality; and

(b)   Used for the same purpose; or

(3)   The amount you actually spend that is necessary and reasonable to repair or replace the lost or damaged property with other property:

(a)   Of comparable material and quality; and

(b)   Used for the same purpose.

(4)   In the event of a total loss to **Real Property**, you may choose to replace your **Real Property** at another premise. However, we will not pay more than the cost to replace the **Real Property** at the original premises.

(5)   Replacement Cost does not include any increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

b.   We will pay you on an Actual Cash Value basis until the lost or damaged property is actually repaired, rebuilt or replaced.

c.   If you do not repair, replace or rebuild on the same site or another site within two years of the date of loss, we will pay you on an Actual Cash Value basis. We may extend this period in writing prior to the expiration of the two years.

2. Actual Cash Value

a.   We will pay you on an Actual Cash Value basis if:

(1)   The valuation of the lost or damaged property is designated in the Declarations as Actual Cash Value.

(2)   You elect Actual Cash Value as the basis for loss payment at the time of loss or damage.

b.   In the event of covered loss or damage, at our option, we will do one of the following, but not pay more than the Limit of Insurance applicable to the lost or damaged property:

(1)   Pay the value of the lost or damaged property at the time of loss;

(2)   Take all or any part of the property at an agreed or appraised value; or

(3)   Repair, rebuild or replace the property with other property of comparable material and quality and used for the same purpose.

c.   Actual Cash Value does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

3.   You may elect not to repair or replace **Real Property**, furniture and fixtures, machinery, equipment, and fixtures that are permanently attached to **Real Property**, **Computer Equipment** or leasehold improvements and betterments. In such case, we will pay the loss proceeds based upon the cost to repair or replace (whichever is less) such property at the time and place of the loss with materials of comparable material and quality, provided that such proceeds have been expended on other capital expenditures related to your business operations within two years after the date of loss. We will not pay any loss proceeds for increased cost of repair or replacement of any property in order to comply with any law or ordinance.

If the above alternative is not elected by you or not payable under the terms set forth in the above paragraph, then the valuation provisions in Subsection **1.** or **2.** above, whichever is applicable, shall apply to such property.

4. Specific Property Valuations

a.   **Contractor's Equipment** will be valued as stated in the Declarations.

b.   **Electronic Data**

(1)   We will determine the value at the actual, reasonable and necessary expenses you incur to restore or replace **Electronic Data**.

Filed                    20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**(2)** We will not pay for costs or expenses you incur to:

    **(a)** Identify or remediate any errors or vulnerabilities or to update, restore, replace, upgrade, maintain or improve any **Computer Equipment** or computer system;

    **(b)** Update, replace, restore or improve any **Electronic Data** to a level beyond the condition in which it existed immediately preceding the loss or damage; or

    **(c)** Research that led to development of your **Electronic Data** or any proprietary or confidential information or intellectual property in any form.

To the extent that **Electronic Data** is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the **Electronic Data** was stored, with blank media of substantially identical type.

If you recover from a licensor, lessor or any other party for loss or damage to **Electronic Data**, our loss payment to you will be reduced by the amount of such recovery.

**c.** **Fine Arts**

  **(1)** We will determine the value of **Fine Arts**, at the lesser of:

    **(a)** The market value at the time of loss or damage;

    **(b)** The reasonable cost of repair or restoration to the condition immediately before the covered loss or damage;

    **(c)** The cost of replacement with substantially identical property;

    **(d)** The value scheduled on the latest Statement of Values on file with us; or

    **(e)** The Per Item Limit of Insurance, if one is shown in the Declarations.

  **(2)** For pairs or sets, we will either:

    **(a)** Repair or replace any part to restore the value and condition of the pair or set to that immediately before the covered loss or damage; or

    **(b)** Pay the difference between the values of the pair or set before and after the covered loss or damage.

**d.** **Improvements and Betterments**

  **(1)** We will pay the unamortized value of **Improvements and Betterments** up to your insurable interest if such property is not repaired or replaced at your expense.

  **(2)** If others pay for repairs or replacement, we will not make loss payment to you.

**e.** Library Books and Periodicals

  **(1)** Library books and periodicals are valued at the lesser of:

    **(a)** The cost to repair or restore the library books or periodicals to the condition that existed immediately prior to the loss (including the cost of re-shelving and processing);

    **(b)** The cost to replace the library books or periodicals (including the cost of re-shelving and processing); or

    **(c)** The value scheduled on the latest Statement of Values on file with us (including the cost of re-shelving and processing).

  **(2)** In case of direct physical loss or damage by a **Covered Cause of Loss** to a library book or periodical that is part of a pair or set, we will pay the full amount of the value of such pair or set only if:

    **(a)** The damaged library book or periodical cannot be replaced, repaired or restored to its condition before the loss; and

    **(b)** You surrender the remaining library book or periodical of the pair or set to us.

**f.** Patterns, dies, molds and forms not in current usage at Actual Cash Value. If loss or damage is paid on an Actual Cash Value basis and within 60 months from the date of the covered loss or damage and you need to repair or replace them, we will pay you, subject to the Conditions of this Policy, the difference between Actual Cash Value and Replacement Cost when the patterns, dies, molds and forms are actually repaired or replaced.

**g.** Personal Property Owned by Others

  **(1)** If Personal Property Owned by Others is subject to a written contract which governs your liability for loss or damage to such property, valuation will be based on the lesser of:

    **(a)** The amount for which you are liable under such contract;

    **(b)** The replacement cost of the property; or

    **(c)** The applicable Limit of Insurance.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000028 of 000111

Filed            20-CI-006311     10/30/2020       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT

84382

(2) If no such contract exists we will not pay more than your financial interest in Personal Property Owned by Others not to exceed the lesser of:

    (a) The Actual Cash Value of such property; or

    (b) The applicable Limit of Insurance.

(3) At our option, we may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners:

    (a) Such payments will only be for the account of the owner of the property and will satisfy your claims against us for the owners' property; and

    (b) We will not pay more than their financial interest in the property.

(4) We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h. Stock**

**(1)** Manufactured **Stock** (including Selling Price)

We will determine the value of **Stock** you have manufactured at the selling price less discounts and expenses you otherwise would have incurred and it will not be included in your Time Element loss calculation. This also applies to component parts manufactured by others that will become a part of your finished product.

**(2)** Mercantile **Stock**

We will determine the value of **Stock**, which you have purchased for resale and have sold but not delivered, at the selling price less discounts and expense you otherwise would have had. This does not apply to **Stock** you have manufactured.

**(3) Stock** in Process

We will determine the value of **Stock** in process of manufacture at the replacement cost of the raw materials, plus labor expended and the proper proportion of overhead charges.

**(4)** Commodity **Stock**

For **Stock** that is bought and sold at an established market exchange, we will determine the value at:

    **(a)** The posted market price as of the time and place of loss;

    **(b)** Less discounts and expenses you otherwise would have had.

**i.** Transit

We will determine the value of Covered Property in due course of transit at:

    **(1)** The amount of invoice plus accrued costs, prepaid charges and charges since shipment; or

    **(2)** In the absence of an invoice, the valuation provision otherwise applicable to that type of Covered Property as of the time of loss or damage.

**j. Valuable Papers or Records**

We will determine the value of **Valuable Papers and Records** at your incurred costs to replace or restore such property with other property of like kind and quality including the cost of researching, gathering or assembling information. If the information is not replaced or restored, we will pay the blank value of such **Valuable Papers and Records**.

**5.** VALUE ENHANCEMENTS

**a.** Architect and Engineering Fees

The value of Covered Property will include reasonable architect and engineering fees you incur in the course of repairing or reconstructing damaged property.

**b.** Customs Duty, Sales Tax

The value of Covered Property will include the cost of customs duties and sales taxes to repair or replace the property.

**c.** Extended Warranties

The value of Covered Property, that is a total loss during the policy period will include the unused pro rata portion of non-refundable optional extended warranties or service contracts which you purchased for the damaged property prior to the covered loss or damage.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000029 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# SECTION **II.** EXCLUSIONS

**A.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. Exclusions **II.A.1.** through **II.A.8.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**1.** Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

## **2. Fungus**

**Fungus**, wet rot or dry rot, or any toxins created or produced by or emanating from such **Fungus**, all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

## **3.** Governmental Action

**a.** Seizure or destruction of property by order of governmental authority.

**b.** Costs, expenses, fines or penalties incurred or sustained by or imposed on you by any government agency, court or other authority.

But we will pay for direct physical loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Policy.

This Exclusion does not apply to coverage as provided under the Ordinance or Law Coverage Extension.

## **4.** Nuclear Hazard

**a.** Nuclear reaction, nuclear radiation or radioactive contamination, however caused, whether intentional or unintentional. This includes, but is not limited to, the release, dispersal or application of radioactive material, or the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination or radioactive force or any weapon employing atomic fission, fusion or radioactive force, or any weapon that disperses radioactive material or a directed-energy or electromagnetic weapon, whether in time of peace or war, whether or not its discharge was accidental.

**b.** When state standard fire policy law requires that we cover any resulting fire damage, we will pay only for the resulting damage caused by that resulting fire. We will pay only the Actual Cash Value for the damaged property. Therefore, we will not pay for any indirect or related losses, such as **Business Income**, **Extra Expense**, legal liability, or **leasehold interest** losses.

**c.** If there is direct physical loss or damage, not otherwise excluded, to Covered Property caused by sudden and accidental radioactive contamination from material used or stored or from processes conducted at the **Insured Premises,** and there is neither a nuclear reactor nor any new or used nuclear fuel at such **Insured Premises**, then we will pay up to the Radioactive Contamination Limit of Insurance shown in the Declarations for:

**(1)** Such damage to Covered Property at the **Insured Premises**; and including resultant radiation damage to such Covered Property, and

**(2)** The costs to clean-up radioactive contamination from Covered Property at the **Insured Premises**, but not including any costs to test or monitor for any radioactive contamination.

## **5.** Pathogenic or Poisonous Biological or Chemical Materials

The deliberate or intentional dispersal or application of any pathogenic or poisonous biological or chemical materials. But if direct physical loss or damage to Covered Property by fire results, we will pay for the resulting loss or damage caused by that fire.

## **6. Pollutants or Contaminants**

The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000030 of 000111

Filed            20-CI-006311      10/30/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT

However, this exclusion shall not apply to direct physical loss or damage to Covered Property at an **Insured Premises** from **Pollutants or Contaminants** caused by a **Covered Cause of Loss**, including the cost to clean-up **Pollutants or Contaminants** from the damaged Covered Property.

No coverage is provided for testing or monitoring for **Pollutants or Contaminants**. All other exclusions continue to apply including **A.2. Fungus**, **A.4.** Nuclear Hazard and **A.5.** Pathogenic or Poisonous Biological or Chemical Materials above.

**7.** Service Interruption

The failure or lack of Water Supply Services, **Communication Services**, Power Supply Services, Outgoing Sewerage Services or **Cloud Computing Services** supplied to an **Insured Premises** when caused by an event away from the **Insured Premises**, except as provided in the Service Interruption Coverage Extension.

**8.** War and Military Action

**a.** War, including undeclared war;

**b.** Hostile or warlike action, in time of peace or war, including action in hindering, combating or defending against an actual or expected attack; by any of the following:

   **(1)** Government or sovereign power (including quasi and de facto forms), or by any authority maintaining or using military, naval or air forces;

   **(2)** Military, naval or air forces; or

   **(3)** An agent of any such government, power, authority or forces.

**c.** Invasion, insurrection, rebellion, revolution, civil war, usurped power, including action in hindering, combating or defending against any such actual or expected event by any government, power, authority or agents described in Paragraphs **b.(1)** through **b.(3)** above.

**B.** We will not pay for loss or damage caused by or resulting from any of the following:

**1.** Delay, Loss of Use or Loss of Market

We will not pay for loss or damage caused by, resulting from, or arising out of delay, loss of use, or loss of market.

**2.** Dishonest Acts

Any fraudulent or dishonest act or acts committed by you, or your partners, members, officers, managers, employees, directors, trustees or authorized representatives, whether acting alone or in collusion with any other party; or theft by any person to whom property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by your employee to Covered Property without the knowledge of you, or your partners, members, officers, managers, directors, trustees or authorized representatives is covered.

**3.** Corruption of **Electronic Data** or Corruption of **Computer Equipment**

**a.** Unauthorized viewing, copying or use of **Electronic Data** (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as **Theft**;

**b.** Errors, omissions or deficiency in programming, processing or storing **Electronic Data**;

**c.** Errors, omissions or deficiency in design, installation, maintenance, repair or modification of your **Computer Equipment** or any **Computer Equipment** or network to which your system is connected or on which your system depends (including **Electronic Data**);

**d.** Manipulation of your computer system causing fraudulent or illegal transfer of any property;

**e.** Interruption in normal **Computer Equipment** function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

**f.** Unexplained or indeterminable failure, malfunction or slowdown of **Computer Equipment** or **Electronic Data** or the inability to access or properly manipulate the **Electronic Data**; or

**g.** The inability of **Computer Equipment** to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000031 of 000111

20-CI-006311      10/30/2020      David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000032 of 000111

**4.** Missing Property

Disappearance of property when there is no clear evidence to show what happened to it. This would include a shortage disclosed on taking inventory or auditing records. This Exclusion does not apply to property in the custody of a carrier for hire.

**5.** Settling, Cracking of **Real Property**

Settling, cracking, shrinking or expansion of **Real Property**, bridges, roadways, walks, patios or concrete or paved surfaces. But if direct physical loss or damage to Covered Property by a **Covered Cause of Loss** results, we will pay for the resulting loss or damage caused by that **Covered Cause of Loss**.

**6.** **Theft** of precious stones or metals or **Theft** of **Electronic Data**.

**7.** Voluntary Parting

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any:

**a.** Fraudulent scheme;

**b.** Trick;

**c.** Device;

**d.** False pretense; or

**e.** Unauthorized instructions.

**C.** We will not pay for loss or damage caused by or resulting from any of the following, but if direct physical loss or damage to Covered Property by a **Covered Cause of Loss** results, we will pay for the resulting loss or damage caused by that **Covered Cause of Loss**.

**1.** Wear and tear, or change in color, texture, or finish; rust, corrosion, decay, or deterioration; hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**2.** Maintenance.

**3.** Smog; shrinkage, evaporation, or loss of weight of **Stock**.

**4.** Processing, fabricating, testing, packaging or other similar operations as part of manufacturing or processing of **Stock**, materials or finished goods, including any voluntary or involuntary recall of any product for any reason.

**5.** Insects, birds, rodents or other animals.

# SECTION **III.** TIME ELEMENT

## **A.** TIME ELEMENT COVERAGE

**1.** We will pay for the actual loss of **Business Income** you sustain due to the necessary interruption of your business operations during the **Period of Restoration**, due to direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**.

**2.** We will determine the amount of all covered **Business Income** losses using the greater of:

**a.** **Gross Profits Calculation**; or

**b.** **Gross Earnings Calculation**.

All covered **Business Income** losses will be adjusted using this approach.

## **B.** TIME ELEMENT COVERAGE EXTENSIONS

### **1.** Attraction Properties

**a.** We will pay for the actual loss of **Business Income** you sustain and the **Extra Expense** you incur due to direct physical loss or damage to property of the type insured by this Policy at an Attraction Property caused by or resulting from a **Covered Cause of Loss**. Attraction Properties means property at premises owned and operated by others that is located within the distance from the **Insured Premises** as shown in the

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT

Declarations, and that you depend on to attract customers to your **Insured Premises.** Coverage under this Coverage Extension does not apply when the loss to an Attraction Property is loss or damage to **Electronic Data,** including destruction or corruption of **Electronic Data**.

**b.** Coverage begins on the date and time that the Attraction Property sustains such direct physical loss or damage and ends on the date and time that the Attraction Property could be reopened for business, but in no event for more than the number of consecutive days shown in the Declarations.

**c.** We will not pay for any loss of **Business Income** or **Extra Expense** until the period of time exceeds the **Qualifying Period** if shown in the Declarations. We will then determine the amount of loss that we will pay as of the time the loss or damage occurred.

**d.** The most we will pay for the sum of all actual loss of **Business Income** you sustain and **Extra Expense** you incur in any one occurrence regardless of the types or number of Attraction Properties involved in any one occurrence under this Coverage Extension is the Attraction Properties Limit of Insurance shown in the Declarations.

**2.** Civil or Military Authority

**a.** We will pay for the actual loss of **Business Income** you sustain and the **Extra Expense** you incur when access to your **Insured Premises** is partially or totally prohibited by order of a civil or military authority as the direct result of a **Covered Cause of Loss** to property in the area within the distance (as shown in the Declarations) from the **Insured Premises**.

**b.** Coverage begins at the time such order is issued, and ends the earlier of:

**(1)** When access to your **Insured Premises** is permitted by the Civil or Military Authority;

**(2)** The number of consecutive days (shown in the Declarations) after the order of Civil or Military Authority; or

**(3)** When the Civil or Military Authority Limit of Insurance shown in the Declarations is exhausted.

**c.** We will not pay for any loss of **Business Income** or **Extra Expense** until the period of time exceeds the **Qualifying Period** if shown in the Declarations. We will then determine the amount of loss that we will pay as of the time the loss or damage occurred.

**3.** Contingent Business Interruption

**a.** We will pay for the actual loss of **Business Income** you sustain and **Extra Expense** you incur during the **Period of Restoration** resulting from direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at Direct Contingent Properties or Indirect Contingent Properties located in the Coverage Territory indicated in the Declarations.

**b.** The following Coverage Extensions apply to such covered loss at a Direct Contingent Property or Indirect Contingent Property:

**(1)** Ingress or Egress;

**(2)** Civil or Military Authority; or

**(3)** Crisis Event.

The exclusions, limitations or time periods that apply to the Ingress or Egress, Civil or Military Authority or Crisis Event Coverage Extensions continue to apply.

**c.** Direct Contingent Properties means premises owned and operated by others that you depend on to:

**(1)** Deliver materials or services to you, or to others for your account;

**(2)** Accept your products or services; or

**(3)** Manufacture products for delivery to your customers under contract of sale.

Direct Contingent Properties do not include any **Insured Premises** or any entity that provides or receives from you any water, communication, power, sewerage, or **Cloud Computing Service**.

