UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00863-BJB

**AL J. SCHNEIDER CO.,** *et al.*                                                                     **PLAINTIFFS**

**VS.**

**HARTFORD FIRE INSURANCE COMPANY**                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are two related motions. First, Plaintiffs Al J. Schneider Co., et al. ("Plaintiffs") filed a Motion to Compel on July 27, 2021. (DN 41). Defendant Hartford Fire Insurance Company ("Defendant") has responded (DN 46) and Plaintiffs have replied (DN 47). Second, Defendant filed a Motion to Bifurcate and Stay Discovery on September 3, 2021. (DN 48). Plaintiffs have responded (DN 49) and Defendant has replied (DN 50). Fully briefed, these matters are ripe for review. Pursuant to 28 U.S.C. § 636(b)(1)(A), the District Court referred this matter to the undersigned United States Magistrate Judge for resolution of all non-dispositive matters, including discovery issues.

### I. Background

This case arises out of an insurance coverage dispute between Plaintiffs Al J. Schneider Co., et al. and Defendant Hartford Fire Insurance Company. Plaintiffs purchased insurance coverage from Defendant for the period of March 1, 2020 through March 1, 2021, paying a premium total of $661,700. On March 17, 2020, Plaintiffs submitted a claim to Defendant for their COVID-19-related losses. (DN 1-1). After an investigation, Defendant concluded there was no such coverage under the policy based on a "virus exclusion" clause and denied the claim. (*Id.*).

Plaintiffs filed this action in Jefferson Circuit Court on October 30, 2020, and Defendant removed the matter to this Court on December 29, 2020. (DN 1).

In their Motion to Compel, Plaintiffs request that the Court require Defendant to respond fully to their March 3, 2021 discovery requests. (DN 41, at p. 1). Plaintiffs specifically seek documents related to Defendant's investigation into their claimed losses and interpretation of the policy phrase "direct physical loss or damage." (*Id.* at p. 4). They also seek documentation of any similar policies issued by Defendant and information on any comparable pending claims. (*Id.*). Plaintiffs take issue with Defendant's "boilerplate" objections to their requests for information believed to be discoverable under both Kentucky law and the Federal Rules. (*Id.* at pp. 9, 13).

Defendant likens this case to others dismissed prior to ever reaching the discovery phase. (DN 46, at p. 1). Thus, Defendant responds that it need not provide information on whether COVID-19 causes direct physical loss to property because Kentucky courts have repeatedly held it does not. (*Id.* at p. 2). Defendant further asserts that if discovery is warranted on the topic, it would be the province of expert witnesses. (*Id.* at p. 7). Defendant also contends Plaintiffs are not entitled to information regarding other policyholders or claims, as such discovery is only permitted for bad faith claims. (*Id.* at p. 9). It urges the Court to decide coverage before allowing this discovery, as there can be no bad faith in the absence of coverage under Kentucky law. (*Id.*).

In reply, Plaintiffs argue their requests regarding Defendant's investigation into the policy coverage and interpretation of its terms are reasonably tailored and seek relevant, nonprivileged information at the heart of Defendant's defense. (DN 47, at p. 3). They also believe Defendant must produce information regarding similar policyholders, policies, and claims because such information is inextricably intertwined with and relevant to its coverage, bad faith, and fraud

2

claims. (*Id.* at p. 7). Plaintiffs further note that Defendant has not made a sufficient showing that the information requested is confidential, which it asserted in its discovery responses. (*Id.* at p. 8).

In its Motion, Defendant requests that the Court bifurcate and stay discovery on Plaintiffs' bad faith claims, Counts III, IV, and V of their Complaint (DN 1-1). (DN 48). Defendant argues bifurcation meets the goals of Federal Rule of Civil Procedure 42 because it will avoid the danger of prejudice at a consolidated trial on all Plaintiffs' claims. (*Id.* at pp. 3, 6–7). Defendant also notes that a stay of discovery on Plaintiffs' bad faith claims would further judicial economy because if the Court finds that Plaintiffs' losses are not covered under the policy, their bad faith claims become moot. (*Id.* at pp. 4, 10–11). Finally, Defendant emphasizes that Plaintiffs' claims can be categorized in three ways—coverage, bad faith, and reformation—and are not so inextricably intertwined to prohibit bifurcation. (*Id.* at p. 7).