**d.** Indirect Contingent Properties means premises owned and operated by others that your Direct Contingent Properties depend on to:

**(1)** Deliver materials or services to your Direct Contingent Properties;

**(2)** Accept products or services from your Direct Contingent Properties; or

**(3)** Manufacture products for delivery to your Direct Contingent Properties under contract of sale.

Indirect Contingent Properties do not include any **Insured Premises** or any entity that provides or receives from Direct Contingent Properties water, communication, power, sewerage, or **Cloud Computing Service**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000033 of 000111

Filed         20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000034 of 000111

   **e.** **Period of Restoration** as respects Direct Contingent Properties or Indirect Contingent Properties ends on the earlier of:

     **(1)** The date when operations resume at a Direct Contingent Property or Indirect Contingent Property; or

     **(2)** The date when the property at the premises of the Direct Contingent Property or Indirect Contingent Property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

     **(3)** When the applicable Limit of Insurance is exhausted.

   **f.** The Stated Covered Causes of Loss apply to this Coverage Extension as indicated in the Declarations.

   **g.** The most we will pay regardless of the types or number of Direct Contingent Properties or Indirect Contingent Properties involved in any one occurrence is the single highest applicable **Contingent Business Interruption** Limit of Insurance shown in the Declarations.

   **h.** This Coverage Extension does not apply when the loss to a Direct Contingent Property or Indirect Contingent Property is loss or damage to **Electronic Data**, including destruction or corruption of **Electronic Data**.

## 4. Crisis Management

We will pay the actual **Business Income** loss you sustain and **Extra Expense** you incur due to a **Crisis Event**. Coverage begins at the time of the **Crisis Event** and ends the earlier of:

   **a.** The time that the **Insured Premises** could be reopened for business; or

   **b.** The number of consecutive days (shown in the Declarations) after the date of the **Crisis Event**.

## 5. Denial of Service

We will pay the actual **Business Income** loss you sustain and **Extra Expense** you incur due to a **Denial of Service Attack**.

This Coverage applies to **Denial of Service Attacks**:

   **a.** That originate anywhere in the world; and

   **b.** Whether or not there has been any physical loss or damage to **Electronic Data**.

## 6. Electronic Extortion Demand

   **a.** We will reimburse you for **Ransom Monies** you have paid due to an **Electronic Extortion Demand** that is first made during the policy period.

   **b.** We will not reimburse you for any:

     **(1)** **Ransom Monies** in connection with any electronic extortion demand based upon, arising from or in any way related to any fraudulent, dishonest or criminal acts by you, or by any person directed by you or acting on your behalf;

     **(2)** **Ransom Monies** that have been confiscated or expropriated by any governmental authority;

     **(3)** Loss of **Business Income** you sustain or **Extra Expense** you incur resulting from any **Electronic Extortion Demand** or **Ransom Monies**; or

     **(4)** Expenses you incur to remove malware or ransomware, or to restore your **Computer Equipment** to working order.

   **c.** All demands related to the same malware or ransomware will constitute a single **Electronic Extortion Demand**.

   **d.** The most we will pay for all **Electronic Extortion** Demands made in any one Policy Year is the Electronic Extortion Demand Annual Aggregate Limit of Insurance shown in Declarations.

## 7. Extended Income

   **a.** If the necessary suspension of your operations produces a **Business Income** loss payable under this Policy, we will pay for the actual loss of **Business Income** you sustain during the period that:

     **(1)** Begins on the date property is actually repaired, rebuilt or replaced and business operations are resumed; and

     **(2)** Ends on the earlier of:

       **(a)** The date you could restore your business operations, with reasonable speed, to the level which would generate the **Business Income** amount that would have existed if no direct physical loss or damage had occurred; or

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

(b) The number of consecutive days (shown in the Declarations) after the date determined in **(2)(a)** above.

b. However, Extended Income does not apply to loss of **Business Income** you sustain as a result of unfavorable business conditions caused by the impact of the **Covered Cause of Loss** in the area where the **Insured Premises** are located.

c. Extended Income does not apply to any **Time Element** Coverage Extensions other than Civil or Military Authority, Ingress and Egress and Contingent Business Interruption.

## 8. Extra Expense

We will pay for the **Extra Expense** you incur due to the necessary suspension of your business operations during the **Period of Restoration**, due to direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**. If you are a tenant, this coverage applies to that portion of **Real Property** which you rent, lease or occupy, and extends to common service areas and access routes to your area.

## 9. Ingress or Egress

a. We will pay the actual **Business Income** loss you sustain and **Extra Expense** you incur when ingress or egress to an **Insured Premises** is restricted or prevented as the direct result of a **Covered Cause of Loss** to property that is located within the distance from the **Insured Premises** as shown in the Declarations.

b. Coverage begins at the time ingress to or egress from an **Insured Premises** is restricted or prevented and ends the earlier of:

(1) When ingress to or egress from your **Insured Premises** is restored;

(2) The number of consecutive days (shown in the Declarations) after the date of loss or damage; or

(3) When the Ingress or Egress Limit of Insurance shown in the Declarations is exhausted.

c. We will not pay for any loss of **Business Income** or **Extra Expense** until the period of time exceeds the **Qualifying Period** if shown in the Declarations. We will then determine the amount of loss that we will pay as of the time the loss or damage occurred.

d. This Coverage Extension does not apply if ingress to or egress from your **Insured Premises** is prohibited by civil or military authority.

## 10. Logistics Extra Cost

a. We will reimburse you for the actual, necessary and reasonable expenses you incur in excess of normal operating expenses to temporarily continue, as nearly normal as practicable, the movement of goods or materials:

(1) Directly between **Insured Premises**; or

(2) Directly between an **Insured Premises** and a location of your direct customer, your direct supplier, your contract manufacturer or your contract service provider;

when the normal movement of such goods or materials is disrupted as a result of direct physical loss or damage by a **Covered Cause of Loss** to property of the type insured under this Policy located in the Coverage Territory.

b. Coverage begins as of the time of loss or damage and ends the earlier of:

(1) When the normal movement of goods or materials could be resumed; or

(2) When the normal movement of goods or materials should have resumed with reasonable speed and diligence.

c. We will not reimburse you for any costs you incur until the amount of loss exceeds the applicable Deductible. We will then pay the amount of loss in excess of the applicable Deductible.

d. For the purpose of this Coverage Extension, property of the type insured includes bridges, roadways, tunnels, docks, piers and wharves.

e. We will not pay for any of the following under this Coverage Extension:

(1) Any loss of **Business Income** you sustain;

(2) Expenses or costs you incur to repair or replace damaged or destroyed property;

(3) Any loss resulting from disruption of incoming or outgoing electricity, gas, fuel, water, steam, sewerage, refrigeration, **Cloud Computing Service**, or any data, voice or video service; or

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000035 of 000111

Filed        20-CI-006311      10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

(4)  Expenses or costs recoverable elsewhere under this Policy.

## 11. Research and Development Expense

**a.**  We will pay for the normal, continuing operating expenses and **Ordinary Payroll** expense you incur during the **Period of Restoration** due to the necessary interruption of your research and development operations due to direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**.

**b.**  We will pay for the expenses and Ordinary Payroll described provided that:

**(1)**  Such expenses and payroll are directly attributable to your research and development operations; and

**(2)**  Your research and development operations do not produce income.

## 12. Royalties

We will pay loss of income sustained by you during the **Period of Restoration** under a royalty, licensing fee, or commission agreement between you and another party arising out of direct physical loss or damage by a **Covered Cause of Loss** to such other party's property, provided that such property is of the type insured under this Policy.

## 13. Soft Costs

For covered property consisting of new buildings, additions or alterations in the course of construction only, we will pay for reasonable and necessary **Soft Costs** incurred by you during the period of delay in completion if such property sustains direct physical loss or damage by a **Covered Cause of Loss**.

## C.  TIME ELEMENT EXCLUSIONS

These EXCLUSIONS apply to **Time Element** loss in addition to other EXCLUSIONS found in this Policy.

### 1.  Contract, Lease or License Cancellation

We will not pay for any increase of loss caused by or resulting from suspension, lapse or cancellation of any contract, lease or license (including consultation and funding grants). But if such suspension, lapse or cancellation is directly caused by a covered interruption of business operations, we will pay for such loss that affects your **Business Income** during the **Period of Restoration** and any extension of the **Period of Restoration** in accordance with the terms of the Extended Income Coverage Extension.

### 2.  Idle Periods

We will not pay for any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

**a.**  Physical loss or damage not insured by this Policy on or off of the **Insured Premises**;

**b.**  Planned or rescheduled shutdown;

**c.**  Strikes or other work stoppage; or

**d.**  Any reason other than direct physical loss or damage insured under this Policy.

### 3.  Finished Goods

We will not pay for any loss resulting from physical loss or damage to finished goods manufactured by you, or the time required for their reproduction.

## D.  LOSS DETERMINATION BUSINESS INCOME AND EXTRA EXPENSE

### 1.  **Business Income**

The amount of **Business Income** loss will be determined based on:

**a.**  The Net Income of the business before the direct physical loss or damage occurred;

**b.**  The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the **Covered Cause of Loss** on customers or on other businesses;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000036 of 000111

NOT ORIGINAL DOCUMENT

c.   The operating expenses, including payroll expenses, necessary to resume business operations with the same quality of service that existed just before the direct physical loss or damage; and

d.   Relevant sources of information, including:

   **(1)**   Your financial records and accounting procedures;

   **(2)**   Bills, invoices and other vouchers; and

   **(3)**   Deeds, liens or contracts.

If you do not resume business operations, or do not resume business operations as quickly as possible, we will pay based on the length of time it would have taken to resume business operations as quickly as possible.

## 2.   Extra Expense

The amount of **Extra Expense** will be determined based on:

a.   All expenses that exceed the normal operating expenses that would have been incurred by business operations during the **Period of Restoration** if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

   **(1)**   The salvage value that remains of any property bought for temporary use during the **Period of Restoration**, once business operations are resumed; and

   **(2)**   Any **Extra Expense** that is paid for by other insurance.

b.   All actual, necessary and reasonable expenses that reduce the **Business Income** loss otherwise sustained.

## 3.   Reductions in Amount We Pay

a.   We will reduce the amount of the **Business Income** loss payment to the extent you can resume your business operations, in whole or in part, by using:

   **(1)**   Damaged or undamaged property (including merchandise or **Stock**) at the **Insured Premises** or elsewhere;

   **(2)**   Any other available source of materials or other outlet for your products.

b.   We will reduce the amount of the **Extra Expense** loss payment to the extent you can return operations to normal and discontinue **Extra Expenses**.

c.   We will reduce the amount of the **Business Income** loss payment to the extent that the reduction in volume of **Business Income** from the affected income channel is offset by an increase in the volume of business from other income channels.

# SECTION **IV.** POLICY CONDITIONS

## A.  Cancellation

1.   The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b.   90 days before the effective date of cancellation if we cancel for any other reason.

3.   We will mail or deliver notice to the first Named Insured's last mailing address known to us.

4.   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.   If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

## B.  Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## C.  Examination of Your Books and Records

We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

## D.  Inspections and Surveys

**1.**  We have the right to:

    **a.**  Make inspections and surveys at any time;

    **b.**  Give you reports on the conditions we find; and

    **c.**  Recommend changes.

**2.**  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.**  Are safe or healthful; or

    **b.**  Comply with laws, regulations, codes or standards.

**3.**  Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**  Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E.  Premiums

The first Named Insured shown in the Declarations:

**1.**  Is responsible for the payment of all premiums; and

**2.**  Will be the payee for any return premiums we pay.

## F.  Transfer of Your Rights and Duties under this Policy

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G.  Abandonment

There can be no abandonment of any property to us.

## H.  Appraisal

If we disagree with you on the amount of loss, either party may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree on an umpire, either party may request that a selection be made by a court having proper jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.**  Pay its chosen appraiser; and

**2.**  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we retain our rights under the terms and conditions of this Policy including our right to deny the claim in whole or in part.

## I.  Claim Settlement

**1.**  We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**2.**  We will pay for covered loss or damage within 30 days after we receive your sworn proof of loss, if you have complied with all of the terms of this Policy; and:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000038 of 000111

Filed            20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

## J. Concealment, Misrepresentation or Fraud

This Policy is void in any case of fraud by you as it relates to this coverage at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Policy;

2. The property covered under this insurance;

3. Your interest in the property covered under this insurance; or

4. A claim under this Policy.

## K. Control of Property

1. Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Policy at any premises will not affect coverage at any other premises where, at the time of loss or damage, the breach of condition does not exist.

2. We grant you control of physically damaged Covered Property consisting of finished goods manufactured by or for you as follows:

   a. You will have full rights to the possession and control of damaged property in the event of physical damage to your covered property provided proper testing is done to show which property is physically damaged.

   b. Using reasonable judgment, you will decide if the physically damaged covered property can be reprocessed or sold.

   c. Property you determine to be unfit for reprocessing or selling will not be sold or disposed of except by you, or with your consent.

   Any salvage proceeds received will reduce the recoverable loss.

## L. Equipment Breakdown – Jurisdictional Inspections

If any **Equipment Breakdown Property** requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf when **Equipment Breakdown** coverage is provided.

## M. Equipment Breakdown - Suspension

When any **Equipment Breakdown Property** is found to be in or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided against loss from an **Equipment Breakdown Accident** to that equipment. We can do this by mailing or delivering a written notice of suspension to your address as stated in the Declarations or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. The suspension will be effective even if we have not yet made or offered a refund.

## N. Errors in Description

Any unintentional error in the description of the location address of Covered Property will not impair the insurance under this Policy, provided you report the error to us as soon as the error becomes known to you.

## O. If Two or more Coverages Apply

If two or more coverages in this Policy apply to the same loss or damage, we will not pay more than the actual amount of loss or damage.

## P. Increase in Hazard

This Policy will not apply to any covered location where there is an increase in hazard over which you have control or knowledge. Any increase in hazard at one or more **Insured Premises** will not affect coverage at other **Insured Premises** where, at the time of loss or damage, the increase in hazard does not exist. If there is physical loss or damage which is not caused by the increase in hazard, this condition does not apply.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000039 of 000111

Filed          20-CI-006311      10/30/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

## Q. Legal Action Against Us

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## R. Liberalization

If during the policy period any filed rules or regulations affecting this Policy are revised by statute so as to broaden the insurance provided without additional premium charge, such broadened insurance will inure to your benefit only within such jurisdiction. The change will be effective beginning on the date specified in such statute.

## S. Loss Payee

**1.** For Covered Property in which both you and the Loss Payee as stated on file with us or by endorsement have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the loss payee, as interests may appear.

**2.** If we cancel this Policy, we will give written notice to the loss payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

    **c.** If we elect not to renew this Policy, we will give written notice to the loss payee at least 10 days before the expiration date of this Policy.

## T. Mortgageholders and Lender Loss Payees

**1.** We will pay each of the following for their interest in covered loss or damage, as stated on file with us or by endorsement in the order of their precedence, as their interest may appear:

    **a.** Mortgageholder for their interest in buildings or structures. The term mortgageholder includes trustees.

    **b.** Lender for their interest as a creditor, established by such written instruments as warehouse receipts, a contract for deed, bills of lading, financing statements; or mortgages, deeds of trust, or security agreements.

**2.** The applicable mortgageholder or lender has the right to receive loss payment even if they have started foreclosure or similar action on the property.

**3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the applicable mortgageholder or lender will still have the right to receive loss payment if such mortgageholder or lender:

    **a.** Pays any premium due under this Policy at our request if you have failed to do so;

    **b.** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **c.** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder or lender.

All of the terms of this Policy will then apply directly to the mortgageholder or lender.

**4.** If we pay the mortgageholder or lender for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

    **a.** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **b.** The mortgageholder's or lender's right to recover the full amount of their applicable claims will not be impaired.

At our option, we may pay to the mortgageholder or lender the whole principal on the mortgage or debt plus any accrued interest. In this event:

    **a.** For mortgageholder relationships, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us;

    **b.** For lender relationships, you will pay your debt to us.

**5.** If we cancel this Policy, we will give written notice to the mortgageholder or lender at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000040 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
05:28:42 PM
84382

**b.**  30 days before the effective date of cancellation if we cancel for any other reason.

**6.**  If we elect not to renew this Policy, we will give written notice to the mortgageholder or lender at least 10 days before the expiration date of this Policy.

## U.  Contract of Sale and Building Owner Loss Payable Clauses

We will pay each of the following for their interest in covered loss or damage, as stated on file with us or by endorsement in the order of their precedence, as their interest may appear:

**1.**  Contract of Sale Loss Payable Clause

If the Loss Payee shown by endorsement is a person or organization you have entered a contract with for the sale of Covered Property:

    **a.**  For Covered Property in which both you and the Loss Payee have an insurable interest we will:

      **(1)**  Adjust losses with you; and

      **(2)**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

    **b.**  The following is added to the Other Insurance Loss Condition:

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**2.**  Building Owner Loss Payable Clause

If the Loss Payee is the owner of an insured building, in which you are a tenant:

    **a.**  We will adjust losses to the insured building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

    **b.**  We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

## V.  No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## W.  Other Insurance

**1.**  You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance providing coverage on the same basis.

**2.**  If there is other insurance covering the same loss or damage, other than that described in **W.1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## X.  Policy Period

We only cover direct physical loss or damage that occurs during the policy period stated in the Declarations.

## Y.  Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the applicable Limit of Insurance.

You will pay us the amount of all recoveries of Accounts Receivable you receive for a loss paid by us. But any recoveries in excess of the amount we have paid belong to you.

## Z.  Salvage

**1.**  In the event of a total loss to Covered Property other than **Real Property**, we retain our right to salvage such Covered Property.

**2.**  In the event of a loss to **Real Property**, we retain our right to salvage such **Real Property**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000041 of 000111

Filed                20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**AA.** Subrogation

If any person or organization to whom or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss or damage to impair them. But you may waive your rights against another party in writing:

**a.**  Prior to a covered loss or damage; or

**b.**  After a covered loss only if, at time of loss, that party is one of the following:

    **(1)**  Someone insured by this insurance;

    **(2)**  A business firm that you own or control;

    **(3)**  A business firm or individuals, that owns or controls you; or

    **(4)**  Your tenant.

    This written waiver will not restrict the insurance provided under this Policy.

    Exceptions:

    **(1)**  For architects' or engineers' interest in building repairs or construction you may not waive your rights to recover damages from them except as agreed to in writing by us;

    **(2)**  We will not pay for loss or damage to property in the due course of transit if you impair our rights to recover damages from any carrier for hire, bailee or third party. However, you may accept bills of lading, receipts or contracts of transportation from carriers for hire, which contain a limitation of value.