Plaintiffs argue in response that bifurcation would undercut the purpose of Rule 42, and that doing so for trial would be unjustified and premature at this juncture. (DN 49, at p. 2, 17). At the same time, they argue Defendant's request for a stay of bad faith discovery comes too late, as discovery commenced over six months ago and the parties and the Court have since expended considerable resources. (*Id.* at p. 10). Plaintiffs also reiterate that their bad faith claims are so inextricably intertwined with their coverage, reformation, and fraud claims that bifurcation would be impractical. (*Id.* at p. 8, 13).

In its reply, Defendant re-emphasizes that Plaintiffs claims are not unlike others centered on COVID-19 business interruption that have failed in Kentucky, that Plaintiffs' claims are not inextricably intertwined, and that trial on all claims will result in prejudice. (DN 50, at p. 1, 9, 11). Defendant further contends that Plaintiffs' procedural arguments are without merit, as Rule 42 imposes no time constraints on a motion to bifurcate. (*Id.* at p. 2). Finally, regarding Plaintiffs'

argument that significant resources have already been spent on discovery, Defendant counters by noting that judicial economy is forward-looking, measured by whether a threshold issue has the potential to be dispositive. (*Id.* at p. 7).

## II. Analysis

### A. Plaintiffs' Motion to Compel

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. Fed. R. Civ. P. 26(b). In relevant part, Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at (b)(1). However, all discovery permitted under the Rule is subject to the limitation imposed by Rule 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(C). This section of the Rule allows the Court to limit the "frequency or extent of discovery" if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* at (b)(2)(C)(i), (ii), & (iii).

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). If the discovery sought appears to be relevant, "the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D.

374, 380 (W.D. Ky. 2007). However, following the opposing party's arguments, "if the relevancy of a particular discovery request in dispute is not apparent on the face of the request, then the burden to establish the relevancy of that request falls upon the party seeking the discovery." *Lillard v. University of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014). Thereafter, "courts generally employ a balancing test and will weigh the burdensomeness to the responding party against the requesting party's need for and relevance of the information sought to be obtained." *Id.*

Federal Rule of Civil Procedure 37 authorizes the filing of a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or respond properly to requests for production of documents under Rule 34. *Noble v. Ruby Tuesdays Restaurants, Inc.*, No. 2:06-CV-259, 2007 WL 3125131, at *1 (S.D. Ohio Oct. 23, 2007). "Rule 37(a) expressly provides that 'an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.'" *Id.* (quoting Fed. R. Civ. P. 37(a)(3)). When objecting on Rule 26(b)(2)(C) grounds, "the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 4799815, at *5 (W.D. Ky. Oct. 24, 2017) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

Here, Plaintiffs request an order compelling Defendant to respond fully to Request for Production Nos. 1, 3, and 16 and Interrogatories Nos. 7, 8, and 13 from their first set of discovery requests, issued March 3, 2021. (DN 41, at p. 1). Request for Production No. 16 relates to Defendant's investigation into Plaintiffs' claimed losses, while the remaining requests relate to

third-party policyholders, policies, and claims. Defendant objected to these requests initially and stands on those objections now.

Having reviewed Defendant's original and supplemental responses to Plaintiffs' discovery requests, Exhibits D and F attached to Plaintiffs' Motion (DN 41-4, 41-6), the Court agrees, in part, that Defendant's responses are inadequate. In their Request for Production No. 16, Plaintiffs request "all documents related to [Defendant's] investigation of whether COVID-19 is capable of causing loss, damage, physical loss, physical damage, direct physical loss, or direct physical damage as referenced in the Policy." (DN 41-4, at p. 33). Defendant objected to this request, citing vagueness, ambiguity, and overbreadth. (*Id.*). It also objected based on the attorney-client privilege, work product doctrine, and joint defense doctrine. (*Id.*). But as Plaintiffs point out, Defendant's response to Request No. 16 uses boilerplate language and its objections lack both substance and specificity.

The Federal Rules do not permit boilerplate objections to interrogatories and requests for production. *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). "A 'boilerplate' objection is one that is invariably general; it includes, by definition, '[r]eady-made or all-purpose language that will fit in a variety of documents.'" *Id.* (quoting Black's Law Dictionary (10th ed. 2014)). Rule 33 requires that objections be made "with specificity," providing that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." *Id.* (citing Fed. R. Civ. P. 33(b)(4)). Rule 34 further states that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." *Id.* (citing Fed. R. Civ. P. (34(b)(2)(C)).

With regard to Request No. 16, Defendant does not provide any substantive justification for its objection or state what responsive materials it withheld subject to the privileges asserted.

Instead, it merely recites legal grounds in a vague attempt to preserve its objection. Such objections are ineffective, serving only to hinder the discovery process through unnecessary dispute and delay.