**c.**  You will be paid any recovery in the proportion that your deductible and any provable uninsured loss bears to the total loss less your proportion of fees and expenses.

# SECTION **V.** YOUR GENERAL DUTIES IN THE EVENT OF LOSS

**A.**  In event of loss or damage, you must see that the following are done:

    **1.**  Notify Police

    Notify the police if a law may have been broken.

    **2.**  Notify Us

    Give us prompt notice of the loss or damage. Include a description of the property involved.

    As soon as possible, give us a description of how, when and where the loss or damage occurred.

    We will not deny coverage due to your unintentional failure to notify us about the occurrence of loss or damage provided notice is give as soon as practicable after you become aware of such loss or damage.

    **3.**  Protect Property

    Use all reasonable means to save and preserve Covered Property from further damage at and after the time of direct physical loss or damage. You must keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim.

    This will not increase the applicable Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a **Covered Cause of Loss**.

    Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **4.**  Take Inventory

    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **5.**  Inspect Property, Books and Records

    As often as may be reasonably required, permit us to:

        **a.**  Inspect the damaged and undamaged property and take samples for testing and analysis; and

        **b.**  Examine and make copies of your books and records, including electronic records and data.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000042 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**6.** Proof of Loss

Send us a signed, sworn proof of loss containing the information we request during our investigation of your claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**7.** Cooperate

Cooperate with us in the investigation and settlement of the claim.

**8.** Resumption of Business

If you intend to continue in business, you must resume all or part of your business operations as quickly as possible.

**B.** Examination Under Oath

We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim. In the event of an examination, an Insured's answers must be signed.

# SECTION **VI.** DEFINITIONS

**A.** **Additional Outdoor Property** means the following property as indicated in the Declarations: Traffic or Street Lights and Signs, Parking Meters, Trash Bins, Benches, Bus Stops, Bike Racks, Fences, Signs, and Fixtures.

**B.** **Annual Aggregate** means the maximum amount payable for all covered loss or damage for the applicable coverages or **Covered Causes of Loss** during the **Policy Year** regardless of the number of occurrences.

**C.** **Building Glass** means glass that is part of the building or structure, including glass building blocks, skylights, glass doors and windows and their encasement frames, alarm tape, lettering and ornamentation. This does not include art glass, half tone screens, lenses, memorial windows, mosaic art, rotogravure screens or any stained glass.

**D.** **Business Income** means:
   **1.** Net Income (Net Profit or Net Loss before income taxes), including **Rental Value** and Royalties, that would have been earned or incurred;
   **2.** Continuing normal operating expenses incurred; and
   **3.** **Ordinary Payroll**, unless otherwise excluded in the Declarations.
   **4.** For research and development operations, **Business Income** also includes awarded contract revenues, licensing fees, consulting fees, funding grants and progress (milestone) payments.
   **5.** As respects all insureds if you are operating at a Net Loss, continuing normal operating expenses will be offset by the Net Loss.

**E.** **Business Personal Property** means personal property owned by you and used in the normal course of your business operations, and personal property owned by others in your care, custody and control. Such property includes the following:
   **1.** Machinery and equipment;
   **2.** Merchandise, stock, supplies, raw materials and **Finished Goods**;
   **3.** Furniture and fixtures;
   **4.** **Computer Equipment**;
   **5.** Molds and dies;
   **6.** **Improvements and Betterments**;
   **7.** Personal property, other than motor vehicles, of your directors, officers and employees at an **Insured Premises**;
   **8.** **Electronic Data**; and
   **9.** **Contractor's Equipment**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000043 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**F.** **Cloud Computing Service** means a service provider:

   **1.** In the business of storing, managing and processing **electronic data**;

   **2.** That provides access to and use of software and/or a network of remote servers hosted away from your **Insured Premises** to store, manage or process such data;

and with whom you have a written contract to provide such services.

**Cloud Computing Service** does not include a data, voice or video service.

**G.** **Communication Services** means services relating to voice or video, internet access or access to any electronic, cellular or satellite network.

**H.** **Computer Equipment** means any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, electro-mechanical or electro-magnetic data processing or production equipment.

**I.** **Covered Cause of Loss** means direct physical loss or damage that occurs during the policy period unless the loss or damage is excluded under this Policy.

**J.** **Crisis Event** means a malicious act:

   **1.** Committed on or within one mile of your **Insured Premises** against any person that results in physical injury or death to such person;

   **2.** Attempted or threatened to be committed on or within one mile of your **Insured Premises** against any person that is likely to result in physical injury or death to such person, and reported to law enforcement;

   **3.** Committed on or within one mile of your **Insured Premises** that results in direct physical loss or damage to Covered Property at your **Insured Premises**; or

   **4.** Attempted or threatened to be committed on or within one mile of your **Insured Premises** that is likely to result in direct physical loss or damage to Covered Property at an **Insured Premises**, and is reported to law enforcement.

   **5.** **Crisis Event** also includes:

      **a.** Explosion, fire or equipment failure at an **Insured Premises** that results in or is likely to result in bodily injury, death or property damage;

      **b.** Workplace or construction accidents at an **Insured Premises** that results in or is likely to result in bodily injury, death or property damage;

      **c.** Suicide or attempted suicide at an **Insured Premises**;

      **d.** The release or imminent release of a hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;

      **e.** The release or imminent release of bacteria or virus that is likely to result in bodily injury or death to hazardous substance that is likely to result in bodily injury or death to persons at an **Insured Premises**;

      **f.** Food contamination or other public health hazard as determined by an appropriate governmental body that is likely to result in bodily injury or death to persons at an **Insured Premises**; or

      **g.** The actual or threat of abduction, kidnapping, stalking, sexual assault, or criminal use of a firearm at an **Insured Premises** directed at you, your employees, occupants or visitors to your **Insured Premises**.

   Covered Crisis Event does not include any acts, attempts or threats committed by you, or any of your partners, directors, officers or trustees.

**K.** **Denial of Service Attack** means the malicious direction of a high volume of worthless inquiries to web site or e-mail destinations, effectively denying or limiting legitimate access.

**L.** **Earth Movement** means:

   **1.** **Earthquake**;

   **2.** Landslide, including earth sinking, rising or shifting related to such event;

   **3.** Mine subsidence, which means the collapse of an underground mine.

   **4.** Earth sinking, rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other part of buildings or structures. Soil conditions include contraction, expansion, freezing, thawing, erosion, improper compaction of soil and the action of water under the ground surface;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000044 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

5.   Volcanic eruption, explosion or effusion.

**Earth Movement** does not include **Sinkhole Collapse**.

All Earth Movement that occurs within any 168-hour period will constitute a single occurrence. The expiration of this Policy will not reduce the 168-hour period.

**M. Earthquake** means a shaking or trembling of the earth's crust, including tremors and aftershocks, resulting in breaking, shifting, rising, settling, sinking or lateral movement or other movement, including any related earth sinking, rising or shifting, due to either natural or man-made causes.

All earthquake shocks that occur within any 168-hour period will be deemed to be a single Earthquake occurrence. The expiration of this Policy will not reduce the 168-hour period.

**N. Earthquake Sprinkler Leakage** means the escape of water or other materials from automatic fire extinguishing equipment due to the breakage or bursting of pipes or equipment caused by or resulting from **Earthquake**.

**O. Electronic Data** means messages, information, coding, programs, instructions or software in a form suitable for communications, storage, or processing by electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment. **Electronic Data** does not include electronic storage media.

**P. Electronic Extortion Demand** means a demand for money to:

1.   Remove malware or ransomware from your **Computer Equipment** that causes:

   a.   The loss of use of, inability to access, or inability to manipulate **Electronic Data**; or

   b.   The non-functionality of any **Computer Equipment**; and

2.   Restore your **Computer Equipment** to working order.

**Q. Electronic Vandalism** means:

1.   A virus, malicious code or similar instruction introduced into and enacted on **Computer Equipment** or **Electronic Data** or a network to which it is connected, designed to damage or destroy any part of such equipment or data, or disrupt its normal operation; or

2.   Manipulation of your **Computer Equipment** or **Electronic Data** by any person for the purpose of diverting or destroying **Electronic Data**;

whether or not there has been any physical loss or damage to **Computer Equipment** or **Electronic Data**.

**R. Equipment Breakdown** means an **Equipment Breakdown Accident** to **Equipment Breakdown Property** as defined below.

**Equipment Breakdown Accident** means direct physical loss or damage as follows:

1.   Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2.   Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

3.   Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

4.   Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5.   Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**Equipment Breakdown Property** means property:

1.   That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

2.   Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

**Equipment Breakdown Property** may utilize conventional design and technology or new or newly commercialized design and technology.

3.   The following is not Equipment Breakdown Property:

   a.   Any structure, foundation, cabinet, or compartment;

   b.   Any insulating or refractory material;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000045 of 000111

Filed        20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT

    **c.** Any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

    **d.** Any draglines, excavation or construction equipment;

    **e.** Any equipment manufactured by you for sale;

    **f.** Any satellite, or any equipment mounted on a satellite; or

    **g.** Any vehicle or any equipment mounted on a vehicle. As used here, vehicle means any machine or apparatus that is used for transportation or moves under its own power. Vehicle includes, but is not limited to, car, truck, bus, trailer, train, aircraft, spacecraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at an **Insured Premises** and that receives electrical power from an external power source will not be considered a vehicle.

**S.** **Extra Expense** means the actual, necessary and reasonable expenses you incur during the **Period of Restoration** that you would not have incurred if there had been no direct physical loss or damage to property at an **Insured Premises**. We will pay **Extra Expense**s that:

    **1.** Avoid or minimize the suspension of business and to continue operations at an **Insured Premises**, replacement premises or temporary premises, including relocation expenses and costs to equip and operate such premises;

    **2.** Minimize the suspension of business operations if you cannot continue operations; or

    **3.** Repair or replace property, but only to the extent it reduces the amount that otherwise would have been payable under any Time Element Coverage.

**Extra Expense** does not include to any expense related to any recall of products you manufacture, handle or distribute.

**T.** **Fine Arts** mean paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit, owned by you or others in your care, custody or control. **Fine Arts** does not include artwork that is computerized or classified as data, or **Valuable Papers and Records**.

**U.** **Flood** means:

    **1.** Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man-made body of water from its boundaries, all whether driven by wind or not;

    **2.** Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground; or

    **3.** Water under the ground surface pressing on, or flowing or seeping through:

        **a.** Foundations, walls, floors or paved surfaces;

        **b.** Basements, whether paved or not; or

        **c.** Doors, windows or other openings.

    **4.** Flood includes water or other material that backs up or overflows from any sewer or septic tank or drain, if such back-up is caused by any of the conditions in **1.**, **2.** or **3.** above regardless of the proximity of the back-up to such conditions.

All flooding in a continuous or protracted event will constitute a single flood.

**V.** **Fungus** means any group of spore producing organisms, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**W.** **Green Authority** means the United States Green Building Council (LEED® Green Building Rating System); the Green Building Initiative™ (Green Globes™ Assessment and Rating System); or the Environmental Protection Agency and the Department of Energy (EnergyStar® requirements).

**X.** **Green** means products, materials and construction methods that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize their negative impact on the environment.

**Y.** **Gross Earnings Calculation** means Net Sales, including the net sales value of production, including **Ordinary Payroll** but only to the extent **Ordinary Payroll** is covered under this Policy, less the cost of all:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000046 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

1.  Raw materials utilized in such production;

2.  Materials and supplies consumed in the operations or services;

3.  Services purchased from others (not your employees, including leased or temporary employees) that do not continue under contract; and

4.  Merchandise sold.

**Z.  Gross Profit Calculation** means the sum of Net Profit, charges and expenses, including **Ordinary Payroll** but only to the extent **Ordinary Payroll** is covered under this Policy, which necessarily continue during the **Period of Restoration**.

If there is no Net Profit or you are operating at a Net Loss, **Gross Profit Calculation** means the charges and expenses (including **Ordinary Payroll** but only to the extent **Ordinary Payroll** is covered under this Policy) which necessarily continue during the **Period of Restoration** less any Net Loss from business operations which would have been incurred had there been no loss or damage. The amount payable as Gross Profits shall be limited to such loss resulting from a reduction in sales.

**AA. Improvements and Betterments** means:

Fixtures, alterations, installations or additions:

1.  That comprise part of the Building you occupy but do not own which you are contractually responsible to insure; or

2.  Acquire from a prior tenant or make at your expense and cannot legally remove.

**BB. Insured Premises** means a location:

1.  Listed by street address or other description of property as stated on file with us in the most recent Statement of Values or other documentation provided by you to us.

2.  Scheduled on this Policy;

3.  Covered as a Miscellaneous Unnamed Location; and

4.  Covered under the terms and conditions of the Newly Acquired Coverage Extension or Errors and Omissions Coverage Extension.

5.  If you are a tenant, **Insured Premises** includes that portion of **Real Property** which you rent, lease or occupy and common areas.

**CC. Money** means:

1.  Currency, coins and bank notes; and

2.  Travelers checks, register checks and money orders held for sale to the public.

**DD. Named Storm** means a hurricane, cyclone, typhoon, tropical depression, or tropical storm that has been assigned a formal name by the National Hurricane Center, National Weather Service, World Meteorological Association, or any other generally recognized scientific or meteorological association that provides formal names for public use and reference.

**EE. Newly Acquired Property** means **Real Property** or **Business Personal Property** you acquire, purchase or lease (including any newly acquired property in the course of construction) after the inception of this Policy.

**Newly Acquired Property** does not include:

1.  Any property acquired through any foreclosure process;

2.  Any premises of others where you are temporarily working, such as installing property or performing maintenance or service work;

3.  Any property covered by any other part of this Policy; or

4.  Property that is not covered.

**FF. Ordinary Payroll** means payroll expenses for your employees other than officers, executives, department managers and employees under contract (other than under collective bargaining agreements). **Ordinary payroll** includes employee benefits, FICA, Medicare payments, union dues, and workers' compensation premiums.

EXH - 000047 of 000111

Filed            20-CI-006311      10/30/2020           David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**GG.** **Period of Restoration** means:

1. The period of time that:

   a. Begins at the time the **Covered Cause of Loss** occurred; and

   b. Ends on the earlier of:

      (1) When your operations resume;

      (2) The certificate of occupancy has been obtained from the proper authority or the building is tenantable;

      (3) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (4) The date when business is resumed at a new permanent location.

   The expiration date of this Policy will not cut short the **Period of Restoration**.

2. For buildings under construction or undergoing additions or alterations, if the direct physical loss or damage delays the start of your business operations, the **Period of Restoration**:

   a. Begins the date business operations would have begun had the direct physical loss or damage not occurred; and

   b. Ends on the earlier of:

      (1) The date you actually begin your business operations; or

      (2) The date when the construction, additions or alterations should have been completed with reasonable speed and similar quality.

3. **Period of Restoration** does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

   a. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants and Contaminants**; or

   b. Regulates the construction, use or repair, or requires the tearing down of any property, except as covered in the Ordinance or Law Coverage Extension.

**HH.** **Perishable Goods** means **Business Personal Property**:

1. Maintained under controlled conditions for their preservation; and

2. Susceptible to loss or damage if the controlled conditions are not maintained.

**II.** **Policy Year** means the period of time that:

1. Begins with the inception or anniversary date of this policy; and

2. Ends at the expiration or at the next anniversary date of this policy.

**JJ.** **Pollutants and Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste, or any other material which causes or threatens to cause physical loss, damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

**KK.** **Qualifying period** means the amount of time that must be exceeded for Time Element coverage to apply. Once the qualifying period has been exceeded, Time Element coverage applies from the initial event of loss.

**LL.** **Ransom Monies** means **Money** that you have paid to meet an actual **Electronic Extortion Demand**.

**MM.** **Real Property** means buildings and any other structures, including:

1. New construction and additions under construction at an **Insured Premises**;

2. Alterations and repairs to buildings or structures;

3. Foundations of buildings, structures, machinery or boilers, including the cost of excavations, grading, backfilling or filling;

4. Materials, equipment and supplies for new construction, additions, buildings or structures;

5. Temporary structures;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000048 of 000111

Filed                    20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/08/2020 05:28:42 PM
84382

6.  Machinery, equipment, and fixtures that are permanently attached to a building;

7.  Above and below ground pipes, tanks, flues and drains; and

8.  Contractors' interests in items **1.** through **7.** above, to the extent that you have agreed in writing prior to loss to insure such interests.

**NN. Rental Value** means the sum of:

1.  The total anticipated gross rental income from tenant occupancy of the **Insured Premises** as furnished and equipped by you including taxes, rent based on percentage of sales, and other charges paid by tenants with respect to the leased premises;

2.  The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenants and which would otherwise be your obligations; and

3.  The fair rental value of any portion of such **Insured Premises** which you occupy.

    The conditions set forth in **III. TIME ELEMENT** SECTION, paragraphs **A.2.a.** and **A.2.b.** shall apply to the calculation of the **Rental Value** loss.

4.  Coverage is only provided for the lesser of:

    a.  The **Period of Restoration** plus the Extended Income period; or

    b.  The number of months shown in the Declarations under Rental Value after the date and time of the loss or damage to the covered property held for rental to others at an **Insured Premises**.

**OO. Research Animals** means animals used in, or upon which you are conducting experiments or testing as part of, your research and development operations.

**PP. Securities** mean negotiable and non-negotiable instruments or contracts representing either **Money** or other property and include:

1.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter); and

2.  Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

    But does not include **Money**, lottery tickets held for sale or postage stamps in current usage.

**QQ. Sinkhole Collapse** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.

**Sinkhole Collapse** does not include:

1.  The cost of filling sinkholes; or

2.  Sinking or collapse of land into man-made underground cavities.

**RR. Soft costs** means:

1.  The amount of actual interim or construction financing interest, including loan fees and other one-time charges incurred to negotiate a new construction loan and/or extend the existing one;

2.  Real estate taxes and ground rent, if any;

3.  Advertising and promotional expenses;

4.  Cost of additional commissions;

5.  Architects, surveyors, legal, consulting engineers or other fees, not otherwise covered under this Policy;

6.  Project administration expenses, but not including development fees;

7.  Insurance premiums; and

8.  Finder's fee refunds.

**SS. Specified Causes of Loss** means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; **Sinkhole Collapse**; **Volcanic Action**; falling objects; weight of snow, ice or sleet; water damage, **Sprinkler Leakage**, **Theft**; or **Building Glass** breakage.