In addition, it is well settled that the burden of establishing a claim of privilege rests with the party asserting it. *McCall v. Procter & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3997375, at *2 (S.D. Ohio Aug. 22, 2019) (citing *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006)) (additional citations omitted). In its Response to Plaintiff's Motion, Defendant does not reassert its privilege defense, but instead claims that the type of loss caused by COVID-19 does not require investigation or discovery at all. (DN 46, at p. 5). This is inconsistent with Defendant's discovery response, and its claims of privilege are left wholly unsubstantiated.

Accordingly, Defendant is directed to fully respond to Request for Production No. 16. If Defendant performed an investigation into the type of loss caused by COVID-19 to evaluate Plaintiffs' insurance claims, it is directed to produce documentation of such investigation. Because Defendant has not made a sufficient showing of privilege, the Court will assume such documentation, if it exists, was created in Defendant's ordinary course of business, not in anticipation of this litigation. If it did not perform the investigation Plaintiffs describe in their Request No. 16, but has relied on Kentucky case law to position itself on COVID-19-related loss, it should say as much.

Defendant also refused to answer Interrogatories 7, 8, and 13, citing lack of relevancy and proportionality. (*Id.* at p. 15–16). These requests sought information regarding other insurance policies or pending claims that may be similar to those of Plaintiffs. Defendant considered Plaintiffs' requests to be overbroad, unduly burdensome, and oppressive and objected to the extent they sought confidential or otherwise privileged information. (*Id.*). As Request for Production Nos.

7

1 and 3 sought documentation related to the Interrogatories, Defendant raised mostly the same objections. (*Id.* at p. 25–26). According to Plaintiffs, this information is not only relevant to their bad faith claims, but their coverage and fraud claims as well. (DN 47, at p. 7).

The Court agrees with Defendant that coverage must be established before bad faith can be considered and struggles to reason how third-party information will be relevant to the threshold coverage claim. The Sixth Circuit has held that an insured must prove three elements to prevail on a bad faith claim: "(1) that the policy terms obligate the insurer to pay the claim; (2) that the insurer's denial lacks a reasonable basis in law or fact; and (3) that the insurer knowingly or recklessly acted without a reasonable basis for denying the claim." *Phelps v. Unum Provident Corp.*, 245 F. App'x 482, 484 (6th Cir. 2007) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir.2006). Thus, while discovery of similar policies and comparable claims are not relevant to the underlying coverage claim, if plaintiff succeeds on this issue, such information could then be relevant to the bad faith claims.

Similarly, the third-party information sought has no bearing on Plaintiffs' fraud by omission claim, a cause of action "grounded in a duty to disclose." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 970 (E.D. Ky. 2019) (internal citations omitted). To maintain a fraud by omission claim under Kentucky law, a plaintiff must show: (1) a duty to disclose the material fact at issue; (2) failure to disclose; (3) reliance; and (4) damages. *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 536 F. App'x 558, 568 (6th Cir. 2013) (citing *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)). This claim centers on the parties' dealings with one another and does not necessitate information on similar policyholders, policies, and claims.

Moreover, Plaintiffs have failed to sufficiently demonstrate through briefing of either motion before the Court that their claims are so inextricably intertwined that third-party discovery is necessarily relevant to all their claims. Plaintiffs focus on the virus exclusion clause as a "key issue" that ties together their coverage, reformation, fraud, and bad faith claims. (DN 49, at p. 14). They also emphasize that interpretation of "Crisis Event" and other policy terms "unavoidably touches on" coverage and bad faith. (*Id.* at p. 16). But to allege that the claims have some overlap is insufficient to convince the Court that they are inextricably intertwined.

Plaintiffs' bad faith claims, as alleged in their complaint, center on Defendant's apparent misrepresentation of policy terms and failure to investigate their insurance claims. (DN 1-1, at p. 24–25). As for their coverage claim, Plaintiffs recognize that the determination must be made "pursuant to the terms of the Policy." (*Id.* at p. 23). To resolve their fraud by omission claim, it must be determined whether Defendant "intentionally failed to adequately or reasonably disclose that it had inserted a purported Virus Exclusion into the Policy." (*Id.* at p. 28). Finally, Plaintiffs' reformation claim rests on whether unilateral or mutual mistake should render the virus exclusion ineffective if the Court determines Defendant is not obligated under the policy. (*Id.* at p. 27–28).