1.  Falling objects does not include loss or damage to:

    a.  Personal property in the open; or

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000049 of 000111

Filed          20-CI-006311     10/30/2020     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT

84382

    **b.** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall or the building structure is first damaged by a falling object.

**2.** Water damage means:

    **a.** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the **Insured Premises** and contains water or steam; and

    **b.** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the **Insured Premises** and is connected to or is part of a municipal potable water supply system or municipal sanitary sewer system.

Loss or damage caused by or resulting from an event meeting the definition of **Flood** is not Water Damage.

**TT. Sprinkler Leakage** means the escape of water or other materials from automatic fire extinguishing equipment due to the breakage or bursting of pipes or equipment.

**UU. Stock** means merchandise held in storage or for sale, raw materials, and goods in process or finished.

**VV. Theft** means any act of stealing by any method including but not limited to theft by electronic means, burglary, robbery, larceny, conversion, extortion or voluntary parting of property for any reason.

**WW. Time Element** means **Business Income** or **Extra Expense**.

**XX. Unmanned Aircraft** means an aircraft that is not designed, manufactured or modified after manufacture to be controlled directly by a person from within or on the aircraft and which is owned by you or owned by others but in your care, custody, or control.

**Unmanned aircraft** includes equipment designed for and used exclusively with the **unmanned aircraft**, provided such equipment is essential for operation of the **unmanned aircraft** or for executing **unmanned aircraft** operations.

**YY. Valuable Papers and Records** means inscribed, printed or written documents, manuscripts, patterns or records including abstracts, books, deeds, drawings, films, maps or mortgages.

**Valuable Papers and Records** does not mean:

**1.** **Money** or **Securities**, whether or not in current circulation;

**2.** Property that cannot be replaced with other property of like kind and quality;

**3.** **Fine Arts** or Accounts Receivable; or

**4.** **Electronic Data**.

**ZZ. Virtual Currency** means as an electronic representation of monetary value that may be issued, managed and controlled by private issuers, developers, or the founding organization. Such **Virtual Currencies** are often represented in terms of tokens and may remain unregulated without a legal tender.

**AAA. Volcanic Action** means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**1.** Airborne volcanic blast or airborne shock waves;

**2.** Ash, dust or particulate matter; or

**3.** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to property at an **Insured Premises**.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000050 of 000111

Filed          20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HOSPITALITY SPECIALIZED COVERAGES

Words and phrases that appear in **bold type** have special meaning. Refer to Section **G.** Definitions. The following Coverage Extensions are added.

**A.** COMMUNICABLE DISEASE CONTAMINATION COVERAGE

**1.** We will pay for the actual loss of **Business Income** you sustain and the **Extra Expenses** you incur during the **Period of Restoration** when access to your **Insured Premises** is partially or totally prohibited by order of a government authority as the direct result of an outbreak of a **Communicable Disease** at an **Insured Premises**.

   **a.** The **Period of Restoration** begins at the time of the outbreak of a **Communicable Disease**, and ends the earlier of:

      **(1)** The time when access is permitted to your **Insured Premises**;

      **(2)** 180 consecutive days after the order by the governmental authority; or

      **(3)** When the **Communicable Disease** Contamination Annual Aggregate Limit of Insurance shown in the Declarations is exhausted.

   **b.** We will also reimburse you for the actual costs that you incur to clean up, remove, restore, or replace contaminated **Covered Property** when required by the order due to the presence of a specific **Communicable Disease** at an **Insured Premises**.

**2.** The most we will pay at all **Insured Premises** for the sum of all loss or damage in is the **Communicable Disease** Contamination Annual Aggregate Limit of Insurance shown in the Declarations.

**3.** Deductible

   **a.** We will not pay for any loss of **Business Income** until the necessary interruption of your business operations exceeds the **Communicable Disease** Waiting Period shown in the Declarations. We will not pay for any loss of **Business Income** sustained during this Waiting Period. No other deductible or Waiting Period will apply to coverage provided under this Coverage Extension.

     The **Communicable Disease** Waiting Period begins at the time of the order by a governmental authority.

   **b.** Any deductibles or Waiting Periods applicable to **Business Income** do not apply to **Extra Expense** provided under this Coverage Extension.

**4.** Exclusions

   **a.** We will not pay for the costs to test for or monitor for any **Communicable Disease** other than payment for testing or monitoring that is performed during the clean up or removal of the **Communicable Disease**.

   **b.** This Coverage Extension does not apply if the presence of the **Communicable Disease**:

      **(1)** Is caused by or results from a cause of loss that is excluded under this Policy; or

      **(2)** Existed prior to the effective date of this Policy.

      **(3)** The Debris Removal Coverage Extensions do not apply to coverage provided by this endorsement.

**5.** This is the only coverage applicable to **Communicable Disease** Contamination.

**B.** EMERGENCY EVACUATION EXPENSES

**1.** We will reimburse you for **Emergency Evacuation Expenses** you incur as a direct result of imminent danger of bodily injury or loss of life when the **Insured Premises** is threatened by a **Covered Cause of Loss**.

**2.** Coverage begins at the time of evacuation at an **Insured Premises** and ends the earlier of:

   **a.** When your employees or **Guests** have been returned to the **Insured Premises** where the evacuation took place, or to another **Insured Premises**;

   **b.** 30 days after the evacuation of the **Insured Premises**; or

   **c.** The Limit of Insurance has been exhausted.

**3.** We will not pay any expenses or loss caused by or related to:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000051 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2020 05:28:12 AM
84382

    **a.** A strike, bomb threat or false fire alarm, unless the evacuation is ordered by a civil authority;

    **b.** A planned evacuation drill;

    **c.** An evacuation of any resident due to their medical condition;

    **d.** Any costs associated with any temporary or long term residency; or

    **e.** Any resultant **Business Income** loss sustained or **Extra Expenses** incurred.

**4.** The most we will pay in any one occurrence for all incurred **Emergency Evacuation Expenses** is the **Emergency Evacuation Expenses** Limit of Insurance shown in the Declarations.

**5.** No deductible applies to this coverage.

**C.** FOOD SPOILAGE

Coverage Extension SPOILAGE in the Property Elite Coverage Form is deleted and replaced by the following:

**1.** We will pay for loss or damage to **Perishable Food**; and

**2.** The actual loss of **Business Income** you sustain and the **Extra Expenses** you incur;

caused by or resulting from Spoilage of covered **Perishable Food** at an **Insured Premises**.

**3.** We will also reimburse the actual, necessary and reasonable expenses you incur to:

    **a.** Avoid or reduce spoilage loss or damage to the extent that such spoilage loss or damage is reduced; and

    **b.** Clean up and dispose of spoiled **Perishable Food**. The Debris Removal Coverage Extension does not apply to this coverage.

**4.** Spoilage must be caused by temperature or humidity change due to:

    **a.** Complete or partial lack of power to operate the refrigeration, cooling, heating or humidity controls system, resulting from direct physical damage to utility generating plants, switching stations, substations, transformers, and transmission lines;

    **b.** Accidental or unintentional manual disconnection of any refrigeration, cooling or humidity control system from the source of electrical power;

    **c.** Termination of electrical power due to throwing or turning off any switch or other device usual to the shutting off of electrical power, at the **Insured Premises**; or

    **d.** Contamination due to the release of any refrigerant.

**5.** We will not pay for any loss or damage until the amount of loss or damage exceeds the Food Spoilage Deductible shown in the Declarations. We will then pay the amount of loss or damage excess of that Deductible.

**6.** Loss Payment and Valuation Condition

    **a.** The most we will pay and reimburse for all loss or damage in any one occurrence is the Food Spoilage Limit of Insurance shown in the Declarations.

    **b.** We will determine the value of **Perishable Food** at:

        **(1)** The selling price, as if no loss or damage had occurred;

        **(2)** Less discounts and expenses you otherwise would have had.

**7.** We will not pay any loss or damage caused by or resulting from the inability of the utility service or other power source to provide sufficient power at an **Insured Premises** due to:

    **a.** Lack of fuel;

    **b.** Governmental order;

    **c.** Lack of generating capacity to meet demand; or

    **d.** The intentional shutting off of power by the utility service or other power source. However, this exclusion will not apply in the event the utility service or other source of power must shut off or reduce power due to natural disaster or in an effort to prevent property damage or bodily injury.

**D.** FRANCHISEE UPGRADE COSTS

**1.** In the event of direct physical loss or damage to **Real Property** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**, we will pay for the actual, necessary and reasonable additional costs you incur to upgrade such **Real Property** to the standard required by the Franchisor as outlined in the franchise documents in effect on the date and time of the loss.

**2.** The most we will pay for all franchise upgrade costs you incur in any one occurrence is the Franchise Upgrade Costs Limit of Insurance shown in the Declarations.

Such costs are in addition to the amounts payable under the LOSS PAYMENT AND VALUATION CONDITIONS provision of this Policy.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000052 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:38:13 PM
94497

**3.** We shall not be liable for any costs set forth above if you were required to comply with such standards prior to the time of the direct physical loss or damage and you failed to comply with such standards within a reasonable period of time.

**E.** GUEST RELOCATION AND MOVE-BACK EXPENSES

**1.** We will reimburse you for **Guest Relocation and Move-Back Expenses** due to direct physical loss or damage caused by or resulting from a **Covered Cause of Loss** that renders an **Insured Premises** uninhabitable.

The expenses must be incurred no later than 60 consecutive days after the building repairs at the **Insured Premises** where the loss or damage occurred have been completed. The expiration date of this Policy will not cut short this time period.

**2.** No coverage is provided for loss or damage to any property.

**3.** The most we will pay for all **Guest Relocation and Move-Back Expenses** in any one occurrence is the Guest Relocation Expenses Limit of Insurance shown in the Declarations. This is the only Limit of Insurance that applies to this Coverage Extension.

**F.** INNKEEPER'S LEGAL LIABILITY

**1.** We will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of loss or destruction of, or damage to **Innkeeper's Covered Property** to which this Coverage Extension applies. We will have the right to defend the insured against any suit seeking those damages. We have no duty to defend the insured against any suit seeking damages for loss or destruction of, or damage to any **Covered Property** to which this endorsement does not apply.

We may at our discretion investigate any occurrence and settle any claim or suit that may result. However:

**a.** Our obligation to pay damages on the insured's behalf applies only to the amount of damages in excess of the Per Occurrence Deductible shown in the Declarations; and

**b.** Our obligation to defend and make any payments ends when the total amount of defense costs and payments of judgments or settlements exceeds the Limit of Insurance applicable to this Coverage Extension.

**2.** We will pay for covered loss or damage to **Innkeeper's Covered Property** only if the loss or damage occurs during

the policy period and in the Coverage Territory.

**3.** We will not pay for any loss or damage caused by or resulting from any of the following:

**a.** Criminal, dishonest, fraudulent or malicious acts committed by, on behalf of or at the direction of any insured;

**b.** **Electronic Vandalism**;

**c.** Guests voluntarily parting with any personal property;

**d.** Unexplained disappearance;

**e.** **Theft**;

**f.** Loss or destruction of or damage to **Innkeeper's Covered Property** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**4.** Limits of Insurance

**a.** The most we will pay for all loss or damage to any one guest's **Innkeeper's Covered Property** is the Per Guest Limit of Insurance shown in the Declarations.

**b.** The most we will pay for all loss or damage in any one occurrence regardless of the number of insureds, claims made, suits brought, guests making claims or **Insured Premises** is the Innkeepers Legal Liability Limit of Insurance shown in the Declarations.

All loss, destruction or damage involving a single act or series of related acts whether caused by one or more persons is considered one occurrence.

The most we will pay for all loss or damage in any one policy year is the Innkeepers Legal Liability Limit of Insurance shown in the Declarations.

**5.** Deductible

**a.** We will not pay for any loss or damage until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage excess of that deductible.

**b.** The following deductible conditions also apply:

**(1)** The Per Guest Deductible applies separately to each guest making a claim or representing a suit regardless of the number of claims made or suits brought.

**(2)** The maximum deductible applicable to all covered loss or damage in any one occurrence is the Occurrence Deductible shown in the Declarations.

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000053 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

G. DEFINITIONS

1. **Communicable Disease** means a disease that:

   a. May be transmitted directly or indirectly by a person or animal to another; and

   b. Is due to an infectious agent or toxic product produced by such infectious agent.

2. **Emergency Evacuation Expenses** means the actual, necessary and reasonable expenses you incur in excess of normal continuing operating expenses to:

   a. Remove and transport employees or **Guests** to; and

   b. House and maintain employees or **Guests** at;

   another **Insured Premises** or other premises within the coverage territory; and

   c. Return employees or **Guests** to the original **Insured Premises**.

   d. **Emergency Evacuation Expenses** do not include:

      (1) Expenses you incur to relocate or move your patients or residents to a new permanent location; or

      (2) Expenses covered under any other Coverage or Coverage Extension under this Policy.

3. **Guest** means a person registered at the time of direct physical loss or damage at a hospitality location, including a hotel, motel, resort or other similar location.

4. **Guest Relocation and Move-Back Expenses** means:

   a. The actual, necessary and reasonable expenses you incur to:

      (1) Transport **Guests** to alternate accommodations; and

      (2) Pack and transport personal property of **Guests** to alternate accommodations.

   b. Reasonable charges for comparable accommodations for guests actually displaced by such direct physical loss or damage, but only for:

      (1) The original length of the reservation for such **Guests**; and

      (2) The amount of the occupancy rate at comparable accommodations that exceeds the occupancy rate at the **Insured Premises** where the direct physical loss or damage occurred; and

   c. Return employees or **Guests** to the **Insured Premises** where the loss or damage occurred when such premises are habitable.

5. **Innkeeper's Covered Property** means any personal property belonging to guests while that property is:

   a. In your care, custody or control; or

   b. Located within a building or structure at an **Insured Premises**.

   c. **Innkeeper's Covered Property** does not include:

      (1) Samples or articles for sale, samples or articles carried or held for sale or delivery after sale.

      (2) Any aircraft, auto or watercraft including any associated equipment or accessories.

      (3) Property contained within or on an auto that is not owned or operated by the insured.

      (4) Any form of **Money** or **Securities**.

6. **Perishable Food** means **Business Personal Property** that is:

   a. Meant for human consumption;

   b. Used in room service or restaurant operations owned and operated by you;

   c. Maintained by you under controlled conditions for its preservation; and

   d. Susceptible to loss or damage if the controlled conditions change.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000054 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**THE HARTFORD**

# TO REPORT A PROPERTY CLAIM

Report Claims To:          Telephone:  1-800-327-3636

Email:          Lossconnect@thehartford.com

When reporting a claim, please include the following information:

- Insured Name;
- Policy Number;
- Specific Location of the Loss;
- Description of the Loss;
- Date of the Loss; and
- A Name and Telephone Number that our claims adjuster can contact for additional information.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000055 of 000111

Filed            20-CI-006311     10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**A.** Disclosure Of Federal Share Of Terrorism Losses

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to **certified acts of terrorism** under the federal Terrorism Risk Insurance Act, as amended (TRIA) exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

**B.** Cap On Insurer Liability For Terrorism Losses

A **certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism under TRIA. The criteria contained in TRIA for a **certified act of terrorism** include the following:

**1.** The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

**2.** The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

**3.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to **certified acts of terrorism** under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C.** Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of Terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion, the Pathogenic or Poisonous Biological or Chemical Materials Exclusion, the Contamination Exclusion and the War And Military Action Exclusion.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000056 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONFIRMATION OF REJECTION OF COVERAGE –
## TERRORISM RISK INSURANCE ACT

We have previously made an offer of coverage for certified acts of terrorism and advised you of the premium for such coverage. In order to reject our offer, you must sign and return this written statement that affirmatively expresses your desire to waive coverage for certified acts of terrorism.

A certified act of terrorism means an act that is certified by the Secretary of the Treasury to be an act of terrorism under the federal Terrorism Risk Insurance Act, as amended (TRIA). The criteria contained in TRIA for a certified act of terrorism includes the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for a portion of insured losses as indicated in the table below attributable to **certified act of terrorism** that exceeds the applicable insurer deductible.

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses under TRIA exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

The premium for terrorism coverage is shown below.

| TERRORISM PREMIUM: | $18,932.00 |
|---|---|

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000057 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/30/2020 05:28:42 PM
84382

Other acts of terrorism means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.  Use or threat of force or violence; or

    b.  Commission or threat of a dangerous act; or

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  When one or both of the following applies:

    a.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

### OPTION TO REJECT TERRORISM COVERAGE AND APPLICATION TO RENEWALS

You may reject terrorism coverage by signing and returning the written rejection statement below. By signing the written rejection statement, you are affirmatively rejecting our offer and authorizing the attachment of terrorism exclusion(s) to your binder and/or policy and to all subsequent renewals. Unless you contact your agent, broker or representative and accept coverage prior to the inception of your renewal policy, terrorism exclusion(s) will apply to all subsequent renewals.

### REJECTION STATEMENT

On behalf of the Named Insured shown above, the undersigned hereby:

*   Rejects the offer of coverage for terrorism;

*   Acknowledges that an exclusion(s) for terrorism will be made part of the policy; which will exclude certified acts of terrorism and other acts of terrorism;

*   Acknowledges that, unless the Named Insured requests coverage for terrorism; at renewal, exclusion(s) for terrorism will form a part of the policy and any subsequent renewals; and

*   Acknowledges that there will be no premium charge made for terrorism coverage unless the Exception Covering Certain Fire Losses applies*.

* In the states listed in the schedule below, terrorism exclusion in a property policy includes an Exception Covering Certain Fire Losses. Therefore, if you reject coverage for terrorism, that rejection does not apply to fire losses resulting from terrorism and coverage for such losses will be provided in your policy. Because of this, only a portion of the premium for terrorism will be returned to you. In subsequent renewals in which a terrorism exclusion is attached to your policy, a portion of the amount of premium you would have paid had you accepted our offer of coverage will be assessed.

The Exception Covering Certain Fire Losses applies to property located in the following states:

California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Washington, West Virginia, Wisconsin

_____     _____     _____
                   Signature                                    Title                              Date

**Your signed written statement should be sent to your insurance agent or broker.**

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000058 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Terrorism Premium:** $18,932

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for **certified acts of terrorism under** TRIA. The portion of your premium attributable to such coverage is shown above in this endorsement.