To be sure, the virus exclusion clause will be considered in evaluating each claim, but in distinct ways. The coverage dispute involves interpretation of policy language and application of that language to the facts, the bad faith claims hinge on the motive, conduct, and knowledge of Defendant during the policy negotiations and claim investigation, the fraud claim involves Defendant's actions or inactions in altering the policy, and the reformation claim requires consideration of the parties' subjective intents. Considering the plain language of Plaintiffs' complaint, their claims do not hinge on the same factual issues and they are not inextricably intertwined. Further, the relevance of third-party information to Plaintiffs' coverage, fraud, and

reformation claims is not apparent, and they have failed to meet their burden to establish such a connection. *See Lillard*, 2014 WL 12725816, at *6.

The documentation and information Plaintiffs seek regarding similar policyholders, policies, and claims are relevant to their bad faith claims alone. As will be discussed in greater detail below, the Court finds that bifurcation of Plaintiffs' bad faith claims for purposes of discovery and trial is appropriate, and discovery related to those claims will be stayed. Accordingly, at this juncture, the Court will not compel Defendant to respond further to Request for Interrogatories Nos. 7, 8, and 13 or Request for Production Nos. 1 and 3.

### B. Defendant's Motion to Bifurcate and Stay Bad Faith Discovery

A court may bifurcate "one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" in order to "avoid prejudice or to expedite and economize." Fed. R. Civ. P. 42(b). The decision to bifurcate lies within the sound discretion of the trial court. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). Courts frequently bifurcate claims addressing coverage and bad faith claims against insurance companies, as deciding the first claim may obviate the need to litigate the second. *See, e.g., Live Nation Worldwide, Inc. v. Secura Ins.*, 298 F. Supp. 3d 1032, 1035–36 (W.D. Ky. 2018); *Graves v. Standard Ins. Co.*, No. 3:14-cv-558-DJH, 2015 WL 2453156, at *3 (W.D. Ky. May 22, 2015); *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-cv-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) ("Limited discovery and adjudication of the threshold coverage dispute would, in the court's view, streamline adjudication—a conclusion reached without any view of the merits of the underlying coverage claim.").

To the extent Plaintiffs argue that bifurcation for trial would be premature at this time, the Court finds their argument unconvincing. "In determining whether separate trials are appropriate, the court should consider several factors, including 'the potential prejudice to the parties, the

possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). In addition to the avoidance of potential prejudice on Defendant at a trial on all claims, bifurcating for all purposes now will avoid any unnecessary and premature litigation on the issues of bad faith. This will convenience both parties, and Plaintiffs will have the opportunity to pursue their bad faith claims if and when they are legally entitled to do so.

Plaintiffs' argument that bifurcation now for purposes of discovery would come too late is similarly unavailing. The Court has broad authority to manage its docket "with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). This authority includes "the power to stay proceedings." *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010). Because Plaintiffs' bad faith claims turn on the success of their coverage claim, failure to issue a stay could result in needless discovery and expense for both sides. And contrary to Plaintiffs' suggestion, staying discovery on the bad faith claims alone will not undercut the progress made on the remaining claims since the discovery period commenced.

Finally, as previously discussed, the Court disagrees that Plaintiffs' claims are so inextricably intertwined to disfavor bifurcation. The issues surrounding coverage, which include interpretation of various policy terms and phrases, are distinct and should be resolved prior to assessment of Plaintiffs' bad faith claims, which become moot in the absence of coverage. *See Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 274–76 (W.D. Ky. 2017) (granting motion to bifurcate where a "contract claim present[ed] a threshold issue that could moot [the plaintiff's] bad faith claim"). The Court agrees with Defendant that in this way, bifurcation will further judicial economy.

III. Order

Based on the foregoing, **IT IS ORDERED** that Plaintiffs' Motion to Compel (DN 41) is **GRANTED** in part and **DENIED** in part. Defendant is **ORDERED** to provide information responsive to Plaintiffs' Request for Production No. 16. Specifically, Defendant should state definitively whether it performed the investigation described by Plaintiffs. If it did, Defendant is directed to turn over documentation of such an investigation. Plaintiffs' Motion is **DENIED** as to Request for Interrogatories Nos. 7, 8, and 13 and Request for Production Nos. 1 and 3, which seek information relevant only to Plaintiffs' bad faith claims. Defendant need not produce such discovery at this time.

**IT IS FURTHER ORDERED** that Defendant's Motion to Bifurcate and Stay Discovery (DN 48) is **GRANTED**. Plaintiffs' bad faith claims are **BIFURCATED** from their coverage, breach of contract, fraud by omission, and reformation claims for both discovery and trial purposes. Discovery regarding the bad faith claims is **STAYED** pending further order of the Court.

Regina S. Edwards, Magistrate Judge
United States District Court

Copies: Counsel of Record

December 1, 2021