**B. The following definition is added with respect to the provisions of this endorsement:**

A **certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a **certified act of terrorism** include the following:

**1.** The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

**2.** The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

**3.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C. Disclosure Of Federal Share Of Terrorism Losses Under TRIA**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to **certified act of terrorism** under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

**D. Cap On Insurer Liability for Terrorism Losses Under TRIA**

If aggregate insured losses attributable to **certified act of terrorism** under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000059 of 000111

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
10/30/2020 05:28:43 PM
84382

procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**E.** Application of Other Exclusions

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

**F.** All other terms and conditions remain the same.


*When terrorism is excluded, this policy includes a charge of $0 for Fire resulting from terrorism in states that have a Standard Fire Policy Statute requiring such coverage as stated in the terrorism exclusion on your policy.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000060 of 000111

Filed            20-CI-006311    10/30/2020                    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSESTS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your Policy. You should read your Policy and review the Declarations and the complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000061 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH-: 000062 of 000111

Filed          20-CI-006311   10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN BUSINESS INCOME DEDUCTIBLE OPTIONS

**A.** PERCENTAGE OF LOSS

  **1.** If the Deductible applicable to Stated Covered Cause of Loss – Equipment Breakdown shown in the Declarations is expressed as a percentage of loss, we will calculate the Deductible applicable to **Business Income** loss by multiplying the gross amount of loss, damage or expense (prior to any Deductible) by the indicated percentage shown on the Declarations. If the calculated Percentage of Loss Deductible is less than the Policy Deductible shown in the Declarations, the Policy Deductible will apply.

  **2.** We will not pay for any **Business Income** loss until the amount of loss exceeds the Deductible. We will then pay the amount of loss or damage in excess of that Deductible up to the Limit of Insurance.

    **EXAMPLE**

    An **Equipment Breakdown Accident** to **Equipment Breakdown Property** results in a **Business Income** loss in the amount of $40,000.

    Percentage of Loss Deductible is: 10%; $5,000 Minimum Deductible applies.

    $40,000 x .10 = $4,000 Percentage of Loss Deductible. However: $5,000 minimum deductible applies.

    Loss payment calculation: $40,000 - $5,000 = $35,000. This is the most we will pay in this example.

**B.** WAITING PERIOD

  If a Waiting Period is stated in the Declarations applicable to Stated Covered Cause of Loss - Equipment Breakdown we will not pay for any **Business Income** loss incurred during the specified number of hours immediately following the **Equipment Breakdown Accident**. We will then pay for the actual loss of **Business Income** up to the Limit of Insurance.

**C.** MULTIPLES OF AVERAGE DAILY VALUE

  If the Deductible applicable to Stated Covered Cause of Loss – Equipment Breakdown shown in the Declarations is a Multiple of Average Daily Value, that amount will be calculated as follows, with respects to **Business Income** loss:

  **1.** The Average Daily Value will be the **Business Income** that would have been earned had no **Equipment Breakdown Accident** occurred, divided by the number of working days during the **Period of Restoration**. No reduction shall be made for the **Business Income** not being earned, or in the number of working days, because of the **Equipment Breakdown Accident** or any other scheduled or unscheduled shutdowns during the Period of Restoration.

  **2.** The Average Daily Value applies to all locations included in the valuation of the loss.

  **3.** The Average Daily Value as determined above will be multiplied by the number shown in the Declarations. The result shall be used as the Deductible.

  **4.** We will not pay for any **Business Income** loss until the amount of loss exceeds the Deductible. We will then pay the amount of loss or damage in excess of that Deductible up to the Limit of Insurance.

    **EXAMPLE**

    Business is interrupted, partially or completely for 5 days. If there had been no Equipment Breakdown the earned **Business Income** for those 5 days would have been $100,000.

    The Equipment Breakdown **Business Income** deductible is: 2 times Average Daily Value.

    Step 1: $100,000/5 = $20,000 Average Daily Value.

    Step 2: $20,000 (Average Daily Value) x 2 (times Average Daily Value) = $40,000 Equipment Breakdown **Business Income** deductible.

    Loss Payment Calculation: $100,000 - $40,000 = $60,000. This is the most we will pay in this example.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000063 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIGH HAZARD WIND ZONES

**SEE DECLARATIONS FOR APPLICABLE LIMITS AND DEDUCTIBLES. STATES, COUNTIES AND REGIONS THAT ARE NOT LISTED BELOW ARE CONSIDERED ALL OTHER WINDSTORM OR HAIL ZONES.**

**FOR STATES OR LOCATIONS WITHIN A HIGH HAZARD ZONE THAT HAVE A LIMIT, DEDUCTIBLE OR WAITING PERIOD APPLICABLE TO WIND OR HAIL SPECIFIED IN THE DECLARATIONS, THOSE SPECIFIC LIMITS, DEDUCTIBLES OR WAITING PERIODS SUPERSEDE THOSE APPLICABLE TO HIGH HAZARD ZONES.**

| STATE | TIER 1 HIGH HAZARD WIND ZONE COUNTIES AND PARISHES<br>Texas to Virginia, Hawaii, Puerto Rico and U.S. Virgin Islands |
|---|---|
| **Alabama** | Baldwin, Mobile |
| **Florida** | Entire State |
| **Georgia** | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| **Hawaii** | All Counties |
| **Louisiana** | Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin (South), St. Mary, St. Tammany, Tangipahoa, Terrebonne and Vermilion |
| **Mississippi** | Hancock, Harrison and Jackson |
| **North Carolina** | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell and Washington |
| **Puerto Rico** | Entire Island |
| **South Carolina** | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry and Jasper |
| **Texas** | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria and Willacy |
| **U.S. Virgin Islands** | Entire territory, including St. Croix, St. John and St. Thomas |
| **Virginia** | Counties of Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Prince George, Surry, Sussex, York and Westmoreland, and the Independent Cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach and Williamsburg |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000064 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
28:42 PM
84382

| STATE | TIER 1 HIGH HAZARD WIND ZONE COUNTIES Maryland to Maine |
|---|---|
| Connecticut | Fairfield, Middlesex, New Haven and New London |
| Delaware | Sussex |
| Maine | Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington and York |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth and Suffolk |
| New Hampshire | Rockingham and Strafford |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean and Union |
| New York | Counties of Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, and Westchester |
| Rhode Island | Bristol, Kent, Newport, Providence and Washington |

| STATE | TIER 2 HIGH HAZARD WIND ZONE COUNTIES AND PARISHES Texas to North Carolina |
|---|---|
| Georgia | Brantley, Charlton, Effingham, Long and Wayne |
| Louisiana | Acadia, Ascension, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, St. Martin (North), Washington and West Baton Rouge |
| Mississippi | George, Pearl River and Stone |
| North Carolina | Bladen, Duplin, Gates, Hertford, Lenoir, Martin and Pitt |
| South Carolina | Florence, Marion and Williamsburg |
| Texas | Bee, Brooks, Fort Bend, Goliad, Hardin, Hidalgo, Jasper, Jim Wells and Wharton |

| REGION | REGIONAL HIGH HAZARD WIND ZONES Descriptions |
|---|---|
| Asia Pacific | Guam, Japan, Philippines and Taiwan |
| Caribbean | Anguilla, Antigua, Barbados, Belize, British Virgin Islands, Caicos, Cayman Islands, Costa Rica, Curacao, Dominica, Dominican Republic Grand Cayman, Grenada, The Grenadines, Guadeloupe, Haiti Jamaica, Martinique, Netherlands Antilles, the Commonwealth of Puerto Rico, Saba, San Andres, St. Barts, St. Croix, St. Eustatius, St. Johns, St. Kitts, St. Lucia, St. Maarten (Dutch), St. Martin (French), St. Thomas, St. Vincent, Tobago, Tortola, Trinidad, Turks, and Virgin Gorda |
| Latin America | Honduras, Mexico, but only the states of Quintana, Roo, and Yucatan, and Nicaragua |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000065 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIGH HAZARD EARTHQUAKE ZONES

**SEE PROPERTY ELITE – DECLARATIONS FOR APPLICABLE EARTH MOVEMENT LIMITS AND DEDUCTIBLES WHICH APPLY TO THESE ZONES.**

| NEW MADRID EARTHQUAKE ZONES | |
|---|---|
| **STATE** | **COUNTY** |
| **Arkansas** | Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett |
| **Illinois** | Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St. Clair, Washington, Clinton, Bond, Madison, Jefferson |
| **Indiana** | Posey, Vanderburgh, Gibson, Warrick, Pike |
| **Kentucky** | Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway |
| **Mississippi** | Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar |
| **Missouri** | Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St. Francois, St. Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne, Reynolds, Madison, St. Genevieve, Perry and the City of St. Louis |
| **Tennessee** | Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman |
| PACIFIC NORTHWEST EARTHQUAKE ZONES | |
| **STATE** | **COUNTY** |
| **Washington** | Clallam, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom |
| Pacific Northwest Earthquake Zone also includes the geographic area of British Columbia, Canada (including Vancouver Island and other Canadian Islands) that is south of 50° north latitude and west of 120° west longitude**.** | |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000066 of 000111

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTOR'S EQUIPMENT COVERAGE EXTENSION

Words and phrases that appear in **bold type** have special meaning. Refer to Section **F.** Definitions. The following Coverage Extension is added:

**A.** CONTRACTOR'S EQUIPMENT

**1.** We will pay for direct physical loss or damage to **Contractor's Equipment** caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises**, located away from an **Insured Premises**, or while in the **Due Course of Transportation** within the Coverage Territory.

**2. Contractor's Equipment** does not include:

**a.** Vehicles, trailers, motorcycles or other conveyances designed primarily for highway use and licensed as such. However, this does not include self-propelled vehicles designed and used primarily to carry permanently mounted **Contractor's Equipment**.

**b.** Aircraft, except when unmanned aircraft and equipment designed for and used with the unmanned aircraft is specifically described and listed with a Limit of Insurance in the most recent schedule on file with us or by endorsement to this Policy and while legally operated.

**c.** Watercraft, except when the watercraft consists of crew boats, work boats, barges or marine floats less than 26 feet in length and used exclusively in support of your business operations;

**d.** Property while in the possession of others while under an agreement of sale;

**e.** Property while waterborne or airborne except when in the **Due Course of Transportation**.

**B.** COVERAGE EXTENSIONS

The following Coverage Extensions are added:

**1.** Newly Acquired Contractor's Equipment

**a.** We will pay for covered loss or damage to **Contractor's Equipment** you acquire after the inception of this Policy. Coverage for Newly Acquired **Contractor's Equipment** will end when any of the following first occurs:

**(1)** This Policy renews, expires or is canceled;

**(2)** You have reported the values of the newly acquired **Contractor's Equipment** to us;

**(3)** The equipment is added to this Policy by endorsement; or

**(4)** 180 days after you obtain ownership of the equipment.

**b.** The most we will pay for all covered loss or damage to Newly Acquired **Contractor's Equipment** in any one occurrence is the lesser of:

**(1)** The amount you paid for the equipment or for which you are legally liable;

**(2)** The necessary and reasonable amount you spend to repair or replace the equipment; or

**(3)** The Newly Acquired **Contractor's Equipment** Limit of Insurance shown in the Declarations.

**2.** Contractor's Equipment Rental Expense

**a.** In the event of covered loss or damage to **Contractor's Equipment**, we will pay the necessary and reasonable expenses you incur for the rental of temporary **Contractor's Equipment** to continue your operations or work in progress or under contract during the Contractor's Equipment Rental Expense Period of Restoration.

**b.** The Contractor's Equipment Rental Expense Period of Restoration is the period of time that:

**(1)** Begins at the time covered loss or damage to **Contractor's Equipment**; and

**(2)** Ends when the **Contractor's Equipment** is repaired or replaced or should have been repaired or replaced with reasonable speed and similar quality.

The expiration of this Policy will not cut short this Period of Restoration.

**c.** The most we will pay for Contractor's Equipment Rental Expense is the lesser of:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000067 of 000111

Filed            20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

    **(1)** The necessary and reasonable amount you spend to rent temporary **Contractor's Equipment**; or

    **(2)** The Contractor's Equipment Rental Expense Limit of Insurance shown in the Declarations.

**3.** Employee's Tools and Work Clothing

  **a.** We will pay for direct physical loss or damage to your employee's tools and work clothing used in your business operations caused by or resulting from a **Covered Cause of Loss** while such tools or clothing are located at your jobsites or within or on vehicles used in your business. Coverage is included in the Contractor's Equipment Limit of Insurance shown in the Declarations.

  **b.** The most we will pay for any one tool or article of clothing is the actual cost the employee incurs to replace the tool or article of clothing with similar property of like kind and quality.

  **c.** No deductible applies to this Coverage Extension.

**4.** Unreported Contractor's Equipment

  **a.** We will pay for covered loss or damage to **Contractor's Equipment** that you own or lease but have not yet reported to us.

  **b.** The most we will pay for all covered loss or damage to Unreported Contractor's Equipment in any one occurrence is the lesser of:

    **(1)** The amount you paid for the equipment or for which you are legally liable;

    **(2)** The necessary and reasonable amount you spend to repair or replace the equipment; or

    **(3)** The Unreported Contractor's Equipment Limit of Insurance shown in the Declarations.

**C.** LIMIT OF INSURANCE

**1.** The most we will pay for direct physical loss or damage for any one item of **Contractor's Equipment** is the value for the piece of equipment that sustains loss or damage stated in the most recent Statement of Values or other documentation on file with us.

**2.** The most we will pay for all direct physical loss or damage to **Contractor's Equipment** in any one occurrence is the Contractor's Equipment Limit of Insurance shown in the Declarations.

**D.** VALUATION

The following valuation conditions apply to loss or damage to **Contractor's Equipment**:

**1.** Replacement Cost

  **a.** We will determine the value of **Contractor's Equipment** that sustains loss or damage on a replacement cost basis, without deduction for physical deterioration, depreciation, obsolescence or depletion, when replacement cost is shown on the Declarations or by endorsement:

    **(1)** Regardless of age; or

    **(2)** For equipment manufactured within the number of years when shown in the Declarations.

  However, the most we will pay is the amount you actually spend to repair or replace such equipment that sustains loss or damage, up to the applicable Limit of Insurance.

  **b.** We will pay on an **Actual Cash Value** basis until the lost or damaged property is actually repaired or replaced.

  **c.** If the Covered Property is not repaired or replaced within 180 days of the date of loss or damage, we will value the property on an **Actual Cash Value** basis.

**2.** Actual Cash Value

  **a.** We will determine the value of **Contractor's Equipment** that sustains loss or damage that is not subject to the provision in Paragraph **D.1.a.** and **D.1.b.** above, or when shown on the Declarations or by endorsement, on an **Actual Cash Value** basis.

  **b.** The most we will pay for covered loss or damage to **Contractor's Equipment** is the lesser of:

    **(1)** The **Actual Cash Value**;

    **(2)** The necessary and reasonable amount you spend to repair the damaged equipment;

    **(3)** The necessary and reasonable amount you spend to replace the damaged equipment with other equipment of similar quality and used for the same function; or

    **(4)** The Limit of Insurance applicable to the lost or damaged Covered Property.

  **c.** Contractor's Equipment Leased or Rented from Others

  We will determine the value of damaged **Contractor's Equipment** that you have leased or rented from others based on your legal liability up to the applicable Limit of Insurance. In the event of loss or damage the value of the property will be determined as of the date of loss or damage.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000068 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**E.** CONDITIONS

Except as provided in this Coverage Extension, all other exclusions, terms and conditions under this Policy still apply.

**F.** DEFINITIONS

**1.** **Actual Cash Value** means the cost to repair or replace **Contractor's Equipment** that sustains loss or damage less deductions for physical deterioration, depreciation, obsolescence or depletion.

**2.** **Contractor's Equipment** means equipment, machinery and tools including attachments, accessories and improvements you make to such equipment that is:

   **a.** Used in your business operations;

   **b.** Typical to the construction industry; and

   **c.** Described in the most recent statement of values or other documentation provided by you to us.

**3.** **Due Course of Transportation** means in transit from one place to its intended destination including while:

   **a.** At intermediate locations within the coverage territory and while in the **Due Course of Transportation** within the coverage territory; and

   **b.** While waterborne in the **Due Course of Transportation**, but only when on inland waterways or in territorial waters, within 12 miles of land.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000069 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEASEHOLD INTEREST COVERAGE EXTENSION

Words and phrases that appear in **bold type** have special meaning. Refer to Section **F.** Definitions. The following Time Element Coverage Extension is added to this Policy.

**A.** We will pay for the **Leasehold Interest** loss you sustain due to the cancellation of your lease. The lease cancellation must be due to direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at the **Leasehold Interest Premises**.

**B.** The most we will pay for covered **Leasehold Interest** loss in any one occurrence is the Leasehold Interest Limit of Insurance shown in the Declarations. But if the lease is canceled and you enter into a new lease at the same premises, the most we will pay for covered loss because of such lease cancellation is the lesser of:

    **1.** The difference between your current rent and the rent you will pay under the new lease; or

    **2.** The **Net Leasehold Interest** at the time of loss.

No deductible applies to the coverage provided under this Coverage Extension.

**C.** Coverage provided under this Endorsement ends the earlier of:

    **1.** The expiration date of your original lease;

    **2.** 12 months after the date of loss or damage, unless a different number of months is indicated in the Declarations; or

    **3.** The Leasehold Interest Limit of Insurance is exhausted.

The expiration of this Policy will not cut short the period of time shown in items **C.1.** or **C.2.**

**D.** The following additional Condition applies to this Endorsement:

You must use all reasonable means to mitigate additional loss or damage to property, and use any suitable property or service to reduce the covered loss.

**E.** The following additional Exclusions apply to this Endorsement.

    **1.** We will not pay for any **Leasehold Interest** loss caused by:

        **a.** The suspension, lapse or cancellation of any lease except as provided in paragraph **A.** above;

        **b.** Your cancelling the lease, except as lessor when cancelling the lease due to direct physical loss or damage to property at a **Leasehold Interest Premises**; or

        **c.** Your act or omission that constitutes a default under the lease.

    **2.** We will not pay for any direct physical loss or damage to **Real Property** or **Business Personal Property**, any **Time Element** loss or any other consequential loss.

**F.** DEFINITIONS

    **1.** **Leasehold Interest** means the sum of the:

        **a.** Difference between the rent you pay at a **Leasehold Interest Premises** and the rental value at that premises;

        **b.** Unamortized bonus payments you paid when you acquired the lease that will not be refunded to you, but does not include rent or security deposits;

        **c.** Unamortized amount of tenant's **Improvements and Betterments** that:

            **(1)** You actually spent for such **Improvements and Betterments** at a **Leasehold Interest Premises** and that you cannot legally remove;

            **(2)** You acquired from the prior tenant at your expense; or

            **(3)** You are required to insure under a written contract or lease agreement;

              but you cannot legally remove or are forced to abandon; and

        **d.** Unamortized rent you paid in advance that will not be refunded to you, but does not include customary rent due at the beginning of the month or other rental period.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000070 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:63 PM
84382

2. **Leasehold Interest Premises** means an **Insured Premises** to which this coverage applies as shown in the Declarations.

3. **Gross Leasehold Interest** means the difference between the monthly rental value of the **Leasehold Interest Premises** and the actual monthly rent you pay, including taxes, insurance and any services you pay for as part of the lease. This amount will not change whether you occupy or sublet the **Leasehold Interest Premises**.

4. **Net Lease Interest means** the present value of your **Gross Leasehold Interest** for each remaining month of your lease multiplied by the prime rate (as published in the Wall Street Journal on the date the lease was canceled) plus 5% compounded annually.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000071 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KENTUCKY CHANGES

**A.** The following exclusion and related provisions are added to this Policy.

   **1.** We will not pay for loss or damage arising out of any act committed:

      **a.** By or at the direction of any insured; and

      **b.** With the intent to cause a loss.

   **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured who did not cooperate in or contribute to the creation of the loss, provided the loss is otherwise covered under this Policy and:

      **a.** The loss arose out of a pattern of domestic violence and abuse; and

      **b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

   **3.** If we pay a claim pursuant to Paragraph **A.2.**, our payment to the insured is limited to that insured's ownership interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.** The Subrogation POLICY CONDITION is amended by adding the following:

If we pay an innocent co-insured for loss described in Paragraph **A.2.**, the rights of the innocent co-insured to recover damages from the perpetrator are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the perpetrator of the domestic violence.

**C.** Paragraph 2. of the Cancellation POLICY CONDITION is replaced by the following:

   **2.** Cancellation of Policies In Effect For 60 Days Or Less

      If this Policy has been in effect for 60 days or less, we may cancel this Policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 90 days before the effective date of cancellation.

**D.** The following is added to the Cancellation POLICY CONDITION:

   **7.** Cancellation of Policies In Effect For More Than 60 Days

      **a.** If this Policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

         **(1)** Nonpayment of premium;

         **(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining, continuing or in presenting a claim under this Policy;

         **(3)** Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

         **(4)** The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

         **(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

         **(6)** We are unable to reinsure the risk covered by this Policy; or

         **(7)** A determination by the commissioner that the continuation of this Policy would place us in violation of the Kentucky insurance code or regulations of the commissioner.

      **b.** If we cancel this Policy based on Paragraph **7.a.** above, we will mail or deliver a written notice of cancellation to the first Named Insured, stating the reason for cancellation, at least:

         **(1)** 14 days before the effective date of cancellation, if cancellation is for nonpayment of premium; or

         **(2)** 90 days before the effective date of the cancellation, if cancellation is for any reason stated in **7.a.(2)** through **7.a.(7)** above.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000072 of 000111

**Form PEG 30 16 01 20**                                                               **Page 1 of 2**

Filed          20-CI-006311    10/30/2020    © 2020, The Hartford L. Nicholson, Jefferson Circuit Clerk
(Includes copyrighted material of Insurance Services Office, Inc., with its permission)

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84282

**E.** The following POLICY CONDITION is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. For the purpose of this Condition:

   **a.** Any policy period or term of less than 6 months shall be considered to be a policy period or term of 6 months; and

   **b.** Any policy period or term of more than 1 year or any policy with no fixed expiration date shall be considered a policy period or term of 1 year.

2. If we elect not to renew this Policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 90 days before the expiration date of the policy period.

3. If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

4. If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the Policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

5. If this Policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the Policy was not renewed and the date it was terminated.

6. If notice is mailed, proof of mailing is sufficient proof of notice.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000073 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

THE
HARTFORD

## PRODUCER COMPENSATION NOTICE

You can review and obtain information on The Hartford's producer compensation practices at
www.TheHartford.com or at 1-800-592-5717.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH·: 000074 of 000111

**Form G-3418-0**

Filed          20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**Policy Number: 33UFJAE3AAF**

THE
HARTFORD

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
# FOR: AL J SCHNEIDER CO

This endorsement modifies insurance provided under this Policy

A.  We will not pay for loss or damage caused by or resulting from any virus or bacteria that induces or is capable of inducing physical distress, illness or disease

B.  This exclusion does not apply to a Communicable Disease Contamination – Coverage Extension endorsement.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000075 of 000111

Filed          20-CI-006311      10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000076 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT C

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000077 of 000111

Filed     20-CI-006311   10/30/2020     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**OFFICE OF THE MAYOR**

**LOUISVILLE, KENTUCKY**

## EXECUTIVE ORDER
NO. 2020-001

### March 13, 2020

## DECLARATION OF A STATE OF EMERGENCY RELATING TO PREPARATIONS AND RESPONSIVE MEASURES REGARDING THE NOVEL CORONAVIRUS (COVID-19)

WHEREAS, the World Health Organization has declared a global pandemic related to novel coronavirus (COVID-19) which has killed thousands and is expected to increase exponentially across the world; and

WHEREAS, a case of COVID-19 have been confirmed in Louisville Metro as of the date of this ORDER, and multiple cases have been confirmed in the Commonwealth of Kentucky, with that number expected to increase exponentially; and

WHEREAS, the coronavirus (COVID-19) continues to pose a threat to the public health and safety of the citizens of Louisville Metro. The impact of the coronavirus (COVID-19) and attendant consequences are being felt across Louisville Metro, and additional measures are needed to address these challenges; and

WHEREAS, as Mayor, I intend to invoke any and all powers at my disposal to combat, contain, and slow the spread of this condition in order to protect the residents of Louisville Metro; and

WHEREAS, the Governor of the Commonwealth of Kentucky has issued several Executive Orders and may issue more in order to implement measures to address the response to the coronavirus (COVID-19) crisis, including but not limited to Executive Order 2020-15, issued on March 6, 2020, which has declared that a state of emergency exists in the Commonwealth of Kentucky; and

WHEREAS, the Attorney General has urged residents to report any instances of price gouging to his office for investigation; and

WHEREAS, the law of the Commonwealth of Kentucky vests the Chief Executive Officer of a consolidated local government with the authority to declare an emergency, so as to legally invoke

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000078 of 000111

1

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
84382

and implement the exercise of extraordinary emergency powers in the manner necessary to protect our residents; and

WHEREAS, this medical pandemic makes it prudent and necessary to declare an emergency and implement measures that are designed to combat, contain, and slow the spread of the coronavirus (COVID-19) in the manner set out in this Executive Order.

NOW, THEREFORE, I, Greg Fischer, as Mayor of Louisville/Jefferson County Metro Government and, pursuant to Chapters 39A and 39B of the Kentucky Revised Statutes, HEREBY DECLARE that an EMERGENCY exists within Louisville Metro related to the public health of our citizens due to the coronavirus (COVID-19). To that end, I hereby ORDER AND DIRECT THE FOLLOWING:

1. That, effective today, Louisville Metro hereby adopts the Emergency Sick Leave policy (Section 16.16) (attached hereto as Exhibit A). The purpose of this policy is to allow employees who are symptomatic of the coronavirus to remain home and not report to work, and continue to be paid even if they do not possess any sick days to cover their absences. This action will eliminate the need for a sick or potentially sick employee to report to work which could potentially endanger his or her fellow co-workers and the residents of Louisville Metro. I hereby direct the Director of Louisville Metro's Human Resources agency to fully implement, interpret and, if necessary, modify this policy, to accomplish the purposes set forth in this paragraph.

2. That the Chiefs of the agencies of Louisville Metro who are responsible for executing the operations of government and the provision of essential services to our residents are hereby directed to comply with the guidelines issued by the Center for Disease Control and the recommendations of the Department of Public Health and Wellness. These guidelines and recommendations include, but are not limited to, social distancing, tele-commuting (where appropriate), and staggered staff work hours to minimize human contact. The Chiefs of the agencies of Louisville Metro are also directed to shift responsibilities and amend duties of our Metro employees, as necessary and appropriate, so as to ensure that city duties and services are continuously delivered to our residents. All actions taken should be in conjunction with and approved by the Louisville Metro Human Resources Department.

3. That the Department of Procurement of Louisville Metro is hereby empowered, pursuant to KRS Chapters 39A and 39B, to procure any goods and services and take other necessary actions to ensure public health and safety for Louisville Metro employees and our citizens. I further direct the Office of Management and Budget to engage and work with the Metro Council to re-direct funding from the current budget to assist Metro agencies in addressing issues related to the coronavirus (COVID-19) outbreak.

4. That all agencies of Louisville Metro that issue permits related to public gatherings review all permits that have been issued for events for the next 30 days. If, after review, and in accordance with the guidelines issued by the Center for Disease Control

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000079 of 000111

2

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

and the Department of Public Health and Wellness, it is determined that said permits should be revoked for the health and well-being of our residents, then they shall be revoked immediately.

5. That this Executive Order shall be interpreted, if necessary, to be consistent and in harmony with any and all ORDERS issued by the Governor of the Commonwealth of Kentucky.

This ORDER shall remain in effect for 30 days from the date of execution.

GREG FISCHER
MAYOR

APPROVED FOR FORM & LEGALITY
MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

DATE: 3-13-20

3

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000080 of 000111

Filed                    20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

EXHIBIT "A"

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

Louisville Metro Government                        Effective 03/xx/2020
Personnel Policies

### 16.16 Emergency Sick Leave

16.16(1)    In the event that the Mayor declares a state of emergency to be in effect
            owing to a medical pandemic, symptomatic employees or employees
            under medically directed isolation shall receive up to ten (10) calendar
            days of paid emergency sick leave.

   A. Employees are symptomatic if they display symptoms as described
      by health professionals from the federal, state, or local government,
      and can vary by the nature of the specific epidemic.
   B. FMLA leave is not required to use the full ten (10) days of
      emergency sick leave.

16.16(2)    Employees shall notify their supervisor or the individual(s) designated by
            the agency to request sick leave per Personnel Policy 16.2 Sick Leave.

16.16(3)    Once an employee has used all of emergency sick leave, then they may
            use their accrued sick leave per Personnel Policy 16.2 Sick Leave.

16.16(4)    If an employee's position allows teleworking, the employee may telework
            using intermittent regular time while symptomatic: however, under no
            circumstances shall Emergency Sick Leave exceed ten (10) calendar
            days.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000081 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**PUBLIC HEALTH AND WELLNESS**

**DIVISION OF ENVIRONMENTAL HEALTH & PROTECTION**

**LOUISVILLE, KENTUCKY**

GREG FISCHER

MAYOR

SARAH MOYER, MD, MPH

DIRECTOR

March 18, 2020

**RE: EXECUTIVE ORDER TO CLOSE PUBLIC-FACING BUSINESSES**

To Whom It May Concern:

On March 17 2020, Governor Beshear issued an Order instructing "all public-facing businesses that encourage public congregation or, that by the nature of the service to the public, cannot comply with CDC guidelines concerning social distancing, [to] cease all in-person operations."

By the nature of their service to the public, the following types of businesses cannot comply with CDC guidelines concerning social distancing and shall cease operation:
gyms, exercise facilities, theaters, entertainment, hospitality, community, sporting event and recreational facilities, spas, tattoo studios, body piercing studios, and ear piercing studios, tanning, hair and nail salons,

All such public-facing businesses must comply with the Order and close for business by 5:00 PM, March 18th, 2020.

In addition, until the guidance in this Order is lifted, Louisville Metro Public Health and Wellness will not issue temporary permits for tattooing or piercing or other public events.

These measures will be in place until further notice. We thank you for your cooperation and will continue to provide you with updates as they are available.

Sincerely,

Connie S, Mendel R.S.
Deputy Director,



www.louisvilleky.gov
400 E. GRAY STREET   LOUISVILLE, KENTUCKY 40202-1704   502.574.6650   FAX: 502.574.6657

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000082 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382



**CABINET FOR HEALTH AND FAMILY SERVICES**
**OFFICE OF LEGAL SERVICES**

**Andy Beshear**
**Governor**

275 East Main Street, 5W-B
Frankfort, KY 40621
502-564-7905
502-564-7573
www.chfs.ky.gov

**Eric C. Friedlander**
**Acting Secretary**

**Wesley W. Duke**
**General Counsel**

## ORDER

March 17, 2020

On March 6, 2020, Governor Andy Beshear signed Executive Order 2020-215, declaring a state of emergency in the Commonwealth due to the outbreak of COVID-19 virus, a public health emergency. Pursuant to the authority in KRS 194A.025, KRS 214.020, and Executive Order 2020-215, the Cabinet for Health and Family Services, Department of Public Health, hereby orders the following directives to reduce and slow the spread of COVID-19:

1. By 5:00 p.m. on March 18, 2020, all public-facing businesses that encourage public congregation or, that by the nature of the service to the public, cannot comply with CDC guidelines concerning social distancing, shall cease all in-person operations.

2. These public-facing businesses that must close include entertainment, hospitality and recreational facilities, community and recreation centers, gyms and exercise facilities, hair salons, nail salons, spas, concert venues, theaters, and sporting event facilities.

3. For the avoidance of doubt, businesses providing food, food processing, agriculture, industrial manufacturing, feed mills, construction, trash collection, retail, grocery and consumer goods, home repair/hardware and auto repair, pharmacy, and other medical facilities, biomedical and healthcare, post offices, insurance, banks, gas stations, laundromats, veterinary clinics and pet stores, warehousing, storage, and distribution, public transportation, and hotel and commercial lodging may remain open, subject to limitations provided in prior

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH·: 000083 of 000111



 Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk An Equal Opportunity Employer M/F/D

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

orders, but must to the extent practicable implement Centers for Disease Control
guidance, including:

- maintaining a distance of 6 feet between persons;

- ensuring employees practice appropriate hygiene measures, including
  regular, thorough handwashing;

- ensuring that employees who are sick remain home; and

- regularly cleaning and disinfecting frequently touched objects and
  surfaces.

4. Public-facing businesses that remain open shall post the attached sign at all
entrances.

5. The Department of Public Health hereby delegates to local health departments
the authority to take all necessary measures to implement this Order.

The Cabinet for Health and Family Services will monitor these directives continuously and may extend
the directives beyond their current expiration date. The Cabinet will continue to provide information
and updates to healthcare providers during the duration of this Public Health Emergency.


Steven J. Stack, M.D.
Commissioner of Public Health
Department of Public Health
Cabinet for Health and Family Services


Eric Friedlander
Acting Secretary
Governor's Designee

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# Do you feel sick?



# If you are sick or have been in the last 24 hours, please **DO NOT ENTER.**

**To prevent the spread of germs:**

- Wash your hands often with soap and water.
- Avoid touching your eyes, nose, and mouth.
- Cover your mouth when you cough or sneeze.
- Avoid close contact with sick people.
- Clean and disinfect frequently touched objects and surfaces.
- Stay home when you are sick.







Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000085 of 000111

Filed          20-CI-006311     10/30/2020         David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# ¿Se siente enfermo?



# Si está o ha estado enfermo en las últimas 24 horas, por favor **NO ENTRE.**

**Para prevenir la propagación de gérmenes:**

- Lávese las manos frecuentemente con agua y jabón.
- Evite tocarse los ojos, la nariz y la boca.
- Cúbrase la boca cuando tosa o estornude.
- Evite el contacto cercano con las personas enfermas.
- Limpie y desinfecte los objetos y las superficies que se tocan frecuentemente.
- Quédese en casa cuando esté enfermo.







Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000086 of 000111          000086 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382



**OFFICE OF THE MAYOR**

**LOUISVILLE, KENTUCKY**

### EXECUTIVE ORDER
NO.   2020-002

**March 24, 2020**

## CONTINUATION OF STATE OF EMERGENCY RELATING TO PREPARATIONS AND RESPONSIVE MEASURES FOR THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC

WHEREAS, I issued Executive Order 2020-001 on March 13, 2020 that declared a state of emergency due to the novel coronavirus (COVID-19) that expires on April 12, 2020; and

WHEREAS, updated guidelines issued by the Centers for Disease Control ("CDC") have been modified to recommend the cancellation of gatherings of 10 or more people until May 10, 2020; and

WHEREAS, the coronavirus (COVID-19) continues to pose a threat to the public health and safety of the residents of Louisville Metro;

WHEREAS, the impact of the coronavirus (COVID-19) and attendant consequences are being felt all over Louisville Metro and the continuation of the measures announced previously remain necessary to address the challenges that we are facing today along with potential additional measures as necessary; and

WHEREAS, as Mayor, I intend to invoke any and all powers at my disposal to combat the spread of this virus and to contain it as much as possible in order to protect the residents of Louisville Metro; and

WHEREAS, the law of the Commonwealth of Kentucky vests the Chief Executive Officer of a consolidated local government with the authority to declare and continue the state of emergency for as long as the emergency exists to protect our residents; and

WHEREAS, this medical pandemic makes it prudent and necessary to continue the state of emergency and implement additional measures designed to contain the spread of the coronavirus (COVID-19) in the manner previously set forth in Executive Order 2020-001; and

1

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000087 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

WHEREAS, in order to meet its obligations to its residents, Louisville Metro may have the need to request or mandate employees to perform work outside their designated classification and scope of work, including in other areas of their own agency or in other Louisville Metro agencies, that may be subject to the Scope and/or Recognition, and classifications of other ratified Collective Bargaining Agreements; and

NOW, THEREFORE, I, Greg Fischer, as Mayor of Louisville/Jefferson County Metro Government and, pursuant to Chapters 39A and 39B of the Kentucky Revised Statutes, HEREBY EXTEND THE DECLARATION OF EMERGENCY within Louisville Metro related to the public health of our citizens due to the coronavirus (COVID-19).  To that end, I hereby ORDER AND DIRECT THE FOLLOWING:

1.That, this Order fully extends and incorporates the state of emergency and all of the provisions contained in Executive Order 2020-001 until May 10, 2020.

2. That, all Metro hosted events are cancelled and/or postponed until after May 10, 2020;

3. That, effective today, Louisville Metro agencies are hereby empowered to request or, as needed, require employees to work in other areas of their agencies or in other Louisville Metro agencies that may be subject to the Scope and/or Recognition of ratified Collective Bargaining Agreements, while retaining their current rate of pay, benefits, and other rights according to their current Collective Bargaining Agreement and/or Louisville Metro policies;

4. That, effective today, the times designated in Collective Bargaining Agreements for responses to Grievances shall be extended an additional 10 days at the agency level and 30 days for all other Steps in the Grievance procedures;

5. That, effective today, the notice to employees and unions and the implementation of new or revised regulations, rules, policies, and procedures may be simultaneous, and times such designated in Collective Bargaining Agreements and Louisville Metro policies shall be held in abeyance for the duration of this Order.

6.That, effective at 5:00 pm today, March 24, 2020 and until May 10, 2020 at 8:00 am, I have ordered the following:

    a. All Metro park playgrounds, soccer fields and basketball courts will be closed;
    b. All portable toilets shall be closed and removed from the parks;
    c. The campground at Jefferson Memorial Forest shall be closed;
    d. The Department of Parks will continue to clean all open, permanent restrooms at this time, pick up garbage and mow grass;
    e. All dog parks where dogs are allowed to roam free without a leash shall be closed.  Dogs on leashes are still permitted where allowed.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000088 of 000111

2

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM

f. Group activities such as soccer games, basketball games, tennis, pickleball or any activity that promotes congregation in the parks are strongly discouraged because of the inability to properly social distance from others;

g. All golf courses may remain open but shall abide by the "Clubhouse Coronavirus Protocol" posted at every golf course. The clubhouses may remain open, except for the retail area so long as patrons and employees practice social distancing.

7. That, all Metro agencies are directed to review their authorities regarding the suspension of interest and penalties during this pandemic in consultation with the Jefferson County Attorney's Office; and

8. That this Executive Order shall be interpreted, if necessary, to be consistent and in harmony with any and all ORDERS issued by the Governor of the Commonwealth of Kentucky.

GREG FISCHER
MAYOR

APPROVED FOR FORM & LEGALITY
MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

DATE: 03/24/2020

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000089 of 000111

3

Filed         20-CI-006311     10/30/2020         David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

2020-257
**March 25, 2020**

**STATE OF EMERGENCY**

**Background**

The novel coronavirus (COVID-19) is a respiratory disease causing illness that can range from very mild to severe, including illness resulting in death, and many cases of COVID-19 have been confirmed in the Commonwealth.

To help protect our community from the spread of COVID-19, Kentuckians are encouraged to remain Healthy at Home.  By staying home and limiting your in-person contact, you can stop the spread of COVID-19, which endangers public health and safety. If we do not work together to contain the disease, COVID-19 threatens to overwhelm the Commonwealth's healthcare resources.

The Centers for Disease Control and Prevention (CDC) and the Kentucky Department of Public Health have recommended that everyone practice social distancing, meaning staying home when possible and otherwise maintaining six feet of distance from other individuals, to minimize the spread of the disease.  Where people congregate unnecessarily, or fail to follow adequate social distancing practices, they are spreading the disease, creating scenes of an emergency.

The Kentucky Constitution and Kentucky Revised Statutes, including KRS Chapter 39A, empower me to exercise all powers necessary to promote and secure the safety and protection of the civilian population, including the power to suspend state statutes and regulations, and to command individuals to disperse from the scene of an emergency. Under those powers, I declared by Executive Order 2020-215 on March 6, 2020, that a State of Emergency exists in the Commonwealth.

I am now issuing this Order to take additional steps to encourage Kentuckians to remain Healthy at Home, and to do everything in their power to stop the spread of the

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000090 of 000111

Filed        20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2020-257**
**March 25, 2020**

disease.  This Order should be construed broadly to prohibit in-person work that is not necessary to protect or sustain life.

### Order

I, Andy Beshear, Governor of the Commonwealth of Kentucky, by virtue of authority vested in me pursuant to the Constitution of Kentucky and by KRS Chapter 39A, do hereby Order and Direct as follows:

1. **Only Life-Sustaining Businesses May Remain Open.**  All businesses that are not life-sustaining shall cease operations effective Thursday, March 26, 2020, at 8:00 p.m., except as needed to conduct Minimum Basic Operations, as defined in this Order.  For the purposes of this Order, Life-Sustaining Businesses are all businesses that allow Kentuckians to remain Healthy at Home, including:

   a. **CISA List**. All businesses operating in the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19.

   b. **Life-sustaining Retail**.  In-person retail businesses that provide life-sustaining goods, consistent with Executive Order 2020-246, as well as businesses that supply life-sustaining retail and their administrative support operations.  In addition, the following additional categories of retail are designated as life-sustaining under this Order:

      i. hardware stores and businesses that sell electrical, plumbing, and heating material;
      ii. agricultural supply and equipment stores;
      iii. medical product supply and equipment stores; and
      iv. stores that supply first responders and other critical government and healthcare workers.

   The life-sustaining retail stores listed above shall, to the fullest extent possible, permit customers to use delivery or curbside service.

   c. **Food, beverage, and agriculture.** Food and beverage manufacturing, production, processing, and cultivation, including farming, livestock, fishing, baking, and other production agriculture, including cultivation, marketing, production, and distribution of animals and goods for consumption; and businesses that provide food, shelter, and other necessities of life for animals, including animal shelters, rescues, shelters, kennels, and adoption facilities.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH ·: 000091 of 000111

Filed        20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006311   10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**
**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

2020-257
**March 25, 2020**

d. **Organizations that provide charitable and social services.**
Businesses and religious and secular nonprofit organizations, including
food banks, when providing food, shelter, and social services, and
other necessities of life for economically disadvantaged or special
populations, individuals who need assistance as a result of this
emergency, and people with disabilities.  These organizations have a
special responsibility to implement social distancing to the fullest
extent possible, and to take all necessary actions to stop the spread of
disease, including by stopping in-person retail operations.

e. **Media**. Newspapers, television, radio, and other media services.

f. **Gas stations and businesses needed for transportation**. Gas stations
and auto-supply, auto-repair, farm equipment, construction equipment,
boat repair, and related facilities; bicycle repair shops and related
facilities; and motorcycle repair shops.

g. **Financial Services**. Depository institutions, including but not limited
to banks and credit unions; Non-depository institutions, including but
not limited to consumer, industrial and mortgage loan companies,
mortgage loan brokers, originators and processors, deferred deposit,
check cashers, and payday lending companies, title pledge lenders, and
money transmitters; securities institutions, including but not limited to
brokers, agents, advisers and issuers; appraisers, financial markets,
bond issuers, or institutions selling financial products to the extent
they are providing financial services; and pawnbrokers, to the extent
they are providing check-cashing or similar financial services, or to the
extent they are selling firearms and ammunition pursuant to Paragraph
9 of this Order.

h. **Housing, Buildings and Construction**. To ensure Kentuckians can
remain Healthy at Home, businesses providing construction or
maintenance of residential, commercial, or governmental structures,
including but not limited to plumbers, electricians, exterminators,
cleaning and janitorial staff, security staff, operating engineers,
HVAC, painting, landscaping, moving and relocation
services, necessary for sustaining the safety, sanitation and operation
of structures.

i. **Mail, post, shipping, logistics, delivery, and pick-up services**. Post
offices and other businesses that provide shipping and delivery
services, and businesses that ship or deliver groceries, food, beverages,
goods or services to end users or through commercial channels.

j. **Laundry services**. Laundromats, dry cleaners, industrial laundry
services, and laundry service providers.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000092 of 000111

Filed          20-CI-006311    10/30/2020                    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382



**ANDY BESHEAR**
**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

2020-257
**March 25, 2020**

k. **Restaurants for consumption off-premises**. Carry-out, delivery, and
   drive-through food and beverage sales may continue, consistent with
   the March 16, 2020 Order of the Cabinet for Health and Family
   Services and the Department of Public Health and the March 19, 2020
   Order of the Public Protection Cabinet.

l. **Supplies for Life-Sustaining Businesses**. Businesses that sell,
   manufacture, or supply other Life-Sustaining Businesses with the
   support or materials necessary to operate, including computers, audio
   and video electronics, household appliances; IT and
   telecommunication equipment; hardware, paint, flat glass; electrical,
   plumbing and heating material; sanitary equipment; personal hygiene
   products; food, food additives, ingredients and components; medical
   and orthopedic equipment; optics and photography equipment;
   diagnostics, food and beverages, chemicals, soaps and detergent; and
   firearm and ammunition suppliers and retailers for purposes of safety
   and security.

m. **Transportation**. Airlines, taxis, transportation network providers
   (such as Uber and Lyft), vehicle rental services, paratransit, and other
   private, public, and commercial transportation and logistics providers
   necessary for Kentuckians to safely remain Healthy at Home, and to
   access Life-Sustaining Businesses.

n. **Home-based care and services**. Home-based care for adults, seniors,
   children, and/or people with developmental disabilities, intellectual
   disabilities, substance use disorders, and/or mental illness, and other
   in-home services including meal delivery.

o. **Professional services**. Professional services, such as legal services,
   accounting services, insurance services, real estate services (including
   appraisal and title services).  Professional services firms must
   implement telecommuting and remote work to the fullest extent
   possible, and should only use in-person interaction to support
   Minimum Basic Operations or where telecommuting is impossible.

p. **Manufacture, distribution, and supply chain for critical products**
   **and industries**. Manufacturing companies, distributors, and supply
   chain companies producing and supplying critical products and
   services in and for industries such as pharmaceutical, technology,
   biotechnology, healthcare, chemicals and sanitization, waste pickup
   and disposal, agriculture, food and beverage, transportation, energy,
   steel and steel products, petroleum and fuel, mining, mineral
   extraction, construction, national defense, communications, as well as
   products used by other Life-Sustaining Businesses, or products that
   can be used to treat or prevent COVID-19.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000093 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**
**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

2020-257
March 25, 2020

q. **Critical labor union functions**. Labor Union critical activities including the administration of health and welfare funds and personnel checking on the well-being and safety of members providing services in Life-Sustaining Businesses, provided that these checks should be done by telephone or remotely where possible.

r. **Hotels and motels**. Hotels and motels, to the extent used for lodging and delivery or carry-out food services.

s. **Funeral services**. Funeral, mortuary, cremation, burial, cemetery, and related services, subject to restrictions on mass gathering and appropriate social distancing.

2. **Telework Permitted**. The prohibition does not apply to virtual or telework operations.

3. **Social Distancing and Hygiene Required.** All businesses permitted to operate, including Life-Sustaining Businesses and businesses conducting Minimum Basic Operations, must follow, to the fullest extent practicable, social distancing and hygiene guidance from the CDC and the Kentucky Department of Public Health.  Failure to do so is a violation of this Order, and could subject said business to closure or additional penalties as authorized by law.  Social distancing and hygiene guidance includes:

   a. ensuring physical separation of employees and customers by at least six feet when possible;

   b. ensuring employees practice appropriate hygiene measures, including regular, thorough handwashing or access to hand sanitizer;

   c. regularly cleaning and disinfecting frequently touched objects and surfaces;

   d. permitting employees to work from home when feasible; and

   e. identifying any sick employees and ask theming to leave the premises. Employers are strongly encouraged to offer these employees paid leave.

4. **Minimum Basic Operations**. Minimum Basic Operations are the minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, facilitate telecommuting, and other related functions.

5. **Evictions Suspended**. Pursuant to the authority vested in me by KRS Chapter 39A, evictions within the Commonwealth are suspended, and all state, county, and local law enforcement officers in the Commonwealth are directed to cease

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000094 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**
**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

2020-257
**March 25, 2020**

enforcement of orders of eviction for residential premises for the duration of the State of Emergency under Executive Order 2020-215. No provision contained within this Order shall be construed as relieving any individual of the obligation to pay rent, to make mortgage payments, or to comply with any other obligation that an individual may have under tenancy or mortgage.

6. **Additional Orders.** The following designees may provide guidance, clarification or modification of this Order to industries or businesses, and may otherwise issue orders necessary to the operation of government during the State of Emergency: the Governor's Executive Cabinet, as set forth in KRS 11.065; the Commissioner of Public Health; the Director of the Division of Emergency Management; and the Director of the Kentucky Office of Homeland Security. Local health departments may take all necessary measures to implement this Order.

7. **In-Person Government Services.** All in-person government activities at the state, county, and local level that are not necessary to sustain or protect life, or to supporting Life-Sustaining Businesses, are suspended.

   a. For purposes of this Order, necessary government activities include activities performed by critical infrastructure workers, including workers in law enforcement, public safety, and first responders. Such activities also include, but are not limited to, public transit, trash pick-up and disposal, activities necessary to manage and oversee elections, operations necessary to enable transactions that support the work of a business's or operation's critical infrastructure workers, and the maintenance of safe and sanitary public parks so as to allow for outdoor recreation.

   b. Any in-person government services that continue must operate consistent with social distancing, as set forth in Paragraph 3 of this Order.

   c. Any statutory deadlines that conflict with the suspension of in-person government activities are hereby suspended during the pendency of this Order.

   d. Nothing in this Order should be interpreted to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority.

8. **Prior Orders Remain In Effect**. All prior Executive Orders, and Orders issued by Cabinets pursuant to Executive Order 2020-215, remain in full force and effect, except to the extent they conflict with this Order. For the avoidance of doubt, mass gatherings remain prohibited pursuant to the March 19, 2020 Order of the Cabinet for Health and Family Services and the Department of Public Health. Non-life sustaining retail operations may continue to provide local delivery and curbside service of online or telephone

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000095 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**ANDY BESHEAR**

**GOVERNOR**

**EXECUTIVE ORDER**

**Secretary of State**
**Frankfort**
**Kentucky**

2020-257
March 25, 2020

orders, consistent with Executive Order 2020-246.  Violations of these and other Orders issued pursuant to Executive Order 2020-215 are punishable as provided in KRS Chapter 39A.

9. **Firearms**. Consistent with KRS 39A.100(1)(h) and (3), nothing in this Order should be construed to interfere with the lawful sale of firearms and ammunition.  Any businesses engaged in the lawful sale of firearms and ammunition must follow social distancing and hygiene guidance from the CDC and the Kentucky Department of Public Health, including: ensuring physical separation of employees and customers by at least six feet when possible; ensuring employees practice appropriate hygiene measures, including regular, thorough handwashing; regularly cleaning and disinfecting frequently touched objects and surfaces; and ordering sick individuals to leave the premises.  Failure to do so is a violation of this Order, and could subject said business to closure.

This Order shall be in effect for the duration of the State of Emergency herein referenced, or until this Executive Order is rescinded by further order or by operation of law.

ANDY BESHEAR, Governor
Commonwealth of Kentucky

MICHAEL G. ADAMS
Secretary of State

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000096 of 000111

Filed          20-CI-006311     10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT D

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000097 of 000111

Filed        20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**Archived:** Friday, April 17, 2020 5:36:08 PM
**From:** Chris Cyterski
**To:** Southeast Region Claims
**Cc:** Ron Strecker   Rob Winn   John Gluth   Terri Cook   Jessica Govic
**Subject:** AlJ Schneider Co - First Report of Property Loss, Hartford Policy #33UFJAE3AAF, Policy Period 3/1/2020 - 3/1/2021
**Sensitivity:** High
**Attachments:**
Policy+-+33UFJAE3AAF.pdf;

---

Please report a property claim to the attached company/policy. We are reporting for coverage under two separate parts of the policy:

Communicable Disease Contamination Coverage: The insured is incurring a business income and extra expense loss because access to the premises has been partially prohibited by order of the Kentucky Governor's office.

Crisis Management Coverage: The Kentucky Governor's office order is a crises event as defined in the policy. The insured is experiencing business income and extra expense losses due to this event.

The client contact for this claim is:

**RON STRECKER**
**CHIEF FINANCIAL OFFICER**
**AJS HOTELS**
O 502-569-4472  C 502-471-7732
**THE AL J. SCHNEIDER COMPANY**

rstrecker@ajshotels.com

I have discussed this claim with John Gluth and would like him assigned as the claim advocate.

Please let me know of questions.

Chris

**Chris Cyterski**

Area Executive Vice President



D 502.716.7857

M 502.494.0680

Chris_Cyterski@ajg.com

**Gallagher**

9300 Shelbyville Road, Suite 704, Louisville, KY 40222

www.ajg.com

---



Arthur J. Gallagher Risk Management Services, Inc.

Entity CA License No. 0726293 | Individual CA License No. 0F30546

Communications concerning this matter, including this email and any attachments, may have been provided for purposes of insurance/risk management consulting. Opinions and advice provided by Gallagher are

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000098 of 000111

Filed        20-CI-006311   10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84582

not intended to be, and should not be construed as, legal advice.

A licensed Gallagher representative must provide the appropriate insurance carrier with written instructions in order to bind insurance coverage. Therefore, client instructions via email are not sufficient to bind coverage unless and until you have received explicit written confirmation from an authorized Gallagher representative.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH-: 000099 of 000111

Filed        20-CI-006311    10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT E

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000100 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**From:** Bedford, Riggs (Auto and Property Claims)
**Sent:** Friday, April 17, 2020 7:36 AM
**To:** Ron Strecker
**Cc:** Chris Cyterski (Chris_Cyterski@ajg.com) ; Josh Zik CPA, CFE ; Conner Parsons
**Subject:** [EXTERNAL] RE: Business Interruption Claim

> \cbpat2CAUTION: *This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Ron,

I will have something to you when I return from vacation.

It was a pleasure to speak with you as well.

I regret that we do not have coverage for this event.

Take care Riggs

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

---

**From:** Ron Strecker <[rstrecker@ajshotels.com](rstrecker@ajshotels.com)>

**Date:** Thursday, Apr 16, 2020, 4:34 PM

**To:** Bedford, Riggs (Auto and Property Claims) <[Riggs.Bedford@thehartford.com](Riggs.Bedford@thehartford.com)>

**Cc:** Chris Cyterski ([Chris_Cyterski@ajg.com](Chris_Cyterski@ajg.com)) <[Chris_Cyterski@ajg.com](Chris_Cyterski@ajg.com)>, Josh Zik CPA, CFE <[jzik@ajshotels.com](jzik@ajshotels.com)>, Conner Parsons <[cparsons@ajshotels.com](cparsons@ajshotels.com)>

**Subject:** Business Interruption Claim

Hi Riggs,

It was good speaking with you yesterday. As I was going through my notes I realized that today is exactly four weeks since our first call on March 19th.

When you told Josh and I that ours was the only call that day not to receive an immediate denial we were encouraged. We were eager to get the documentation process underway when I sent you a follow-up note on the 23rd and you responded hoping to have something the next morning.

Unfortunately, you had to deliver the bad news to us in a call on March 31st that the claim was being denied. As I recall it was a rather brief conversation and you said you would be following up in writing.

After waiting for two weeks I decided to reach out to you yesterday to see if there was any further progress. You said the home just wanted to get it right.

How much more time do you think they need?

Thanks and stay well

Ron

A J S H O T E L S®

\ITAP2RON STRECKER
CHIEF FINANCIAL OFFICER

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - : 000101 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

\itap2401 West Main Street, ste 400

Louisville Kentucky 40202

\ITAP2O 502-569-4472 C 502-471-7732

\itap2www.AJSHotels.com

THE AL J. SCHNEIDER COMPANY

\itap2

CONFIDENTIALITY NOTICE: This transmission may contain confidential

information  Use or distribution by an unintended recipient is prohibited, and may

be a violation of the law  If you believe that you received this e-mail in error,

please do not read or open the message or any attached items; delete the e-mail

and all attachments and inform the sender

**********************************************************

This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are
not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the
sender immediately by return e-mail, delete this communication and destroy all copies.

**********************************************************

Original Sender: riggs.bedford@thehartford.com
Originating Country: United States

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000102 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

# EXHIBIT F

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000103 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**THE
HARTFORD**

P.O. Box 14271
Lexington, KY 40512-9907

May 12, 2020

Mr. Ron Strecker
C/o AL J Schneider Company
325 West Main Street, Suite 250
Louisville, KY 40202

| Re: | **Insured:** | AL J Schneider Company |
|---|---|---|
| | **Claim Number:** | CP0018667679/Y48 KF 24486 |
| | **Policy Number:** | 33 UFJ AE3AAF |
| | **Reported Date of Loss:** | 3/17/2020 |
| | **Writing Company:** | Hartford Fire Insurance Company ("Hartford") |

Dear Strecker:

This letter responds to your claim for loss of business income due to the closure of your locations from the ongoing COVID-19 pandemic and accompanying State of Emergency in Kentucky. For the reasons discussed below, based on the facts of your loss as we understand them, there is no coverage for this loss under the above captioned policy.

As we understand the facts, you are suffering a loss of business income because your hotels are operating at less than normal occupancy rates due to the State of Emergency declared by Kentucky Governor, Andy Beshear. As we understand it, the purpose of the executive order is to mitigate the spread of COVID-19 by encouraging Kentuckians to remain "Healthy at Home". As part of the Order, Governor Beshear, identified "life-sustaining businesses" which have been allowed to remain open. Specifically included in the list of "life-sustaining businesses" are hotels and motels.

No direct physical loss or damage has occurred to property at any of the Scheduled Premises listed in your policy. Additionally, no real property or business personal property owned by you suffered any direct physical loss or damage from this event. Further, your policy contains an exclusion for loss or damage caused by or resulting from any virus.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH-000104 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

We have carefully reviewed your policy and, unfortunately, there is no coverage available for this loss. We are basing this determination on the following policy language found within the Property Elite Form (PEG 00 10 01 20), which provides as follows:

SECTION **I.** COVERAGE

**A.** INSURING AGREEMENT

We will pay for all risks of direct physical loss or damage by a **Covered Cause of Loss** to Covered Property at an **Insured Premises**[1] (or within 1,000 feet thereof) and while such Covered Property is in the Coverage Territory.

SECTION **VI.** DEFINITIONS

**I. Covered Cause of Loss** means direct physical loss or damage that occurs during the policy period unless the loss or damage is excluded under this Policy.

This property policy protects your real property and business personal property against risks of direct physical loss or damage at your Insured Premises. Based upon our investigation into your claim, you have not identified any direct physical loss to any property at the Insured Premises.

Your policy also provides the following:

SECTION **III.** TIME ELEMENT

**A.** TIME ELEMENT COVERAGE

1. We will pay for the actual loss of **Business Income** you sustain due to the necessary interruption of your business operations during the **Period of Restoration**, due to the direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss** at an **Insured Premises.**

2. We will determine the amount of all covered **Business Income** losses using the greater of:

   a. **Gross Profits Calculation**; or

   b. **Gross Earnings Calculation**.

   All covered **Business Income** losses will be adjusted using this approach.

---

[1] Insured Premises means a location:
  1. Listed by street address or other description of property as stated on file with us in the most recent Statement of Values or other documentation provided by you to us.
  2. Scheduled on this Policy;
  3. Covered as a Miscellaneous Unnamed Location; and
  4. Covered under the terms and conditions of the Newly Acquired Coverage Extension or Errors and Omissions Coverage Extension.
  5. If you are a tenant, Insured Premises includes that portion of Real Property which you rent, lease or occupy and common areas.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH - 000105 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

Like the policy's property coverage, Business Income coverage requires direct physical loss or damage to property at the Insured Premises that causes an interruption of your business operations. Because there has been no physical loss or damage caused by or resulting from a Covered Cause of Loss to property at an Insured Premises, the Business Income coverage does not provide coverage for your claimed loss of income.

Your policy also includes coverage extensions for Civil or Military Authority, which contains the following language:

### B. TIME ELEMENT COVERAGE EXTENSIONS

#### 2. Civil or Military Authority

a. We will pay for the actual loss of Business Income you sustain and the Extra Expense you incur when access to your Insured Premises is partially or totally prohibited by order of a civil or military authority as the direct result of a Covered Cause of Loss to property in the area within the distance (as shown in the Declarations) from the Insured Premises.

b. Coverage begins at the time such order is issued, and ends the earlier of:

(1) When access to your Insured Premises is permitted by the Civil or Military Authority;

(2) The number of consecutive days (shown in the Declarations) after the order of Civil or Military Authority;

or

(3) When the Civil or Military Authority Limit of Insurance shown in the Declarations is exhausted.

c. We will not pay for any loss of Business Income or Extra Expense until the period of time exceeds the Qualifying Period if shown in the Declarations. We will then determine the amount of loss that we will pay as of the time the loss or damage occurred.

We have no information to indicate that a civil authority issued an order as a direct result of a Covered Cause of Loss to property in the area of your Insured Premises. A review of Governor Beshear's orders shows that they have been put in place to slow the spread of the COVID-19 and to protect the residents of Kentucky. The orders are not the direct result of a Covered Cause of Loss to property in the area of your business. Accordingly, this additional coverage is not available for your claimed loss of business income. Further, to the extent that the orders do not specifically prohibit access to your facilities, the coverage does not apply.

We note that your policy also contains potentially applicable exclusions that could preclude your loss even if there has been direct physical loss or damage.

Specifically, your policy contains form PEGM 00 06 03 20 which provides the following:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH-: 000106 of 000111

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**Exclusion Of Loss Due To Virus Or Bacteria For: AL J Schneider Co**

This endorsement modifies insurance provided under this Policy

A. We will not pay for loss or damage caused by or resulting from any virus or
   bacteria that induces or is capable of inducing physical distress, illness or
   disease

B. This exclusion does not apply to a Communicable Disease Contamination –
   Coverage Extension endorsement.

Based on the exclusionary language above, we will not pay for loss or damage caused by
or resulting from any virus that induces or is capable of inducing physical distress, illness
or disease. The virus exclusion applies to all coverage under all forms and endorsements
in the policy, including forms and endorsements that cover business income and extra
expense, which includes the Crisis Management coverage discussed below. Accordingly,
there would be no coverage for your loss based on this exclusion.

Your policy also contains the following exclusion:

SECTION **II.** EXCLUSIONS

A. We will not pay for loss or damage caused directly or indirectly by any of the
   following. Such loss or damage is excluded regardless of any other cause or
   event that contributes concurrently or in any sequence to the loss or damage.
   Exclusions II.A.1. through II.A.8. apply whether or not the loss event results
   in widespread damage or affects a substantial area.
    ***

   6. **Pollutants or Contaminants**
   The actual, alleged or threatened release, discharge, escape or dispersal of
   **Pollutants or Contaminants**.
   However, this exclusion shall not apply to direct physical loss or damage
   to Covered Property at an **Insured Premises** from **Pollutants or
   Contaminants** caused by a **Covered Cause of Loss**, including the cost to
   cleanup **Pollutants or Contaminants** from the damaged Covered
   Property.
   No coverage is provided for testing or monitoring for **Pollutants or
   Contaminants**. All other exclusions continue to apply including A.2.
   Fungus, A.4. Nuclear Hazard and A.5. Pathogenic or Poisonous Biological
   or Chemical Materials above.

The policy contains the following definitions, which provide as follows:

SECTION **VI.** DEFINITIONS
***

JJ. **Pollutants and Contaminants** means any solid, liquid, gaseous or thermal
   irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,
   chemical and waste, or any other material which causes or threatens to cause

Filed          20-CI-006311    10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000107 of 000111

Filed            20-CI-006311    10/30/2020         David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

> physical loss, damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

COVID-19 is understood to be an irritant or contaminant which threatens human health or welfare. Further the virus was not caused by a Covered Cause of Loss. Accordingly, the pollutant and contaminant exclusion could further bar coverage for the loss.

We note that your policy also contains the following exclusion:

> **B.** We will not pay for loss or damage caused by or resulting from any of the following:
>
> **1. Delay, Loss of Use or Loss of Market**
> We will not pay for loss or damage caused by, resulting from, or arising out of delay, loss of use, or loss of market.

To the extent you are claiming physical loss or physical damage caused by loss of use or loss of market, coverage would be precluded based on the exclusion above.

The Property Elite Form (PEG 00 10 01 20) includes the following Time Element Exclusion, which provides as follows:

> **C. TIME ELEMENT** EXCLUSIONS
> These Exclusions apply to Time Element loss in addition to other Exclusions found in this Policy.
> ***
> 2. Idle Periods
> We will not pay for any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:
>> a. Physical loss or damage not insured by this Policy on or off of the Insured Premises;
>> b. Planned or rescheduled shutdown;
>> c. Strikes or other work stoppage; or
>> d. Any reason other than direct physical loss or damage insured under this Policy.

To the extent coverage were available for time element losses, coverage would not be available for any loss during any idle period due to the reasons set forth in paragraphs a through d above.

We have also reviewed other additional coverages in your policy and have determined that they do not apply to your loss. Your policy contains a Time Element Coverage Extension for Crisis Management, which provides as follows:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000108 of 000111

Filed          20-CI-006311   10/30/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**4. Crisis Management**
We will pay the actual Business Income loss you sustain and Extra Expense you incur due to a Crisis Event.  Coverage begins at the time of the Crisis Event and ends the earlier of:
a. The time that the Insured Premises could be reopened for business; or
b. The number of consecutive days (shown in the Declarations) after the date of the Crisis Event.

The policy provides the following definition:

**SECTION VI. DEFINITIONS**
\*\*\*

**J. Crisis Event** means a malicious act:
\*\*\*

**5. Crisis Event** also includes:
\*\*\*

**d.** The release or imminent release of a hazardous substance that is likely to result in bodily injury or death to persons at an Insured Premises;
**e.** The release or imminent release of bacteria or virus that is likely to result in bodily injury or death to hazardous substance that is likely to result in bodily injury or death to persons at an Insured Premises;
**f.** Food contamination or other public health hazard as determined by an appropriate governmental body that is likely to result in bodily injury or death to persons at an Insured Premises; or
\*\*\*

We will pay the actual loss of Business Income you sustain due to a Crisis Event.  Crisis Event is defined to mean a malicious act, which includes, among other things, the release or imminent release of virus that is likely to result in bodily injury or death to persons at an insured premises.  As we understand the coronavirus pandemic, there was no malicious act that lead to the release or imminent release of the virus.  As such, the above coverage extension does not apply to your business income claim resulting from coronavirus outbreak.  Given that the pandemic is caused by virus, which is excluded under the policy, coverage would not apply.

Your policy contains an Additional Coverage for Communicable Disease Contamination under Property Elite form PEG 50 03 01 20 Hospitality Specialized Coverages which provides as follows:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000109 of 000111

Filed          20-CI-006311   10/30/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

**A.** COMMUNICABLE DISEASE CONTAMINATION COVERAGE

1. We will pay for the actual loss of **Business Income** you sustain and the **Extra Expenses** you incur during the **Period of Restoration** when access to your **Insured Premises** is partially or totally prohibited by order of a government authority as the direct result of an outbreak of a **Communicable Disease** at an **Insured Premises**.

   a. The **Period of Restoration** begins at the time of the outbreak of a **Communicable Disease**, and ends the earlier of:

      (1) The time when access is permitted to your **Insured Premises**;

      (2) 180 consecutive days after the order by the governmental authority; or

      (3) When the **Communicable Disease** Contamination Annual Aggregate Limit of Insurance shown in the Declarations is exhausted.

   b. We will also reimburse you for the actual costs that you incur to clean up, remove, restore, or replace contaminated **Covered Property** when required by the order due to the presence of a specific **Communicable Disease** at an **Insured Premises**.

2. The most we will pay at all **Insured Premises** for the sum of all loss or damage in is the **Communicable Disease** Contamination Annual Aggregate Limit of Insurance shown in the Declarations.

3. Deductible

   a. We will not pay for any loss of **Business Income** until the necessary interruption of your business operations exceeds the **Communicable Disease** Waiting Period shown in the Declarations. We will not pay for any loss of **Business Income** sustained during this Waiting Period. No other deductible or Waiting Period will apply to coverage provided under this Coverage Extension.

      The **Communicable Disease** Waiting Period begins at the time of the order by a governmental authority.

   b. Any deductibles or Waiting Periods applicable to **Business Income** do not apply to **Extra Expense** provided under this Coverage Extension.

4. Exclusions

   a. We will not pay for the costs to test for or monitor for any **Communicable Disease** other than payment for testing or monitoring that is performed during the clean up or removal of the **Communicable Disease**.

   b. This Coverage Extension does not apply if the presence of the **Communicable Disease**:

      (1) Is caused by or results from a cause of loss that is excluded under this Policy; or

      (2) Existed prior to the effective date of this Policy.

      (3) The Debris Removal Coverage Extensions do not apply to coverage provided by this endorsement.

5. This is the only coverage applicable to **Communicable Disease** Contamination.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000110 of 000111

NOT ORIGINAL DOCUMENT
12/29/2020 05:28:42 PM
84382

The following definition is provided for Communicable Disease:

1. **Communicable Disease** means a disease that:
   **a**. May be transmitted directly or indirectly by a person or animal to another; and
   **b**. Is due to an infectious agent or toxic product produced by such infection agent.

Pursuant to the above, the Communicable Disease Contamination coverage requires that a government authority issue an order regarding an outbreak of a communicable disease at your Insured Premises. If that occurs, the coverage pays for the actual costs incurred to clean up, remove, restore or replace contaminated Covered Property as required by that order, as well any resultant loss of Business Income you incur due to the requirements of that order. As we understand it, there has not been an outbreak of COVID-19 at your facilities that has resulted in a government authority issuing an order prohibiting access to the Insured Premises or that requires you to clean up, remove, restore or replace contaminated Covered Property. For this reason, the Communicable Disease coverage does not apply.

In summary, we sincerely regret that we are unable to provide coverage for your loss for the reasons noted above and in the specific policy language cited. Our coverage decision in this matter is based upon the facts as we currently understand them. If you have any other information that may bear on our coverage review please submit that information to my attention so that we may give it due consideration.

The foregoing should not be construed as a waiver of any of Hartford's rights and defenses under policy number 33 UFJ AE3AAF, and Hartford specifically reserves its right to modify or supplement this review of coverage based upon any additional information which it may obtain and/or any other grounds which may appear.

If you have any questions, or would like to discuss this matter further, please feel free to contact me at 630-692-6624.

Sincerely,

*Riggs Bedford*

Riggs Bedford, SCLA
National General Adjuster
Hartford Fire Insurance Company

CC:   John D. Gluth
      C/o A J Gallagher Risk Management Service Inc
      8 Cadillac Drive, Suite 200
      Brentwood, TN 37027



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | NOT ORIGINAL DOCUMENT | Case #: **20-CI-006311** |
|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | 12/29/2020 | Court: **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | 84362 | County: **JEFFERSON Circuit** |

*Plantiff,* **AL J. SCHNEIDER CO. ET AL VS. HARTFORD FIRE INSURANCE COMPAN**, *Defendant*

TO:  **HARTFORD FIRE INSURANCE COMPANY**

    **C T CORPORATION SYSTEM**

    **67 BURNSIDE AVE.**

    **EAST HARTFORD, CT 061083408**

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Davis L. Nichols*

Jefferson Circuit Clerk

Date: **10/30/2020**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                               _____

                                      Served By

                               _____

                                            Title

*Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)*

*CI : 000001 of 000001*

Summons ID: @00000959596
CIRCUIT: 20-CI-006311 Long Arm Statute – Secretary of State
AL J. SCHNEIDER CO. ET AL VS. HARTFORD FIRE INSURANCE COMPAN



**eFiled**



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | NOT ORIGINAL DOCUMENT<br>12/29/2020 09:40:22 AM<br>84362 | Case #: 20-CI-006311 |
|---|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | | Court: | **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | | **CIVIL SUMMONS** | County: | **JEFFERSON Circuit** |

*Plantiff,* **AL J. SCHNEIDER CO. ET AL VS. HARTFORD FIRE INSURANCE COMPAN**, *Defendant*

TO:  **HARTFORD FIRE INSURANCE COMPANY**

   **C T CORPORATION SYSTEM**

   **67 BURNSIDE AVE.**

   **EAST HARTFORD, CT 06108**

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

   *Davis L. Nicholson*

   Jefferson Circuit Clerk
   Date: **12/15/2020**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____, 20 _____

   _____
   Served By

   _____
   Title

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

CI : 000001 of 000001

Summons ID: @00000962860
CIRCUIT: 20-CI-006311 Return to Filer for Service
AL J. SCHNEIDER CO. ET AL VS. HARTFORD FIRE INSURANCE COMPAN



Page 1 of 1

eFiled